## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

ANDREA K. TANTAROS,

      Plaintiff,

    v.

FOX NEWS NETWORK, LLC, FOX
CORPORATION, ROGER AILES,
WILLIAM SHINE, JOHN FINLEY,
SCOTT BROWN, and SUZANNE SCOTT,

      Defendants.

---

Case No. 25-cv-01675 (VSB)

Hon. Vernon S. Broderick

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT SCOTT BROWN'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ..................................................................................................1

Background .....................................................................................................................2

    A.    Relevant Factual Allegations ...........................................................2
    B.    Tantaros's Prior Litigation Against Fox News .................................3

           1.    *Tantaros v. Fox News I* (Supreme Court, New York County 2016)............4
           2.    *Tantaros v. Fox News II* (S.D.N.Y. 2017) .................................5
           3.    *Tantaros v. Fox News III* (S.D.N.Y. 2019) ...............................6
           4.    *Tantaros v. Fox News IV* (S.D.N.Y. 2025) ...............................6

    C.    Procedural History ..........................................................................7

Argument ......................................................................................................................8

I.    Tantaros's Claim Against Brown Is Untimely ..........................................8

    A.    Standard of Review ..........................................................................8
    B.    The Statute of Limitations Has Expired ...........................................9
    C.    Tantaros's Claim Was Not Revived ..............................................10

II.    The Claim Against Brown Should Be Dismissed for Failure to Timely Effect
    Service ..........................................................................................................14

    A.    Analytical Framework ...................................................................14
    B.    Tantaros Failed to Serve Brown Within the Service Window ...............16
    C.    Tantaros's *Pro Se* Status Does Not Excuse Her Failure to Serve or Justify
           Alternative Service ........................................................................19
    D.    Tantaros Cannot Show Good Cause for Failing to Serve Brown .........21
    E.    No Discretionary Extension is Warranted .....................................22
    F.    The Court Lacks Personal Jurisdiction Over Brown ...........................26

CONCLUSION .............................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  222 F.R.D. 79 (S.D.N.Y. 2004) .....................................................................................26

*Baker v. Hannah-Jones*,
  No. 24-cv-8760 (JMF), 2024 WL 5090086 (S.D.N.Y. Dec. 11, 2024) ...................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................................8

*Bellino v. Tallarico*,
  No. 24-cv-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024), *appeal
  withdrawn*, No. 24-763, 2024 WL 3170987 (2d Cir. Apr. 4, 2024) ..........................................9

*Beyn v. SEC*,
  No. 23-6526-AG, 2025 WL 22536 (2d Cir. Jan. 3, 2025).....................................................19

*United States ex rel. Billington v. HCL Tech. Ltd.*,
  126 F.4th 799 (2d Cir. 2025) ...................................................................................2, 8

*Caidor v. Onondaga Cnty.*,
  517 F.3d 601 (2d Cir. 2008)............................................................................................19

*In re Chaus Sec. Litig.*,
  801 F. Supp. 1257 (S.D.N.Y. 1992).................................................................................23

*City of New York v. FedEx Ground Package Sys., Inc.*,
  351 F. Supp. 3d 456 (S.D.N.Y. 2018)..............................................................................23

*CTS Corp. v. Waldburger*,
  573 U.S. 1 (2014).............................................................................................................26

*Danaher Corp. v. Travelers Indem. Co.*,
  414 F. Supp. 3d 436 (S.D.N.Y. 2019)..............................................................................13

*Deptula v. Rosen*,
  558 F. Supp. 3d 73 (S.D.N.Y. 2021)............................................................................ *passim*

*Doe v. Black*,
  No. 23-cv-6418, 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024), *appeal filed*,
  No. 25-564 (2d Cir. Mar. 11, 2025).................................................................................10

*Dorval v. Sapphire Vill. Condo. Ass'n*,
  No. cv-2016-50, 2018 WL 2224050 (D.V.I. May 15, 2018)...............................................18

*El Ex-Relatione Dawes v. Whitehead*,
  No. 3:18-cv-02033 (CSH), 2019 WL 5394578 (D. Conn. Oct. 22, 2019) ...........................19

*Fantozzi v. City of New York* [*Fantozzi I*],
  343 F.R.D. 19 (S.D.N.Y. 2022) ............................................................ *passim*

*Fantozzi v. City of New York* [*Fantozzi II*],
  No. 23-1111, 2024 WL 1597745 (2d Cir. Apr. 12, 2024) ................................14, 24

*Figueroa v. Ponce De Leon Fed. Bank.*,
  No. 11-cv-07633 (PAC) (HBP), 2012 WL 3264552 (S.D.N.Y. Aug. 10, 2012)......................9

*Fowler v. City of N.Y.*,
  807 F. App'x 137 (2d Cir. 2020) ..............................................................24

*Friedman v. Bartell*,
  No. 22-CV-07630 (PMH), 2024 WL 1076736 (S.D.N.Y. Mar. 12, 2024)................10, 13, 14

*Gang Chen v. China Green Agric., Inc.*,
  No. 20-cv-09232 (MKV), 2021 WL 103306 (S.D.N.Y. Jan. 6, 2021) ....................20

*George v. N.Y.C. Health & Hosps. Corp.*,
  No. 09-cv-3833 (ENV) (JMA), 2012 WL 1072274 (E.D.N.Y. Mar. 29, 2012) ..................26

*Harmon v. Bogart*,
  788 F. App'x 808 (2d Cir. 2019) ..............................................................24

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
  146 F.3d 66 (2d Cir. 1998).......................................................................3

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.* [*Jones I*],
  96 F.4th 539 (2d Cir. 2024) .................................................................12, 13

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.* [*Jones II*],
  No. 107, 2025 WL 554454 (N.Y. Feb. 20, 2025) .............................................12, 13

*Khan v. Khan*,
  360 F. App'x 202 (2d Cir. 2010) ..............................................................14

*Knorr v. Coughlin*,
  159 F.R.D. 5 (N.D.N.Y. 1994)..................................................................24

*Kogan v. Facebook, Inc.*,
  334 F.R.D. 393 (S.D.N.Y. 2020) ........................................................ *passim*

*Kuklachev v. Gelfman*,
  No. 08-cv-2214 (CPS), 2008 WL 5068860 (E.D.N.Y. Nov. 24, 2008)............................8, 20

*Lee v. Airgas Mid-S., Inc.*,
  793 F.3d 894 (8th Cir. 2015) .................................................................16

*Levin v. Sarah Lawrence Coll.*,
  747 F. Supp. 3d 645 (S.D.N.Y. 2024)................................................11, 14, 25

*McNeil v. United States*,
  508 U.S. 106 (1993)...........................................................................19

*Meimaris v. Royce*,
  No. 19-3339-cv, 2021 WL 5170725 (2d Cir. Nov. 8, 2021) ....................................9

*Moss v. Ciferri*,
   No. 21-cv-3572 (JS)(SIL), 2023 WL 2771637 (E.D.N.Y. Mar. 31, 2023) ................16, 17, 18

*Musah v. Houslanger & Assocs., PLLC*,
   No. 12-cv-3207, 2012 WL 5835293 (S.D.N.Y. Nov. 16, 2012)..............................................13

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998)......................................................................................................9

*Rodriguez v. Lahar*,
   No. 15-cv-3446 (CS), 2016 WL 5376217 (S.D.N.Y. Sept. 26, 2016)....................................19

*Roldan v. Lewis*,
   No. 20-cv-3580 (HG) (MMH), 2025 WL 676090 (E.D.N.Y. Mar. 3, 2025) .........................12

*Shomo v. Dep't of Corr. & Cmty. Supervision*,
   No. 21-cv-00128 (PMH), 2022 WL 1406726 (S.D.N.Y. May 4, 2022)..................................20

*Stoianoff v. Comm'r of Motor Vehicles*,
   208 F.3d 204 (2d Cir. 2000)...................................................................................................19

*Tantaros v. Fox News Network, LLC* [*Tantaros v. Fox News II*],
   No. 17-cv-2958 (GBD), 2018 WL 1662779 (S.D.N.Y. Mar. 16, 2018)..........................1, 5, 6

*Tantaros v. Fox News Nework, LLC* [*Tantaros v. Fox News II*],
   No. 17-cv-2958 (GBD), 2018 WL 2731268 (S.D.N.Y. May 18, 2018) ...................................6

*Tantaros v. Fox News Network, LLC* [*Tantaros v. Fox News III*],
   No. 19-cv-7131 (ALC), 2022 WL 4614755 (S.D.N.Y. Sept. 30, 2020)...................................6

*Tolchin v. Cnty. of Nassau*,
   768 F. App'x 60 (2d Cir. 2019) ..............................................................................................24

*Tracy v. Freshwater*,
   623 F.3d 90 (2d Cir. 2010)......................................................................................................20

*Watson v. New York*,
   No. 22-cv-9613 (KMK), 2023 WL 6200979 (S.D.N.Y. Sept. 22, 2023) .............16, 17, 18, 19

*Zapata v. City of New York*,
   502 F.3d 192 (2d Cir. 2007)...............................................................................................15, 24

**State Cases**

*David v. Total Identity Corp.*,
   50 A.D.3d 1484 (4th Dep't 2008)...........................................................................................20

*N.Y. Cnty. Lawyers' Ass'n v. Bloomberg*,
   19 N.Y.3d 712 (N.Y. 2012) ....................................................................................................11

*Nault v. Tirado*,
   155 N.H. 449 (N.H. 2007) ......................................................................................................18

*Regina Metro. Co. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
   35 N.Y.3d 332 (2020)..............................................................................................................11

*S. H. v. Diocese of Brooklyn*,
    205 A.D.3d 180 (2nd Dep't 2022) ..........................................................................11

*State v. Patricia II*,
    6 N.Y.3d 160 (N.Y. 2006) ...........................................................................11, 14

*Tantaros v. Fox News Network, LLC* [*Tantaros v. Fox News I*],
    No. 157054/2016 (Sup. Ct., N.Y. Cnty Feb. 15, 2017) .......................................5

## State Statutes

Child Victims Act, 2019 N.Y. Laws ch. 11 ...................................................................13

City of New York, L.L. 21/2022 ...................................................................10, 11, 12

N.H. RSA 510:2 .................................................................................................18

N.Y.C. Admin. Code § 10-1101. ..............................................................................9

N.Y.C. Admin. Code § 10-1103 ...............................................................................10

N.Y.C. Admin. Code § 10-1105(a) ........................................................9, 11, 12, 23, 25

N.Y. C.P.L.R. § 214-g .........................................................................................13

N.Y. C.P.L.R. § 308 ...........................................................................................17

N.Y. C.P.L.R. § 312-a .....................................................................................17, 18

## Rules

Fed. R. Civ. P. 4(c) ...........................................................................................19

Fed. R. Civ. P. 4(e) .......................................................................................16, 19

Fed. R. Civ. P. 4(m) .....................................................................................*passim*

Fed. R. Civ. P. 12(b)(2) ..................................................................................15, 26

Fed. R. Civ. P. 12(b)(5) ..................................................................................14, 15

Fed. R. Civ. P. 12(b)(6) ....................................................................................8, 9

Fed. R. Civ. P. 15 .............................................................................................23

## Other Authorities

Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1137 ......................................................16

*Hereby*, Black's Law Dictionary (11th ed. 2019) ...........................................................11

Vincent C. Alexander, Practice Commentary, N.Y. C.P.L.R. § 214-g ......................................13

Vincent C. Alexander, Practice Commentary, N.Y. C.P.L.R. § 312-a .................................17, 18

Defendant Scott Brown respectfully submits this memorandum of law in support of his motion to dismiss the single claim asserted against him by plaintiff Andrea Tantaros.

## PRELIMINARY STATEMENT

This is the latest in a long line of cases Tantaros, a former television anchor, has brought against Fox News Network, LLC ("Fox News"), Roger Ailes, and other Fox News associates. As another court in this District observed, the "underlying employment dispute between Plaintiff and Fox News has clearly escalated to a contentious and acrimonious level" and "Plaintiff and her counsel have proceeded with an aggressive, scorched-earth, take-no-prisoners approach to this litigation."[1] That was seven years ago. Yet Tantaros, now representing herself, continues to file new actions arising out of her employment with Fox News. And for the first time in this case, Tantaros seeks to drag Brown into the dispute.

This action closely resembles Tantaros's first case against Fox News, which she filed in 2016 and which she claims is still being arbitrated. In that action, as in this one, Tantaros alleged that Ailes sexually harassed her, and that Fox News and other defendants enabled the harassment and retaliated against her for reporting it. And in that action, as in this one, Tantaros falsely accused Brown of an improper touching at a public lunch counter in August 2015. In the 2016 action, however, Tantaros did not name Brown as a defendant, and kept her focus trained on Ailes (whom she called the "primary culprit") and his "senior lieutenants." But here—nearly 10 years after the supposed incident—Tantaros has sued Brown.

Tantaros's allegations against Brown are false. The August 2015 incident never happened. At the pleading stage, however, Tantaros's bid to drag Brown into her employment fight fails for a more basic reason: it is untimely. Tantaros's single claim against Brown, brought under a local

---

[1] *Tantaros v. Fox News Network, LLC*, No. 17-cv-2958 (GBD), 2018 WL 1662779, at *4 (S.D.N.Y. Mar. 16, 2018).

New York City law with a seven-year statute of limitations, expired in August 2022. Although the New York City Council enacted a claim revival statute in January 2022, the statute only revived claims that had already expired at the time of enactment. Because Tantaros's claim against Brown had not yet expired, the statute did not revive it. Her claim is therefore time-barred.

Even if Tantaros's claim was revived (it was not), it should still be dismissed. Tantaros filed this action the day before the statutory deadline to file revived claims, and she has failed to serve Brown within the time allowed by Rule 4(m) without good cause. Her single attempt at service, made as the service window expired, was deficient on its face. Her failure was not caused by lack of ability or means; earlier this year, Tantaros engaged an out-of-state process server to serve a defendant in another case before this Court. Finally, Tantaros is not entitled to a discretionary extension, as she lacks even a colorable excuse for failing to serve and because extending the service deadline would seriously prejudice Brown by forcing him to defend a claim that is now time-barred. Indeed, assuming the revival statute applies, Tantaros has *already* been the beneficiary of a two-year extension. She is entitled to no more.

Accordingly, the single claim against Brown should be dismissed with prejudice.

## BACKGROUND

### A.    Relevant Factual Allegations

Tantaros began working at Fox News in 2010 as a political contributor, columnist, and analyst.[2] (Amended Complaint ("Am. Compl.") ¶¶ 5, 34, ECF No. 10.) She later served as a co-host of different Fox News programs. (*E.g.*, *id.* ¶¶ 5, 37–38.) Scott Brown is a former U.S. Senator and Fox News contributor who appeared on one of her programs. (*Id.* ¶ 18, 42.)

---

[2] For purposes of this motion only, Tantaros's allegations are taken as true. *See United States ex rel. Billington v. HCL Tech. Ltd.*, 126 F.4th 799, 803 (2d Cir. 2025). Unless otherwise indicated, internal citations, brackets, and ellipses are omitted from case citations.

The nub of the Amended Complaint is that during Tantaros's time with Fox News, defendant Roger Ailes sexually harassed Tantaros personally and "create[d] a culture of institutional brutality" at Fox News in which Tantaros was also harassed by others. (*Id.* ¶ 1; *see also id.* ¶¶ 2–4.) Tantaros alleges that when she reported this activity, Ailes and other Fox News executives retaliated against her. (*Id.* ¶¶ 5–7.) Except for Brown, the defendants are all corporate affiliates or senior executives of Fox News. (*Id.* ¶¶ 13–17, 34.) The great majority of the Amended Complaint focuses on these defendants' alleged conduct. (*E.g.*, *id.* ¶¶ 27–41, 43–45.)

By contrast, the allegations against Brown are far more circumscribed and arise out of a single alleged incident. Tantaros claims that, on August 18, 2015, Brown "came up behind [Tantaros] and grabbed her waist from behind pushing his body against hers." (*Id.* ¶ 42; *see also id.* ¶¶ 18, 24 (referencing the same alleged incident).) Tantaros claims that she then made a report to defendant William Shine, another Fox News executive, and that Brown continued to appear on her show afterwards. (*Id.* ¶ 42.) Other than this one incident, Tantaros generally alleges only that Brown "made constant inappropriate and offensive remarks" and that, at some unspecified time, Brown supposedly "groaned 'ohhh Andreaaaa…..'" during a commercial break. (*Id.*)

In April 2016, Fox News indefinitely suspended Tantaros for, among other things, publishing a book without permission. (*Id.* ¶ 6.)

### B.    Tantaros's Prior Litigation Against Fox News

Tantaros has been engaged in litigation with Fox News arising out of her employment since shortly after her suspension. A list of Tantaros's cases against Fox News follows.[3]

---

[3] It is well-established that a court may take judicial notice of a plaintiff's prior actions and allegations. *See, e.g.*, *Baker v. Hannah-Jones*, No. 24-cv-8760 (JMF), 2024 WL 5090086, at *2 (S.D.N.Y. Dec. 11, 2024) (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

### 1. *Tantaros v. Fox News I* (Supreme Court, New York County 2016)

In August 2016, Tantaros commenced *Tantaros v. Fox News Network, LLC* ("*Tantaros v. Fox News I*") in New York state court, alleging many of the same factual allegations as in this case.[4] The six defendants included four of the defendants in this case (Fox News, Ailes, Shine, and Suzanne Scott) and two defendants who are not in this case (Dianne Brandi and Irena Briganti). The gravamen of the complaint was that Ailes, whom Tantaros described as the "primary culprit," sexually harassed her, and that Fox News and the individual defendants enabled the harassment and retaliated against her for reporting it.[5] She brought claims for sexual harassment, retaliation, and tortious interference.[6]

Brown was not named as a defendant in *Tantaros v. Fox News I*. The complaint did, however, allege the same August 2015 episode that is at the center of her allegations against Brown in this action. At the time, Tantaros's description of the supposed incident read as follows:

> On or about August 18, 2015, former Massachusetts Senator Scott Brown ("Brown") appeared on *Outnumbered*. Brown made a number of sexually inappropriate comments to Tantaros on set, including, and in a suggestive manner, that Tantaros "would be fun to go to a nightclub with." After the show was over, Brown snuck up behind Tantaros while she was purchasing lunch and put his hands on her lower waist. She immediately pulled back, telling Brown to "stop."[7]

In February 2017, Tantaros's claims were referred to arbitration.[8] The Amended Complaint in this action alleges that the arbitration is ongoing. (Am. Compl. ¶ 7.)

---

[4] Exhibit A (Complaint, *Tantaros v. Fox News I*, No. 157054/2016 (Sup. Ct., N.Y. Cnty filed Aug. 22, 2016)). Documents cited as "Exhibit _" are exhibits to the Declaration of Richard A. Edlin, filed contemporaneously herewith.

[5] *Id.* ¶ 3; *see also id.* ¶¶ 4–8.

[6] *Id.* ¶¶ 75–105.

[7] *Id.* ¶ 44.

[8] *See* Order, *Tantaros v. Fox News I*, No. 157054/2016 (Sup. Ct., N.Y. Cnty. Feb. 15, 2017).

### 2.    *Tantaros v. Fox News II* (S.D.N.Y. 2017)

In April 2017, a few months after arbitration was ordered, Tantaros initiated another case captioned *Tantaros v. Fox News Network, LLC* ("*Tantaros v. Fox News II*") in this District.[9] The six defendants in *Tantaros v. Fox News II* included four defendants named in *Tantaros v. Fox News I* and in this action (Fox News, Ailes, Shine, and Briganti) and two others (Peter A. Snyder and Disruptor, Inc.).

The complaint in *Tantaros v. Fox News II* accused defendants of "criminal conduct" against Tantaros, alleging that that they engaged in "professional digital character-assassination."[10] The "bizarre and shocking" methods allegedly included "illegal electronic surveillance" and "hacking . . . her personal computer."[11] Tantaros brought claims under federal statutes for electronic surveillance and hacking.[12] The complaint was an extension of her state-court case: she alleged that defendants were trying to "emotionally torture [her] into giving up her claims" of sexual harassment and retaliation.[13]

Tantaros was originally represented in *Tantaros v. Fox News II* by the same counsel that represented her in the state court action. In early 2018, Tantaros fired her counsel and filed a *pro se* amended complaint.[14] In May 2018, the court (George B. Daniels, J.) dismissed the action for failure to state a claim.[15] In a related opinion denying a sanctions motion, Judge Daniels observed that the "underlying employment dispute between Plaintiff and Fox News has clearly escalated to

---

[9] Exhibit B (Complaint (Corrected), *Tantaros v. Fox News II*, No. 17-cv-2958 (GBD) (S.D.N.Y. filed Apr. 25, 2017)).
[10] *Id.* ¶ 1 (emphasis omitted).
[11] *Id.* ¶ 2, 4.
[12] *Id.* ¶¶ 81–96.
[13] *Id.* ¶ 4.
[14] *Tantaros v. Fox News II*, No. 17-cv-2958 (GBD), 2018 WL 1662779, at *2 (S.D.N.Y. Mar. 16, 2018).
[15] *Tantaros v. Fox News II*, No. 17-cv-2958 (GBD), 2018 WL 2731268, at *1–*2 (S.D.N.Y. May 18, 2018).

a contentious and acrimonious level," and that "Plaintiff and her counsel have proceeded with an aggressive, scorched-earth, take-no-prisoners approach to this litigation."[16]

### 3. *Tantaros v. Fox News III* (S.D.N.Y. 2019)

In July 2019, Tantaros commenced a third action captioned *Tantaros v. Fox News Network, LLC* ("*Tantaros v. Fox News III*") against the same defendants as in *Tantaros v. Fox News I*, with Ailes being sued through his estate.[17] The action sought to stay the arbitration that the state court had ordered in 2017 on the ground that a state statute made the arbitration agreement unenforceable.[18] The action was removed to this District, where Tantaros was represented by five separate law firms.[19] The court (Andrew L. Carter, J.) ultimately dismissed the action on preemption grounds.[20]

### 4. *Tantaros v. Fox News IV* (S.D.N.Y. 2025)

In February 2025, Tantaros commenced a fourth action captioned *Tantaros v. Fox News Network, LLC* ("*Tantaros v. Fox News IV*"), which has been assigned to this Court.[21] This action names the same defendants that were sued in *Tantaros v. Fox News I* and *Tantaros v. Fox News III*, with claims against Ailes being pursued against his estate. In this action, Tantaros once again seeks to stay the arbitration that the state court ordered in 2017.[22]

---

[16] *Tantaros v. Fox News II*, 2018 WL 1662779, at *4.

[17] Exhibit C (Motion to Seal Petition to Stay Arbitration, *Tantaros v. Fox News III*, No. 156936/2019 (Sup. Ct. N.Y. Cnty. filed July 15, 2019)). Fox News was initially named as Fox News Channel, LLC. Its name was updated following removal to this District.

[18] *Id.* at ¶¶ 2–3.

[19] Exhibit D (Docket Sheet, *Tantaros v. Fox News III*, No. 19-cv-7131 (ALC)).

[20] *Tantaros v. Fox News III*, No. 19-cv-7131 (ALC), 2022 WL 4614755, at *2 (S.D.N.Y. Sept. 30, 2020).

[21] Exhibit E (Petition in Support of Emergency OSC for TRO, *Tantaros v. Fox News IV*, No. 25-cv-961 (VSB) (S.D.N.Y. filed Feb. 3, 2025)).

[22] *E.g.*, *id.* at 1–2.

Tantaros is representing herself in *Tantaros v. Fox News IV*. She is not proceeding *in forma pauperis*; she paid the filing fee and entered her consent to receive electronic service.[23] Tantaros served five defendants (Fox News, Dianne Brandi, Suzanne Scott, Irena Briganti, and Shine) by successfully seeking a formal waiver of service.[24] Tantaros served the sixth defendant (Elizabeth Ailes on behalf of the estate of Roger Ailes) by engaging a Florida process server, who posted the papers at Ailes' Florida residence and mailed the papers to the same address.[25] Although service against Elizabeth Ailes was challenged on the ground that the estate has been dissolved, it appears that no challenge was made to the method of service.[26]

### C.    Procedural History

Tantaros commenced this action—effectively *Tantaros v. Fox News V*—on February 27, 2025, almost ten years after the alleged misconduct. As in *Tantaros v. Fox News IV*, Tantaros is representing herself but is not proceeding *in forma pauperis*; she paid the filing fee and has issued her pro se consent to electronic service. (ECF No. 6; Dkt. Entry dated Mar. 24, 2025.) Tantaros amended the complaint on May 28, 2025. (ECF No. 10.) Tantaros asserts a single claim against Brown for violating the Victims of Gender-Motivated Violence Protection Law, also known as the Gender-Motivated Violence Act ("GMVA"). (Am. Compl. ¶ 47.)

On June 10, Tantaros filed an affidavit of service. (ECF No. 14.) As to defendants Fox News, Fox Corporation, Shine, and John T.A. Finley, Tantaros emailed the summons and original complaint, along with a formal Waiver of Service form. (*Id.* ¶ 4.) According to Tantaros, they did

---

[23] Exhibit F (Docket Sheet, *Tantaros v. Fox News IV*), Docket Entry dated Feb. 4, 2025 and ECF No. 5.
[24] Exhibit G (Waivers of Service, *Tantaros v. Fox News IV*, ECF Nos. 12–15, 20).
[25] Exhibit H (Return of Service, *Tantaros v. Fox News IV*, ECF No. 24).
[26] Order, *Tantaros v. Fox News IV*, No. 25-cv-961 (S.D.N.Y. Mar. 5, 2025).

not waive service. (*Id.* ¶¶ 5, 7.) Afterward, Tantaros claims she sent copies of the Summons and original complaint to each defendant via UPS or USPS. (*Id.* ¶¶ 9, 10.)

As to Brown, the affidavit of service reflects a single, defective effort at service made near the end of the 90-day service window. Tantaros claims that, on May 23, she "served a true and correct copy of the Summons and Complaint via UPS Overnight Mail to their addresses of public record and simultaneous due diligence: . . . Scott Brown, 33 Ocean View Avenue, Rye, NH 03870." (*Id.* ¶ 9.) Tantaros claims that "[t]racking and delivery confirmation[] [was] received on May 24, 2025 at . . . 10:56 a.m (Scott Brown)." (*Id.*)

On May 26, 2025, Tantaros filed a motion for alternative service. (ECF No. 9.) The motion "does not seek retroactive approval of already-completed service." (*Id.* at 2.) Nor does it seek an extension of time to serve. Instead, the motion seeks leave to serve all defendants via publication; by "[p]osting to verified social media"; and by email to "known agents, attorneys, or representatives engaged in prior related litigation." (*Id.* at 1.) The motion makes no effort to show (as it must) that ordinary methods of service on Brown are impracticable. *See Kuklachev v. Gelfman*, No. 08-cv-2214 (CPS), 2008 WL 5068860, at *3 (E.D.N.Y. Nov. 24, 2008).

## ARGUMENT

### I.    Tantaros's Claim Against Brown Is Untimely

Tantaros's single claim against Brown should be dismissed as untimely.

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Billington*, 126 F.4th at 803 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"A statute of limitations defense can be decided on a Rule 12(b)(6) motion 'if the defense appears on the face of the complaint.'" *Meimaris v. Royce*, No. 19-3339-cv, 2021 WL 5170725, at *3 (2d Cir. Nov. 8, 2021) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)); *accord Figueroa v. Ponce De Leon Fed. Bank.*, No. 11-cv-07633 (PAC) (HBP), 2012 WL 3264552, at *1 (S.D.N.Y. Aug. 10, 2012) ("A complaint may be dismissed as untimely when the plaintiff's allegations themselves demonstrate that relief is barred by the applicable statute of limitations."). Here, Tantaros's allegations conclusively show that her claim has expired.

### B.   The Statute of Limitations Has Expired

Tantaros asserts her claim against Brown under the GMVA, a local New York City law that creates a cause of action for victims of gender-motivated violence. *See* NYC Admin. Code § 10-1101 *et seq.*[27] The statute of limitations for a GMVA claim is seven years, and the period begins to run on the date of the alleged misconduct. *See* NYC Admin. Code § 10-1105(a) ("A civil action under this chapter shall be commenced within seven years after the alleged crime of violence motivated by gender occurred."). Under a 2022 amendment to the GMVA (the "Amended GMVA"), the seven-year period applies "unless the plaintiff then was unable to sue within the seven year period, in which case the time limit is 'nine years after the inability to commence the action ceases.'" *Bellino v. Tallarico*, No. 24-cv-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024) (quoting NYC Admin. Code § 10-1105(a)), *appeal withdrawn*, No. 24-763, 2024 WL 3170987 (2d Cir. Apr. 4, 2024).

Tantaros alleges a single instance of supposedly actionable conduct against Brown: an incident of supposed "groping and unwanted physical contact" that allegedly occurred on August 18, 2015. (Am. Compl. ¶¶ 18, 24, 42.) These allegations are false. But Tantaros does not (and

---

[27] Tantaros cites the GMVA as NYC Admin. Code § 8-901 *et seq*, where it was formerly codified. (Am. Compl. ¶ 47.)

cannot) allege that any disability precluded her from bringing this claim within the statutory period; she has been publicly advancing these allegations since 2016, when she alleged this precise episode in *Tantaros v. Fox News I*.[28] The claim therefore accrued on the date of the alleged conduct and expired seven years later, on August 18, 2022. Because Tantaros did not initiate this action until February 2025, her claim is untimely. It must therefore be dismissed. *See, e.g.*, *Friedman v. Bartell*, No. 22-cv-07630 (PMH), 2024 WL 1076736, at *7 (S.D.N.Y. Mar. 12, 2024) (dismissing claim under the Child Victims Act as untimely).[29]

### C.    Tantaros's Claim Was Not Revived

Contrary to Tantaros's suggestion in the Amended Complaint, her GMVA claim against Brown was not revived by the Amended GMVA. (Am. Compl. ¶ 22(A).) On January 9, 2022, the New York City Council added the following provision to the GMVA:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

City of New York, L.L. 21/2022 § 1[30]; NYC Admin. Code § 10-1105(a); *see Doe v. Black*, No. 23-cv-6418 (JGLC), 2024 WL 4335453, at *2 (S.D.N.Y. Sept. 27, 2024), *appeal filed*, No. 25-564 (2d Cir. Mar. 11, 2025). As shown below, this provision only revived claims that were already expired. As Tantaros's claim was still live, it was not revived and it expired on its normal date.

---

[28] Exhibit A (Complaint, *Tantaros v. Fox News I*), ¶ 44.

[29] Tantaros's scant remaining allegations against Brown—"constant inappropriate and offensive remarks" (Am. Compl. ¶ 42)—are plainly not actionable under the GMVA, which requires that the challenged conduct "present[] a serious risk of physical injury to another." N.Y.C. Admin. Code § 10-1103.

[30] *Available at* https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993&Options=ID%7cText%7c&Search=Gender+motivated-.

Courts interpreting New York statutes "must look first to the statutory text, which is the clearest indicator of legislative intent." *N.Y. Cnty. Lawyers' Ass'n v. Bloomberg*, 19 N.Y.3d 712, 721 (N.Y. 2012) (internal quotation marks omitted). "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning." *State v. Patricia II*, 6 N.Y.3d 160, 162 (N.Y. 2006). Claim revival statutes are also subject to a special, narrow rule of construction. Because "special laws that revive causes of action are 'extreme examples of legislative power,'" they must be "narrowly construed." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 662 (S.D.N.Y. 2024) (cleaned up) (quoting *S. H. v. Diocese of Brooklyn*, 205 A.D.3d 180, 188 (2nd Dep't 2022)); *accord Regina Metro. Co. v. N.Y. State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 371 (2020) ("[R]evival is an extreme exercise of legislative power.")

By the plain terms of the Amended GMVA, it revived only those claims that had already expired when it was enacted. The statute applied to any claim that "*is barred* because the applicable period of limitations *has expired*"; nothing in the statute states or suggests that it had any effect on claims that would become time-barred in the future. City of New York, L.L. 21/2022 § 2 (emphasis added). The statute also provided that an expired claim "*is hereby revived*," meaning revived by the enactment itself. *Id.* (emphasis added); *see also Hereby*, Black's Law Dictionary (11th ed. 2019) ("By this document; by these very words"). Again, nothing in the statute provided that unexpired claims that would prospectively expire would *later* be revived. Underscoring this reading is a separate provision of the Amended GMVA, which states: "This local law takes effect *immediately*." City of New York, L.L. 21/2022 § 2 (emphasis added).

Together, these features show that on January 9, 2022, the date of enactment, the Amended GMVA revived then-expired claims. The statute did not prospectively revive any claims that

would later expire. Indeed, a live claim would need no "revival"; a plaintiff with a live claim was free to repair to court—as Tantaros has done many times.

A recent decision from the Eastern District of New York reads the Amended GMVA the same way. Another provision of the statute expanded liability to cover "enabl[ing]" acts of gender-motivated violence. City of New York, L.L. 21/2022 § 1. In *Roldan v. Lewis*, the issue was whether "enabling" liability applied retroactively, and the plaintiff relied on the revival provision to argue that it did. No. 20-cv-3580 (HG) (MMH), 2025 WL 676090, at *11–*13 (E.D.N.Y. Mar. 3, 2025). In rejecting the argument, the court interpreted the revival provision as taking effect at the time of enactment. The court explained that although the "Amended GMVA expressly provides for claim revival," it applied "only as to 'any . . . claim . . . that is barred because the applicable period of limitation *has* expired.'" *Id.* at *12 (quoting N.Y.C. Admin Code § 10-1105(a)) (emphasis in original). "Critically," the court explained, "*at the time of the Amended GMVA's enactment*, Plaintiff's claim 'ha[d]' not 'expired'; rather, it did not, and never had, existed." *Id.* (emphasis added). Because "claims that never existed cannot be 'revived,'" the revival provision did not permit the retroactive enabling claim. *Id.*

This reading is bolstered by a recent Second Circuit decision interpreting a similar New York claim revival law. *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 543 (2d Cir. 2024) ("*Jones I*"), *certified question accepted*, 41 N.Y.3d 969 (N.Y. 2024), *and certified question answered*, No. 107, 2025 WL 554454 (N.Y. Feb. 20, 2025) ("*Jones II*"). *Jones* concerned the Child Victims Act ("CVA"), which provides that "'[n]otwithstanding any provision of law which imposes a period of limitation to the contrary' certain claims based on child sexual abuse are 'hereby revived.'" *Jones I*, 96 F.4th at 542 (quoting N.Y. C.P.L.R. § 214-g). Like the Amended GMVA, the CVA provided that "[t]his act shall take effect immediately" and created a filing

window a short time after its enactment. *Id.* at 543 (quoting Child Victims Act, 2019 N.Y. Laws ch. 11 § 12). Relying chiefly on the "hereby revived" language, the Second Circuit held that the "plain meaning" of the law "indicates that [the] revival occurred immediately, and without qualification, upon the enactment of the CVA on February 14, 2019." *Id.* at 542. It rejected an argument that the statute "did not revive claims until the start of the filing window" as "plainly contradicted by the text." *Id.* at 543 n.3.[31]

Other courts and commentators have understood the CVA the same way. *See, e.g.*, *Friedman*, 2024 WL 1076736, at *6 (explaining that "Section 214-g [is] for claims already time-barred as of February 14, 2019," the date of the CVA's enactment); Vincent C. Alexander, Practice Commentary, N.Y. C.P.L.R. § 214-g ("[The CVA] provides that any person who was a child under the age of 18 when he or she was victimized by sexual criminal conduct, and whose civil action based on intentional or negligent conduct by the defendant was time-barred as of February 14, 2019 (the statute's effective date), shall have one year and six months from that date within which to commence a revived action . . . ."). The Amended GMVA is similar in all material respects and should be interpreted the same way.

The Amended GMVA thus only admits a single reading: upon enactment, it immediately revived claims that had already expired. Because the statute is "clear and unambiguous," the Court

---

[31] The New York Court of Appeals' decision in *Jones II* did not reach or call into question the Second Circuit's holding that the CVA revived claims immediately as of the effective date. *See Jones II*, 2025 WL 554454, at *2 (noting that that is an "open question of New York law" and "accept[ing], without endorsing, the Second Circuit's interpretation" for purposes of answering the certified question). Instead, *Jones II* addressed an issue not present here: whether the waiting period before a plaintiff can bring a revived claim is a statute of limitations or a condition precedent. *Id.* The relevant holding in *Jones I* therefore remains binding. *See Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 457 (S.D.N.Y. 2019) ("[A]bsent a contrary holding by the New York Court of Appeals, the Second Circuit's holdings are binding authority for federal district courts within the Circuit.") (quoting *Musah v. Houslanger & Assocs., PLLC*, No. 12-cv-3207, 2012 WL 5835293, at *3 (S.D.N.Y. Nov. 16, 2012)).

should interpret it as written. *Patricia II*, 6 N.Y.3d at 162. Even if the statute could conceivably be read to prospectively revive claims that were live at the time of enactment, the Court should "narrowly construe" this "extreme example[] of legislative power" to apply only to claims that were already expired. *Levin*, 747 F. Supp. 3d at 662.

Here, Tantaros's claim was not expired at the time of enactment. The alleged conduct took place on August 18, 2015, and the seven-year statutory period extended to August 18, 2022. (Am. Compl. ¶ 18.) The Amended GMVA was enacted on January 9, 2022, when Tantaros still had more than seven months to bring her claim. The statute therefore did not "revive" the claim, and the claim must be dismissed as untimely. And because Tantaros cannot remedy this defect by amendment, it should be dismissed with prejudice. *See, e.g.*, *Friedman*, 2024 WL 1076736, at *7.[32]

## II.    The Claim Against Brown Should Be Dismissed for Failure to Timely Effect Service

As explained, the Court should dismiss the GMVA claim with prejudice because the claim is untimely, and the Court need not reach Brown's remaining arguments. But even assuming for argument's sake that her claim was revived, it should still be dismissed for failing to serve Brown within the required period without good cause or any colorable excuse. Because even a revived claim has now expired, a dismissal on this ground should also be with prejudice.

### A.    Analytical Framework

"On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Deptula v. Rosen*, 558 F. Supp. 3d 73, 83 (S.D.N.Y. 2021) (quoting *Khan*

---

[32] Tantaros failed to specify which defendants her claim for "Civil & Criminal Stalking" is brought against, but it appears to be against individuals who allegedly conducted "surveillance" on her. (Am. Compl. ¶ 52; *see id.* ¶¶ 16, 45.) To the extent this claim can be viewed as asserted against Brown, it must be dismissed. There are zero factual allegations linking this claim to Brown, and "[t]hreadbare recitals of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678.

*v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order)). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) ("*Fantozzi I*"), *aff'd*, No. 23-1111, 2024 WL 1597745, at *2 (2d Cir. Apr. 12, 2024) ("*Fantozzi II*"). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *Fantozzi I*, 343 F.R.D. at 25. "[B]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Id.* Deficient service may also deprive the Court of personal jurisdiction over the defendant and require dismissal under Rule 12(b)(2). *See id.*

Rule 4(m) governs the time limit for serving a complaint. It provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

"A court must grant an extension for proper service 'if the plaintiff shows good cause for the failure.'" *Fantozzi I*, 343 F.R.D. at 26 (quoting Fed. R. Civ. P. 4(m)). "A party seeking a good cause extension bears a heavy burden of proof, which is not satisfied by a showing that the plaintiff encountered some unanticipated difficulty." *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 401 (S.D.N.Y. 2020) (internal quotation marks omitted).

"District courts retain discretion to grant extensions of time even absent good cause shown. But while 'a district court *may* grant an extension in the absence of good cause[,] it is not required to do so." *Fantozzi I* at 26 (quoting *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007)). "To obtain a discretionary extension absent a showing of good cause, the plaintiff must ordinarily

15

advance some colorable excuse for neglect." *Deptula*, 558 F. Supp. 3d at 85 (internal quotation marks omitted). "Courts then balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party." *Id.* (internal quotation marks omitted).

**B.    Tantaros Failed to Serve Brown Within the Service Window**

Tantaros failed to serve Brown within the time permitted by Rule 4(m). Tantaros filed the Complaint on February 27, 2025. The 90-day service window extended to May 28, 2025.[33] As the service window dwindled, Tantaros made a single attempt at service that was deficient on its face. According to her affidavit of service, on May 23, Tantaros sent the Summons and Complaint by "UPS Overnight Mail" to Brown's address of public record in Rye, NH. (ECF No. 14, ¶ 9.) This was invalid service under every relevant body of law.

Rule 4(e) provides that service on an individual may be accomplished either as allowed by the law of the state "where the district court is located or where service is made" or by one of three specific methods permitted by federal law. Fed. R. Civ. P. 4(e)(1), (2). Tantaros was thus permitted to serve Brown as permitted by the federal rules, New York law, or New Hampshire law.

*Federal law.* Rule 4(e)(2) authorizes three methods of federal service: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Because service by UPS overnight delivery is not one of these methods, it is not good service under federal law. *See, e.g.*, *Watson v. New York*, No. 22-cv-9613 (KMK), 2023 WL 6200979, at *5 (S.D.N.Y. Sept. 22, 2023) ("Plaintiff

---

[33] Filing the Amended Complaint did not extend the service window. *See Lee v. Airgas Mid-S., Inc.*, 793 F.3d 894, 898 (8th Cir. 2015) ("[F]iling an amended complaint in itself does not toll the service period or reset the [90]-day clock . . . ." (internal quotation marks omitted)); *see also* Wright & Miller, 4B Fed. Prac. & Proc. Civ. § 1137 (similar).

appears to have attempted to serve [defendant] by UPS Shipping Service, which is not allowed under the Federal Rules."); *Moss v. Ciferri*, No. 21-cv-3572 (JS)(SIL), 2023 WL 2771637, at *5 (E.D.N.Y. Mar. 31, 2023) (service improper where plaintiff sent process "via first class mail" to a defendant's residence); *Deptula*, 558 F. Supp. 3d at 86 ("[M]ailing a summons and complaint to a defendant – without more – is not good service under federal law . . . .").

> *New York law.* New York law authorizes four primary methods of service:
>
> > (1) delivering the summons to the defendant;
> >
> > (2) delivering the summons to a person of suitable age and discretion at the place of business, home or "usual place of abode" of the defendant, and mailing the summons to the defendant's last known residence or place of business;
> >
> > (3) delivering the summons to the defendant's agent; or
> >
> > (4) where service by the first two methods cannot be made with "due diligence," affixing the summons to the door of the defendant's actual place of business, home or "usual place of abode," and mailing the summons to the defendant's last known residence or place of business.

*Moss*, 2023 WL 2771637, at *5 (citing N.Y. C.P.L.R. § 308(1)-(4)). Service by UPS overnight mail is not one of these methods and is therefore improper. *See Watson*, 2023 WL 6200979, at *6 (rejecting UPS service); *Moss*, 2023 WL 2771637, at *5 (rejecting service by mail); *Deptula*, 558 F. Supp. 2d at 86 (similar).

As an alternative, New York law permits service by first-class mail in certain circumstances. *See* N.Y. C.P.L.R. § 312-a. A plaintiff seeking to serve by mail must send, "by first class mail, postage prepaid, a copy of the summons and complaint . . . together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section with a return envelope, postage prepaid, addressed to the sender." *Watson*, 2023 WL 6200979, at *6 (quoting N.Y. C.P.L.R. § 312-a(a)). Even if a plaintiff complies with these

requirements, "[s]ervice is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender." *Id.* (quoting N.Y. C.P.L.R. § 312-a(b)); *see* Vincent C. Alexander, Practice Commentary, N.Y. C.P.L.R. § 312-a (explaining that "[b]ecause the effectiveness of service by first-class mail is entirely dependent on defendant's willingness to return an acknowledgement form, the use of CPLR 312-a is a risky enterprise").

Tantaros's transmittal of the Summons and Complaint by UPS overnight mail does not satisfy these requirements or come close. Tantaros does not say that she sent the papers by first-class mail; she does not say that she requested acknowledgement from Brown in the form required by the rule; and her return of service did not include any acknowledgement signed by Brown. Her attempt at service was therefore ineffective under N.Y. C.P.L.R. § 312-a as well. *See Deptula*, 558 F. Supp. 3d at 86 n.8 (service by mail ineffective where "there is no suggestion that plaintiff mailed – or that either defendant received, signed, and timely returned – the materials specified in CPLR § 312-a"); *Watson*, 2023 WL 6200979, at *6 (similar); *Moss*, 2023 WL 2771637, at *6 (similar).

*New Hampshire law.* "Service on a New Hampshire resident is accomplished by either giving a copy of the writ to the defendant within the state, or by 'leaving [it] at his abode.'" *Nault v. Tirado*, 155 N.H. 449, 451 (N.H. 2007) (quoting RSA 510:2). "Strict compliance with the statutory requirements for service of process is required to provide the defendant with constitutionally sufficient notice of the action, and to vest the trial court with jurisdiction over the defendant." *Id.* Service by UPS overnight mail does not qualify, as that is neither giving the papers to the defendant nor leaving it at his abode. *See Dorval v. Sapphire Vill. Condo. Ass'n*, No. cv-2016-50, 2018 WL 2224050, at *4 (D.V.I. May 15, 2018) (deeming service improper where "[a] summons and copy of the complaint was mailed to Joanne Levesque in New Hampshire" because "New Hampshire law does not permit service by mail on an individual in that state").

18

Tantaros therefore failed to serve Brown with the 90 days allowed by Rule 4(m).

**C.    Tantaros's *Pro Se* Status Does Not Excuse Her Failure to Serve or Justify Alternative Service**

Tantaros's choice to represent herself does not excuse her failure to serve Brown or justify her unsupported request for alternative service. (ECF No. 9.) Although *pro se* litigants are given some latitude, the Supreme Court "[has] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993). To the contrary, "*pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008); *accord Beyn v. SEC*, No. 23-6526-AG, 2025 WL 22536, at *1 (2d Cir. Jan. 3, 2025) (explaining that "*pro se* status does not exempt them from compliance with relevant rules of procedural and substantive laws" (internal quotation marks omitted)).

Thus, "'[t]he latitude afforded pro se litigants does not extend to dispensing with service requirements.' The Federal Rules of Civil Procedure apply equally to all litigants – including *pro se* litigants – who seek to avail themselves of the federal court system." *El Ex-Relatione Dawes v. Whitehead*, No. 3:18-cv-02033 (CSH), 2019 WL 5394578, at *5 (D. Conn. Oct. 22, 2019) (quoting *Stoianoff v. Comm'r of Motor Vehicles*, 208 F.3d 204 (2d Cir. 2000)); *see, e.g.*, *Watson*, 2023 WL 6200979, at *5–*6 (dismissing *pro se* claims for failure to properly effect service, where plaintiff sent the papers to defendants by UPS); *Rodriguez v. Lahar*, No. 15-cv-3446 (CS), 2016 WL 5376217, at *3 (S.D.N.Y. Sept. 26, 2016) (same, where plaintiff personally served the papers in violation of Fed. R. Civ. P. 4(c)(2) and 4(e)(1)).

Even if *pro se* status could conceivably excuse service failures, Tantaros should not be given any leniency. "The special solicitude generally due a *pro se* litigant depends upon that

particular party's litigation experience, as 'the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented.'" *Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 21-cv-00128 (PMH), 2022 WL 1406726, at *4 (S.D.N.Y. May 4, 2022) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)). Tantaros is an experienced, sophisticated litigant who has been represented by counsel in numerous actions and who appears to be *pro se* by choice here. Her *pro se* experience includes out-of-state service. Earlier this year, Tantaros hired a Florida process server to serve a defendant at her Florida residence in another action before this Court.[34] Because Tantaros knows how to serve out-of-state defendants, she cannot be given any leniency for failing to serve Brown.

Relatedly, courts properly deny motions for alternative service where a *pro se* plaintiff has not made the requisite showing. *See, e.g.*, *Gang Chen v. China Green Agric., Inc.*, No. 20-cv-09232 (MKV), 2021 WL 103306, at *3 (S.D.N.Y. Jan. 6, 2021) (denying *pro se* motion for alternative service where plaintiff made "a defective attempt at service" and offered "wholly speculative claims" that defendants might abscond with "stolen proceeds"). To justify alternative service, Tantaros must show that the methods permitted by New York law are "impracticable." *Kuklachev*, 2008 WL 5068860, at *3. "[A] plaintiff requesting expedient service 'must make some showing that the other prescribed methods of service could not be made and, without such a showing, fundamentally, a court is without power to direct expedient service.'" *Id.* (quoting *David v. Total Identity Corp.*, 50 A.D.3d 1484 (4th Dep't 2008)). Here, Tantaros makes no effort to show that serving Brown through ordinary methods was "impracticable." Nor could she; Tantaros knows how to hire a process server and has identified Brown's address of public record.

---

[34] Exhibit H (Return of Service, *Tantaros v. Fox News IV*).

### D.        Tantaros Cannot Show Good Cause for Failing to Serve Brown

Because Tantaros did not timely serve Brown, the Court must consider whether Tantaros has carried her "heavy burden" to show good cause for her failure. *Kogan*, 334 F.R.D. at 401. She has not. "To establish good cause, a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Deptula*, 558 F. Supp. 3d at 85 (internal quotation marks omitted). "Factors deemed outside of the plaintiff's control typically include sudden illness, natural catastrophe or evasion of service of process." *Fantozzi I*, 343 F.R.D. at 26. "[A] party's mere *pro se* status, or search for counsel, does not alone establish good cause for a failure to effect timely service." *Kogan*, 334 F.R.D. at 403.

Good cause does not exist here. Far from being diligent, Tantaros allowed 84 of her 90 days to lapse without making any attempt to serve Brown. Her single effort at service was patently deficient. Nor can Tantaros conceivably argue that some factor outside her control prevented her from accomplishing service. During the 90-day service window spanning February 27 to May 28, Tantaros was busily engaged in personally litigating *Tantaros v. Fox News IV* before this Court. A sample of her activities is listed below.

- March 4: Tantaros sought an expedited ruling on her application for a TRO.[35]

- March 14: Tantaros filed a letter regarding service on Elizabeth Ailes.[36]

- March 28: Tantaros opposed a motion to dismiss.[37]

- April 10: Tantaros filed a motion seeking recusal or reassignment.[38]

- April 25: Tantaros filed a letter motion seeking to correct docketing errors.[39]

---

[35] Exhibit F (Docket Sheet, *Tantaros v. Fox News IV*), ECF No. 29.
[36] *Id.*, ECF No. 35.
[37] *Id.*, ECF No. 43.
[38] *Id.*, ECF Nos. 47–48.
[39] *Id.*, ECF No. 50.

- May 22: Tantaros filed a letter seeking a ruling on her application for a TRO and regarding purported docketing errors.[40]

In short, Tantaros prioritized litigating *Tantaros v. Fox News IV* over diligently pursuing her claims in this case. The services rules are easy to understand, and Tantaros has hired an out-of-state process server to serve a defendant in another case.[41] She has no excuse at all, much less good cause. *Cf. Fantozzi I*, 343 F.R.D. at 28 (finding no good cause for failure to serve where plaintiff claimed it was "financially impracticable" to serve one defendant but "was able to pay for service on [another] defendant," and the plaintiff did "not provide information that would permit the Court find that he had acted diligently"); *Kogan*, 334 F.R.D. at 402 (same, where Kogan "has not come forward with any coherent, substantiated excuse for his failure to effect timely service"); *Deptula*, 558 F. Supp. 3d at 87–88 (same, where "plaintiff offers no explanation for her failure to effect proper service" (internal quotation marks omitted)).

### E.    No Discretionary Extension is Warranted

The Court should not grant a discretionary extension. "To obtain a discretionary extension absent a showing of good cause, the plaintiff must ordinarily advance some colorable excuse for neglect." *Deptula*, 558 F. Supp. 3d at 85 (internal quotation marks omitted).

> If such an excuse is advanced, courts also typically consider: (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.

*Fantozzi I*, 343 F.R.D. at 26. "[I]mportantly, even if the balance of hardships favors the plaintiff a district court may still decline to excuse a failure to timely serve the summons and complaint where

---

[40] *Id.*, ECF No. 53.
[41] Exhibit H (Return of Service, *Tantaros v. Fox News IV*).

the plaintiff fails to advance some colorable excuse for neglect." *Kogan*, 334 F.R.D. at 404 (internal quotation marks omitted). "Some courts have noted that the 'balance of hardships' must 'clearly favor the Plaintiff' in order to justify a discretionary extension of service." *Fantozzi I*, 343 F.R.D. at 26 (quoting *Kogan*, 334 F.R.D. at 404).

For the same reason Tantaros lacks good cause, she cannot show any colorable excuse for neglect. Tantaros has devoted extensive energy to prosecuting *Tantaros v. Fox News IV*. Had she devoted even a fraction of that effort to serving Brown, she could easily have accomplished it. She simply chose not to. Moreover, the balancing of hardships does not favor Tantaros, much less clearly favor her.

*Whether a refiled action would be time-barred.* The statute of limitations would bar a refiled action. Assuming *arguendo* the Amended GMVA revived Tantaros's claim (again, it did not), the two-year filing window expired on February 28, 2025, the day after Tantaros commenced this action. *See* N.Y.C. Admin. Code § § 10-1105(a). Any new action would therefore be untimely. The doctrine of relation back would not save the claim, as Rule 15 "does not enable pleadings in new cases to relate back to events in other, separately filed cases." *City of New York v. FedEx Ground Package Sys., Inc.*, 351 F. Supp. 3d 456, 475 (S.D.N.Y. 2018). Nor would a further amended complaint relate back, as service was never accomplished. *See In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1263 (S.D.N.Y. 1992) (holding that claims in amended complaint did not relate back where original complaint was never served, and dismissing claims as untimely).

Although this factor arguably favors Tantaros, the mere fact that her claim would be time-barred does not require extending the service period. "[W]ithout a colorable excuse for the failure to timely serve process, 'no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect.'" *Tolchin v. Cnty. of Nassau*, 768 F. App'x 60, 62

(2d Cir. 2019) (summary order) (quoting *Zapata*, 502 F.3d at 198). "Though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger." *Fantozzi I*, 343 F.R.D. at 29 (quoting *Knorr v. Coughlin*, 159 F.R.D. 5, 7 (N.D.N.Y. 1994)). The Second Circuit thus regularly upholds denials of discretionary extensions where a refiled claim would be untimely. *E.g.*, *Fantozzi II*, 2024 WL 1597745, at *2; *Fowler v. City of N.Y.*, 807 F. App'x 137, 139–40 (2d Cir. 2020) (summary order); *Harmon v. Bogart*, 788 F. App'x 808, 809–10 (2d Cir. 2019) (summary order); *Tolchin*, 768 F. App'x at 61–62.

*Whether the defendant had actual notice.* Brown does not dispute this factor. Although this factor arguably favors Tantaros, "[a] defendant's notice of a lawsuit does not excuse a plaintiff's failure to serve," *Kogan*, 334 F.R.D. at 406, and "notice—like the running of the statute of limitations—does not necessarily justify an extension of the service deadlines," *Fantozzi I*, 343 F.R.D. at 30. "Many courts, balancing equitable factors, have declined to extend service deadlines where defendants had actual notice of a complaint, but the plaintiff made no effort to achieve service, the resulting delay was lengthy, or plaintiffs failed to present a justifiable excuse for failing to effect service." *Id.* (internal quotation marks omitted). Here, Tantaros made no meaningful effort to achieve service and has no colorable excuse. Accordingly, this factor is also not dispositive.

*Whether defendant attempted to conceal the defect in service.* Brown has not concealed the defect in service. Nor could he. The defect was patent, as Tantaros's single effort at service did not comport with the plain text of the service rules. This factor therefore favors Brown. "Where, as here, there has been no showing that Defendants attempted to conceal the defect in service, an extension of time for service is less likely to be warranted." *Fantozzi I*, 343 F.R.D. at 30 (internal quotation marks omitted).

24

*Whether defendant would be prejudiced.* Brown would be greatly prejudiced by a discretionary extension of the service period. "[E]xtending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on defendants, which the Court can and should consider, especially where defendants did not conceal the defect in service." *Deptula*, 558 F. Supp. 3d at 89 (internal quotation marks omitted)); *accord Kogan*, 334 F.R.D. at 403 ("[E]xcusing [plaintiff's] service lapse would also visit prejudice on defendants, insofar as it would force them to defend against claims that, as a matter of law, are otherwise no longer viable."). The prejudice is particularly severe when the plaintiff elected to wait until the end of the statutory period to file the lawsuit. *See Fantozzi I*, 343 F.R.D. at 31 (explaining that a discretionary extension would "work a significant—not merely *de minimis*—hardship" where plaintiff filed "on the final day allowable under the relevant statute of limitations" and did not serve within the Rule 4(m) service window).

Here, even if the Amended GMVA revived Tantaros's claim (it did not), a discretionary extension would significantly prejudice Brown. The alleged conduct happened nearly ten years ago. (Am. Compl. ¶ 18.) Tantaros already let the generous, seven-year period to bring her GMVA claim lapse once. *See* N.Y.C. Admin. Code § 10-1105(a). Nor was she reticent or unwilling to publicly raise these allegations at the time. Tantaros alleged them nine years ago in *Tantaros v. Fox News I* and has been engaged in protracted litigation with Fox News ever since. Tantaros simply elected not to name Brown or pursue her claim. On top of that, Tantaros has already been the beneficiary of an "extreme example[]" of legislative largesse, *Levin*, 747 F. Supp. 3d at 662: the revival of her claims plus an additional two years to assert them. Even with this unexpected legislative boon, Tantaros slept on her rights until nearly the last day, and then made no legitimate effort to serve to Brown with the time permitted by Rule 4(m). In these circumstances, granting

Tantaros still more time—when she has made no effort to diligently pursue her claims—would work serious prejudice.

In these circumstances, the balance of equities plainly favors Brown, and a discretionary extension should be denied.

### F.    The Court Lacks Personal Jurisdiction Over Brown

Because service was improper, the Court has not acquired personal jurisdiction over Brown, and the claim should also be dismissed under Rule 12(b)(2). *See Fantozzi I*, 343 F.R.D. at 25–26 (citing *George v. N.Y.C. Health & Hosps. Corp.*, No. 09-cv-3833 (ENV) (JMA), 2012 WL 1072274, at *3 (E.D.N.Y. Mar. 29, 2012)).

\* \* \*

"[I]f the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if that means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits." *Kogan*, 334 F.R.D. at 403 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 222 F.R.D. 79, 81 (S.D.N.Y. 2004)). Even if Tantaros's claim was revived, she failed to serve the complaint and has no legitimate excuse. Her claim is once again beyond the statute of limitations, and it should be dismissed with prejudice.

### <u>CONCLUSION</u>

"Statutes of limitations promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (internal quotation marks omitted). Tantaros has had and squandered her chances to bring this claim, despite publicly alleging the incident at the core of her claim against Brown nine years ago. The Court should dismiss Tantaros's claim with prejudice.

26

Dated:  June 26, 2025
      New York, New York

                            Respectfully submitted,

                            **GREENBERG TRAURIG, LLP**

                            By:  /s/ *Richard A. Edlin*
                                  Richard A. Edlin
                                  One Vanderbilt Avenue
                                  New York, NY 10017
                                  (212) 801-9200
                                  edlinr@gtlaw.com

                                  *Attorneys for Defendant Scott Brown*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit because it contains 8,750 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document.

*/s/ Richard A. Edlin*
Richard A. Edlin
