UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREA K. TANTAROS,

      Plaintiff,

  v.

FOX NEWS NETWORK, LLC, FOX
CORPORATION, ROGER AILES,
WILLIAM SHINE, JOHN FINLEY,
SCOTT BROWN, and SUZANNE SCOTT,

      Defendants.

Case No. 25-cv-01675 (VSB)

Hon. Vernon S. Broderick

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT SCOTT BROWN'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Preliminary Statement ........................................................................................................................ 1

Argument ............................................................................................................................................ 2

    I.        Tantaros's Claim Against Brown Is Untimely ................................................................... 2

    II.       Tantaros's Service Arguments Fail .................................................................................... 4

    III.      The Scope of the GMVA Is Irrelevant to the Timeliness Issue ......................................... 6

    IV.      Tantaros's "Corroboration" Argument Fails ...................................................................... 9

    V.       Tantaros's Brief Contains Troubling Inaccuracies ........................................................... 10

Conclusion ........................................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baldwin v. TMPL Lexington LLC*
   No, 23-cv-9899 (PAE), 2024 WL 3862150 (S.D.N.Y. 2024) ....................................................9

*Benjamin v. Costco Wholesale Corp.*,
   No. 2:24-CV-7399 (LGD), 2025 WL 1195925 ...............................................................10, 11

*United States ex rel. Billington v. HCL Tech. Ltd.*,
   126 F.4th 799 (2d Cir. 2025) ..................................................................................................10

*Brinks Glob. Servs. USA, Inc. v. Bonita Pearl Inc.*,
   686 F. Supp. 3d 357 (S.D.N.Y. 2023).......................................................................................5

*Deptula v. Rosen*,
   558 F. Supp. 3d 73 (S.D.N.Y. 2021).........................................................................................5

*Fantozzi v. City of New York*,
   343 F.R.D. 19 (S.D.N.Y. 2022), *aff'd*, No. 23-1111, 2024 WL 1597745 (2d
   Cir. Apr. 12, 2024)....................................................................................................................4

*Figueroa v. Ponce De Leon Fed. Bank.*,
   No. 11-cv-07633 (PAC) (HBP), 2012 WL 3264552 (S.D.N.Y. Aug. 10, 2012).....................10

*Friedman v. Bartell*,
   No. 22-CV-07630, 2024 WL 1076736 (S.D.N.Y. Mar. 12, 2024) ...................................3, 6, 8

*Harris v. Franklin-Williamson Hum. Servs., Inc.*,
   97 F. Supp. 2d 892 (S.D. Ill. 2000) ..........................................................................................8

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*,
   96 F.4th 539 (2d Cir. 2024) ......................................................................................................2

*Kogan v. Facebook, Inc.*,
   334 F.R.D. 393 (S.D.N.Y. 2020) .........................................................................................4, 6

*Kuklachev v. Gelfman*,
   No. 08-cv-2214 (CPS), 2008 WL 5068860 (E.D.N.Y. Nov. 24, 2008)....................................6

*In re Perkins*,
   No. 24-32731-THP13, 2025 WL 1871049 (Bankr. D. Or. July 7, 2025) ...............................10

*Roe v. Bernabei & Wachtel PLLC*,
   85 F. Supp. 3d 89 (D.D.C. 2015) .............................................................................................9

*Sage IT, Inc. v. Cissna*,
    314 F. Supp. 3d 203 (D.D.C. 2018) ............................................................................................9

*United States v. Abu Khatallah*,
    314 F. Supp. 3d 179 (D.D.C. 2018) ............................................................................................9

*Watson v. New York*,
    No. 22-CV-9613 (KMK), 2023 WL 6200979 (S.D.N.Y. Sept. 22, 2023) ...............................5

*Zapata v. City of New York*,
    502 F.3d 192 (2d Cir. 2007) ......................................................................................................5

**State Cases**

*Al-Hamim v. Star Hearthstone, LLC*,
    564 P.3d 1117 (Col. Ct. App. 2024) ........................................................................................11

*Am. Transit Ins. Co. v. Comfort Choice Chiropractic, P.C.*,
    229 N.Y.S.3d 514 (2d Dep't 2025) .........................................................................................3, 4

*Breest v. Haggis*,
    180 A.D.3d 83 (1st Dep't 2019) ..............................................................................................8, 9

*Makinen v. City of New York*,
    30 N.Y.3d 81 (N.Y. 2017) .........................................................................................................3

*S.H. v. Diocese of Brooklyn*,
    205 A.D. 3d 180 (2d Dep't 2022) ..............................................................................................3

*Singer v. Eli Lilly & Co.*,
    153 A.D.2d 210 (1st Dep't 1990) ..............................................................................................4

**State Statutes**

City of New York, L.L. 21/2022 ....................................................................................................2, 7

N.Y.C. Admin. Code § 10-1104 ..................................................................................................8, 9

NYC Admin. Code §§ 10-1101 *et seq.* ............................................................................................7

**Rules**

Fed. R. Civ. P. 4(d) ..........................................................................................................................5

Fed. R. Civ. P. 4(e) ..........................................................................................................................5

Fed. R. Civ. P. 4(m) ................................................................................................................4, 5, 6

Fed. R. Civ. P. 12(b)(6) .................................................................................................................10

**PRELIMINARY STATEMENT**

Tantaros makes no meaningful response to Brown's arguments for dismissal.[1] She offers no plausible reading of the Amended GMVA under which it could somehow revive a claim that was live at the time of enactment. Even assuming *arguendo* her claim was revived, Tantaros offers no justification for not timely serving Brown, and the claim should be dismissed for an inexcusable failure to effect service within the service window. Finally, Tantaros's arguments about the scope of the GMVA and materials supposedly "corroborating" her allegations are wholly irrelevant.

Beyond being meritless, Tantaros's brief contains numerous troubling inventions and inaccuracies that suggest the use of an AI tool whose output wasn't verified for accuracy. Tantaros cited two cases that, she now admits, do not exist. Although Tantaros purported to "withdraw[]" the fake cases after Brown raised the issue, she did not withdraw the baseless argument she claimed they support, and she wholly fails to recognize the gravity of this conduct. Even with these corrections, Tantaros's brief is filled with troubling errors, including a fictional quotation from the Amended GMVA and serious mischaracterizations of many real authorities. All filers must confirm their papers are accurate before filing. Tantaros evidently did not.

Tantaros's opposition is, in short, a complete waste of the Court's (and Brown's) time and resources. Even so, Brown seeks no sanction or inquiry from the Court at the present time. As a straightforward application of real legal principles dooms her claim against Brown, the more efficient course is to promptly dismiss the claim with prejudice in the strongest possible terms.

---

[1] Capitalized terms have the same meanings as in Brown's opening brief. *See* Memorandum of Law in Support of Defendant Scott Brown's Motion to Dismiss ("Brown Mem."), ECF No. 17.

**ARGUMENT**

I.   **Tantaros's Claim Against Brown Is Untimely**

The Court should reject Tantaros's bare assertion that her claim is timely because it was filed during the Amended GMVA filing window. (Opp. 11–12.) This argument rests on the mistaken premise that her claim was revived by the Amended GMVA. As shown, the statute only revived claims that had already expired at the time of enactment. (Brown Mem. 10–14.) Because Tantaros's claim was still live at the time of enactment, it was not revived, and it has now expired. (*Id.* at 14.) Tantaros's argument doesn't discuss the language of the statute or address the authorities and interpretive principles squarely supporting Brown's reading.

Taken generously, Tantaros is arguing that the Amended GMVA revived claims, not as of the time of enactment, but as of the opening of the revival window. But the Second Circuit rejected that exact argument when interpreting a claim revival statute containing the same key language as the GMVA. *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 543 n.3 (2d Cir. 2024) ("*Jones I*") (rejecting argument that the Child Victims Act "did not revive claims until the start of the filing window" as "plainly contradicted by the text"), *certified question accepted*, 41 N.Y.3d 969 (N.Y. 2024), *and answered*, No. 107, 2025 WL 554454 (N.Y. Feb. 20, 2025). The Amended GMVA and the Child Victims Acts both provide that they "hereby revived" expired claims and that they take effect "immediately." *Compare* City of New York, L.L. 21/2022 § 2, *with Jones I*, 96 F.4th at 542 (quoting the Child Victims Act). The statutes should therefore be interpreted the same way.

Indeed, Tantaros herself seems to acknowledge this important holding of *Jones I*, which she cites with the following parenthetical description: "***revival occurs as of statute's effective date***; claims may be filed any time within the window." (Opp. 11 (emphasis added).) Just so—and the GMVA should be read the same way.

2

Tantaros's other cases (like *Jones I*, both originally cited by Brown) likewise do not support her argument, and her description of these cases is seriously inaccurate. She cites *S.H. v. Diocese of Brooklyn*, 205 A.D. 3d 180, 187–89 (2d Dep't 2022) for the proposition that it "uphold[s] [the] constitutionality and legislative intent of revival statutes for historic abuse claims." (Opp. 10.) But *S.H.* did not involve a constitutional challenge, and none is made here anyway. Instead, *S.H.* recognized that claim revival statutes must be "narrowly construed," read the Child Victims Act to not apply to claims outside New York, and rejected a claim as time-barred. 205 A.D.3d at 188.

Tantaros's description of *Friedman v. Bartell*, No. 22-cv-07630, 2024 WL 1076736 (S.D.N.Y. Mar. 12, 2024), is also at odds with the decision. She claims that, in *Friedman*, "[a] revived GMVA claim [was] upheld under the look-back provision." (Opp. 10.) But *Friedman* is not a GMVA case, and it dismissed a Child Victims Act claim as time-barred because it was filed outside the filing window. *See* 2024 WL 1076736, at *6. Most importantly, it interpreted the claim revival provision of the Child Victims Act exactly as Brown urges the GMVA should be interpreted: the revival provision applies to "claims already time-barred as of February 14, 2019," the statute's effective date. *Id.*

In the end, Tantaros is asking the Court to disregard plain meaning in favor of what she assumes is the legislative intent. But "[i]nasmuch as the text of a statute is the clearest indicator of such legislative intent, where the disputed language is unambiguous, courts are bound to give effect to its plain meaning." *Am. Transit Ins. Co. v. Comfort Choice Chiropractic, P.C.*, 229 N.Y.S.3d 514, 518 (2d Dep't 2025) (brackets omitted) (quoting *Makinen v. City of New York*, 30 N.Y.3d 81, 85 (N.Y. 2017)). Put differently, "[w]hen the plain language of the statute is precise and unambiguous, it is determinative." *Id.* (citation omitted). Even if there were any ambiguity— and there is not—a "revival statute . . . obliterates reasonable expectations by resuscitating claims

3

based on events occurring many years ago, and, thus, must be narrowly construed." *Singer v. Eli Lilly & Co.*, 153 A.D.2d 210, 221 (1st Dep't 1990).

By its plain terms, the Amended GMVA revived claims at the time of enactment. It cannot be read to do more. Because Tantaros's claim had not expired at the time of enactment, it was not revived, and it is now time-barred.

## II. Tantaros's Service Arguments Fail

Even if the claim was revived (it wasn't), it should be dismissed for Tantaros's wholly unjustified failure to effect timely service. The Court can quickly dispatch Tantaros's service arguments, which fail to engage with the well-established legal framework under Rule 4(m). (*See* Brown Mem. 14–26.)

A central issue is whether Tantaros has come forward with any legitimate, substantiated reason for her failure to timely serve. That is the floor Tantaros must reach for the Court to consider a discretionary extension; a good cause extension requires far more. *See, e.g.*, *Fantozzi v. City of New York*, 343 F.R.D. 19, 26 (S.D.N.Y. 2022), *aff'd*, No. 23-1111, 2024 WL 1597745 (2d Cir. Apr. 12, 2024); *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 401, 404 (S.D.N.Y. 2020). Tantaros offers no excuse whatsoever—not even her self-represented status, which would be insufficient in any event. *See Kogan*, 334 F.R.D. at 403 (collecting cases). Nor does Tantaros try to dispute the factual record proving that she has no justification. She admits that, during the service window, she made only a single attempt at service. (Opp. 12; *see* Brown Mem. 8.) She does not dispute that, during that same window, she had the capacity to devote significant attention to litigating *Tantaros v. Fox News IV*. (*See* Brown Mem. at 21–22.) And she does not deny that she hired a process server to handle out-of-state service in that case. (*See id.* at 7, 22.) Tantaros simply asserts that she has somehow been "diligent[]." (Opp. 12.) That makes this an easy call. Because Tantaros has not tried to show good cause or a colorable excuse, she deserves no extension.

4

Instead of making arguments under the well-developed Rule 4(m) framework, Tantaros invents new rules and claims she meets them. These arguments cannot be accepted.

*First*, Tantaros argues that service can be deemed good when there has been "actual notice and substantial compliance with Rule 4(e)." (Opp. 12.) Tantaros's sole "support" for her argument is a pair of cases (originally cited by Brown) that illustrate that her method of service—sending papers to the defendant's residence—is invalid even where the defendant has notice. *See Watson v. New York*, No. 22-CV-9613 (KMK), 2023 WL 6200979, at *5-*6 (S.D.N.Y. Sept. 22, 2023) (dismissing complaint for improper service, where *pro se* plaintiff sent pleadings by UPS and defendant appeared and moved to dismiss); *Deptula v. Rosen*, 558 F. Supp. 3d 73, 86 (S.D.N.Y. 2021) (same, where plaintiff mailed the pleadings). "Substantial compliance" is likewise irrelevant; that doctrine may apply when a plaintiff sought a voluntary waiver of service under Rule 4(d). *See Brinks Glob. Servs. USA, Inc. v. Bonita Pearl Inc.*, 686 F. Supp. 3d 357, 365 (S.D.N.Y. 2023). Tantaros did not. (Opp. 12; Affidavit of Service ¶ 9, ECF No. 14.) Even if a "substantial compliance" doctrine applied, her own cases show that mailing the papers falls short.

*Second*, Tantaros invents the following "rule" and says that she satisfies it: "Courts in this Circuit have held that where a plaintiff demonstrates good faith, actual notice, and a pending motion for alternative service, dismissal is not warranted." (Opp. 12.) But that is not the law. Once again, the cases she cites to "support" this argument—all originally cited by Brown—prove as much. *See Zapata v. City of New York*, 502 F.3d 192, 197–99 (2d Cir. 2007) (recognizing district court's discretion to deny an extension even where it will result in a dismissal with prejudice); *Kogan*, 334 F.R.D. at 402 (S.D.N.Y. 2020) (finding no good service and no good cause, and denying a discretionary extension where plaintiff had no "coherent, substantiated excuse for his failure effect timely service," defendant had actual notice, and an extension would prejudice

5

defendant by forcing him to defend a stale claim). Tantaros's third case is wholly inapposite. *See Friedman*, 2024 WL 1076736, at *5-*6 (dismissing claim against international defendant where claim was untimely and "there is no indication that he has received the summons and complaints").

*Third*, Tantaros makes the bare assertion that filing a motion for alternative service tolls the service deadline. (Opp. 12.) She cites zero authorities supporting that theory, and the Court should reject it. Extensions of the service deadline are governed by Rule 4(m) and the extensive body of caselaw interpreting it—the same law that Tantaros ignores. A plaintiff cannot sidestep it by simply filing a motion for alternative service. That is doubly true here, as the motion in question is facially meritless for failing to show that ordinary service methods are "impracticable." *Kuklachev v. Gelfman*, No. 08-cv-2214 (CPS), 2008 WL 5068860, at *3 (E.D.N.Y. Nov. 24, 2008).

**III.    The Scope of the GMVA Is Irrelevant to the Timeliness Issue**

Tantaros's arguments that the alleged conduct falls within the GMVA also do not save her claim. (Opp. 9–11.) Much of Tantaros's argument attacks a strawman. Although Tantaros urges that the alleged improper touching in August 2015 falls within the statute (Opp. 10), Brown did not argue otherwise. Instead, he argued that a claim based on that conduct is untimely. (Brown Mem. 9–14.)

Brown did explain that the alleged conduct ***other*** than the August 2015 incident—vague allegations of "constant inappropriate and offensive remarks"—is not actionable because it falls outside the statutory definition of crime of violence. (*Id.* at n.29 (quoting Am. Compl. ¶ 42).) Tantaros urges that this other conduct is independently actionable. (Opp. 10.) Her arguments are unavailing for two reasons.

*First*, Tantaros's papers leave no room for doubt: Tantaros is suing for the alleged improper touching in August 2015. That is the core allegation against Brown and the only conduct alleged with any meaningful specificity. Tantaros herself admits that the August 2015 conduct is "[a]t the

6

heart of this case." (*Id.* at 5.) She further explains that "Plaintiff's claim involves unwanted groping, physical contact, and verbal harassment by Defendant Brown on August 18, 2015 . . . ." (*Id.* at 11–12.) In short, there is no independent claim for "constant inappropriate and offensive remarks"; Tantaros is suing for the same alleged improper touching she first publicly alleged nine years ago. That claim is untimely.

*Second*, inappropriate remarks are not independently actionable in any event. Although Tantaros accuses Brown of making a "deliberate misstatement of the law" by saying that the GMVA requires a serious risk of physical injury, it is Tantaros who misstates the law. (Opp. 11.) She claims that "[t]he GMVA expressly applies to 'assault, sexual misconduct, sexual abuse, and other forms of gender-based violence, including emotional abuse and harassment.'" (Opp. 9.) Although she purports to be quoting the GMVA, Tantaros did not cite the statute (or anything else), and that language is absent from its text. *See generally* NYC Admin. Code §§ 10-1101 *et seq*. That quotation is fictional, and it should be disregarded. Similarly, Tantaros urges—again without citation—that the statute "clarified and expanded this scope to include verbal intimidation and psychological coercion." (Opp. 10.) That is wrong. Although the amendment expanded liability, it did so by extending liability to certain individuals who didn't personally commit a crime of violence but who were involved in another's crime—not by redefining "crime of violence." *See* City of New York, L.L. 21/2022 § 1.[2]

---

[2] *Available at* https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=5072017&GUID=BA4C2A62-23E0-4AB2-B3A1-AC18F53C9993&Options=ID%7cText%7c&Search=Gender+motivated-. (last visited July 21, 2025).

7

In fact, the statute reads exactly as Brown said. The GMVA creates a cause of action for victims of "a crime of violence motivated by gender." N.Y.C. Admin. Code § 10-1104. As Tantaros's own case states, directly quoting the statute:

> The term "crime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law . . . ***if the conduct presents a serious risk of physical injury to another***, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction"

*Breest v. Haggis*, 180 A.D.3d 83, 88 (1st Dep't 2019) (ellipsis in original) (emphasis added) (quoting N.Y.C. Admin. Code § 10-1104). The GMVA is not a catch-all workplace civility statute, and inappropriate remarks are not a "crime of violence" under its plain language. *Cf. Harris v. Franklin-Williamson Hum. Servs., Inc.*, 97 F. Supp. 2d 892, 907 (S.D. Ill. 2000) (holding that a "heated argument" where the parties were "yelling and saying mean things to each other" was not a "crime of violence based on gender") (interpreting federal Violence Against Women Act).

Tantaros's brief cites four authorities to try to show that the GMVA covers inappropriate remarks. (Opp. 10.) None supports her argument. One sustained a GMVA claim based on rape and sexual assault. *See Breest*, 180 A.D.3d at 85. Another dismissed a claim under the Child Victims Act as untimely. *See Friedman*, 2024 WL 1076736, at *2, *4-*6. Neither bears on the relevant issue.

Tantaros's remaining two case citations, reproduced below, are more problematic:

> *M.D. v. New York State Off. for People with Developmental Disabilities*, 2023 WL 3404357, at *10 (S.D.N.Y. 2023) (verbal, psychological, and physical abuse all actionable under GMVA); *Roe v. Bernabei & Katz,* PLLC, 314 F. Supp. 3d 200, 209 (D.D.C. 2018) (under analogous D.C. GMVA, "harassing comments, threats, and gestures of a sexual nature" are covered).

(Opp. 10.) As Tantaros has now admitted, these are not real cases. The "*M.D.*" citation yields no results, and Brown can find no case by that name. The "*Roe*" citation and pincite point to two

8

different, inapposite cases. *See United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 200 (D.D.C. 2018) (sentencing); *Sage IT, Inc. v. Cissna*, 314 F. Supp. 3d 203, 209 (D.D.C. 2018) (administrative law). The similarly named *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89 (D.D.C. 2015), has a different citation and does not resemble Tantaros's description. Shortly after Tantaros's papers were docketed, Brown's counsel raised this issue with Tantaros and asked for copies of these decisions.[3] In a filing docketed on Friday, Tantaros admitted these cases "could not be verified"—*i.e.*, were fake—and purported to "withdraw[]" them.[4] She did not, however, withdraw the baseless argument that the statute covers inappropriate remarks. This argument remains unsupported and must be rejected.

Accordingly, Tantaros's arguments about the scope of the GMVA do not save her claim.

## IV. Tantaros's "Corroboration" Argument Fails

The Court should reject Tantaros's argument that she states a claim because her allegations are supposedly "corroborated" by various materials outside the complaint. (Opp. 5; *see id.* at 7–9.) On a motion to dismiss, Tantaros's allegations are taken as true; corroboration is neither required nor relevant. *See United States ex rel. Billington v. HCL Tech. Ltd.*, 126 F.4th 799, 803 (2d Cir. 2025). Although Tantaros's allegations are false, Brown does not seek dismissal on that ground. Rather, accepting them as true solely for purposes of this motion, the complaint

---

[3] Supplemental Declaration of Richard A. Edlin ¶ 2, filed contemporaneously herewith.

[4] Notice of Correction of Citations ("Notice") at 1, ECF No. 22. The Notice belatedly cites a new authority, *Baldwin v. TMPL Lexington LLC* No, 23-cv-9899 (PAE), 2024 WL 3862150 (S.D.N.Y. 2024), which also does not support her argument. The case's conclusion that a crime against a person need not involve a risk of physical injury, *see id.* at *11, is at odds with *Breest*, which indicates that the "serious risk of physical injury" requirement applies to crimes against the person. *See* 180 A.D.3d at 88 (quoting N.Y.C. Admin. Code § 10-1104). *Baldwin* also acknowledges that numerous federal courts have read the statute as Brown urges. *See* 2024 WL 3862150, at *11 n.7. On its facts, moreover, *Baldwin* sustained a claim based on "forcibl[e] touching without . . . consent," where the plaintiff identified a statute criminalizing that conduct. *Id.* at *11, *12-*13. In short, *Baldwin* does not hold or suggest that inappropriate remarks are actionable.

9

demonstrates that the claim is untimely. It must therefore be dismissed. *See Figueroa v. Ponce De Leon Fed. Bank.*, No. 11-cv-07633 (PAC) (HBP), 2012 WL 3264552, at *1-*2 (S.D.N.Y. Aug. 10, 2012) (dismissing on timeliness grounds on a Rule 12(b)(6) motion).

## V. Tantaros's Brief Contains Troubling Inaccuracies

Tantaros's brief contains numerous troubling inventions and inaccuracies, including two fake cases, an invented quotation from the GMVA, and woefully erroneous characterizations of real authorities. These are hallmarks of blind reliance on an AI tool that "hallucinate[d]," *i.e.*, "produce[d] blatantly incorrect information that, on its face, appears truthful." *Benjamin v. Costco Wholesale Corp.*, No. 2:24-CV-7399 (LGD), 2025 WL 1195925, at *1 (E.D.N.Y. Apr. 24, 2025 (internal quotation marks omitted).

However the brief was generated, attorneys and self-represented parties alike have a responsibility to verify that their papers are accurate, and failing to do so can support sanctions. *See, e.g.*, *In re Perkins*, No. 24-32731-THP13, 2025 WL 1871049, at *6-*7 (Bankr. D. Or. July 7, 2025) (explaining that an attorney's or party's failure to "independently verify that the information about [an] authority to be provided to the court is correct before submitting the document to the court" is sanctionable but refraining from issuing sanctions because the party's arguments failed on the merits); *Al-Hamim v. Star Hearthstone, LLC*, 564 P.3d 1117, 1126 (Col. Ct. App. 2024) ("A lawyer's or a self-represented party's future filing in this court containing GAI-generated hallucinations may result in sanctions."); *see also Benjamin*, 2025 WL 1195925, at *6 (collecting cases).

Even a minimal effort to verify Tantaros's brief would have revealed its errors. Although Tantaros eventually purported to withdraw the two bogus cases, she did so only after Brown's counsel raised the issue (and after the work on Brown's reply brief was substantially complete). Her explanation for citing fake cases is that the citations looked real and were offered up by a

"legal tool."[5] That is no excuse. Indeed, it only confirms that Tantaros did not try to locate and read these cases before filing and wholly relied on the output of her "legal tool." That slapdash approach would also explain many of the serious deficiencies that remain in the brief after the correction. This type of conduct causes well-known harms, including "taking the court's time from other important endeavors" and "wasting the opposing party's time and money in exposing the deception." *Al-Hamim*, 564 P.3d at 1124 (internal quotation marks and citations omitted).

At present, Brown does not seek sanctions or request an inquiry by the Court, as an inquiry would only waste more of the Court's and Brown's time and resources. It is sufficient that Tantaros's fakery is not credited. Because a straightforward application of the law requires dismissal of her claim, the more efficient course is to dismiss with prejudice.

## CONCLUSION

The claim against Brown was always both untimely and meritless. With Tantaros's error-strewn opposition brief, this action has descended into farce. The claim against Brown should be promptly dismissed with prejudice in the strongest possible terms.

Dated: July 21, 2025
New York, New York

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ *Richard A. Edlin*
Richard A. Edlin
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200
edlinr@gtlaw.com

*Attorneys for Defendant Scott Brown*

---

[5] Notice at 1.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit because it contains 3,496 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document.

/s/ <i>Richard A. Edlin</i><br>
Richard A. Edlin