# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREA K. TANTAROS,<br><br>        Plaintiff,<br><br>   v.<br><br>FOX NEWS NETWORK, LLC, FOX CORPORATION, ROGER AILES, WILLIAM SHINE, JOHN FINLEY, SCOTT BROWN, and SUZANNE SCOTT,<br><br>        Defendants. | Case No. 25-cv-01675 (VSB)<br><br>Hon. Vernon S. Broderick |

**DEFENDANT SCOTT BROWN'S [PROPOSED] RESPONSE TO
PLAINTIFF ANDREA K. TANTAROS'S SUR-REPLY**

# ARGUMENT

Tantaros's uninvited sur-reply is patently meritless. And once again, its problems run far deeper than that. Brown's reply brief identified numerous grave problems with Tantaros's opposition brief, including fake and mischaracterized cases and a fictional quotation from the GMVA.[1] Tantaros's latest filing offers no explanation or apology and does not even acknowledge the errors. Incredibly, the new brief is plagued with the same alarming errors.[2] Tantaros cites more fake decisions, she again mischaracterizes cases to the point of unrecognizability, and she misrepresents Brown's service arguments. In fact, the entire filing rests on a falsehood. Although Tantaros claims that she is opposing Brown's "Supplemental Motion for Dismissal," no such motion exists. She is simply responding to Brown's reply without leave.

Tantaros's practices are abusive in the extreme and have required the expenditure of far too much lawyer time and far too many judicial resources. Tantaros's claim against Brown should be promptly dismissed with prejudice, and it would be well within the Court's discretion to sanction Tantaros for her repeated misconduct.

## I.   The GMVA Claim Is Untimely

The Court should reject Tantaros's argument that her claim is timely because it was filed during the GMVA revival window. Like Tantaros's previous filings, her latest does not discuss the statutory language or the authorities that firmly support Brown's reading of the statute. The only new "support" for her argument is the following citation to a case that she does not name: "36 N.Y.3d 450, 455–56 (2021) (revival statutes operate as explicit legislative suspension of time

---

[1] Reply Memorandum of Law in Further Support of Scott Brown's Motion to Dismiss ("Reply") 1, 10–11, ECF No. 25. Capitalized terms have the same meanings as in Brown's opening brief. *See* Memorandum of Law in Support of Defendant Scott Brown's Motion to Dismiss ("Brown Mem."), ECF No. 17.

[2] Plaintiff's Opposition to Defendant Scott Brown's Supplemental Motion to Dismiss ("Sur-Reply"), ECF No. 36.

bars and are to be enforced as written)." (Sur-Reply 5.) The cited decision is the wholly inapposite *Doe v. Bloomberg L.P.*, which construes the meaning of the word "employer" under a different statute and which contains no discussion at all of revival provisions or timeliness issues. *See* 36 N.Y.3d at 454–64. The case does not remotely resemble Tantaros's description, and it does not support her bare contention that the GMVA somehow revived claims (like hers) that had not expired at the time of enactment. For all the reasons Brown has explained, that is not the law, and Tantaros's claim must be dismissed as untimely. (Brown Mem. 9–14; Reply 2–4.)

**II.     The GMVA Claim Does Not Cover Inappropriate Remarks**

Tantaros's contention that the GMVA covers inappropriate remarks, without more, remains irrelevant. (Sur-Reply 6–7.) Tantaros's GMVA claim is time-barred in its entirety. (*See* Reply 6–7.) Even taken on its own terms, her argument fails. The only new "support" Tantaros offers are citations to two new cases, which appear in her brief as follows:

> *See also Garcia v. Comprehensive Ctr., LLC*, No. 21-CV-6945, 2022 WL 2237452, at 4–5 (S.D.N.Y. June 22, 2022) (physical and verbal acts covered where gender-motivated); *See Torres v. City of New York*, No. 20-CV-3384, 2021 WL 3725985, at 8 (S.D.N.Y. Aug. 23, 2021) (words and threats can constitute actionable violence).

(Sur-Reply 6.) The case names, numbers, and citations all point to different authorities, none of which resembles Tantaros's descriptions. So far as Brown can determine, these cases are fake.

Starting with "*Garcia*," in this District the cited case number is assigned to a Section 1983 action challenging conditions of confinement. *See* Complaint, *King v. City of New York*, No. 21-cv-6945 (VSB) (S.D.N.Y. filed Aug. 17, 2021). The Westlaw citation points to a class certification decision from a case challenging a university's responses to the COVID-19 pandemic. *See Garcia de Leon v. New York Univ.*, No. 21-cv-5005 (CM), 2022 WL 2237452 (S.D.N.Y. June 22, 2022). And although Brown did locate a GMVA decision titled *Garcia v. Comprehensive Ctr., LLC*, it

has a different citation, it undermines rather than supports Tantaros's argument, and her parenthetical description does not fairly describe it. *See Garcia v. Comprehensive Ctr., LLC*, No. 17-cv-8970 (JPO) (BCM), 2018 WL 3918180, at *5 (S.D.N.Y. Aug. 16, 2018). The decision requires (as Brown urges) that a GMVA plaintiff allege conduct "presenting a serious risk of physical injury," and the court dismissed the claim for failing to allege "gender specific animus" without addressing whether the alleged conduct was actionable. *Id.* at *5. On top of that, the alleged conduct involved serious physical violence and threats to do more. *See id.* at *1.

As for "*Torres*," in this District the cited case number is associated with a proceeding to confirm an arbitration award arising out of a cryptocurrency deal. *See* Complaint, *Benthos Master Fund, Ltd. v. Etra*, No. 20-cv-3384 (AJN) (S.D.N.Y. filed Apr. 30, 2020); *Benthos Master Fund, Ltd. v. Etra*, No. 20-cv-3384 (AJN), 2020 WL 4700901 (S.D.N.Y. Aug. 12, 2020) (confirming award). The Westlaw citation points to a Section 1983 action for excessive force and false arrest. *See Bey v. Antoine*, No. 19-cv-1877 (PKC) (RER), 2021 WL 3725985 (S.D.N.Y. Aug. 23, 2021). And in an apt illustration of the harms caused by citing fake cases, there are upwards of thirty decisions in this District alone titled *Torres v. City of New York*, rendering individualized examination unduly onerous. But without individually examining the *Torres* decisions, and based on the search tools available to Brown, it does not appear that any involves a GMVA claim, much less supports the argument that the GMVA extends to inappropriate remarks without more.[3]

In total, Tantaros has now "supported" her argument about the scope of the GMVA with a fictional quotation from the GMVA, four fake cases, two cases that sustain GMVA claims cased

---

[3] Tantaros again cites *Baldwin v. TMPL Lexington LLC*, No. 23-cv-9899 (PAE), 2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024), which Brown addressed on reply and which does not support her argument. (*See* Reply 9 n.4.) As yet more evidence of blind reliance on an AI tool, Tantaros's latest filing identifies this decision by a non-existent Westlaw citation ("2024 WL 4050168") even though she correctly cited it in the past. (Sur-Reply 6.)

3

based on rape and forcible touching without consent, and one case that dismissed a Child Victims Act claim as untimely. (*See supra* at 2–3; Reply 7–9 & n.4.) Tantaros is resorting to fake and inapposite cases because she is wrong on the law. Even if Tantaros had a separate claim for inappropriate remarks—and she doesn't—she has failed to show that that conduct constitutes a "crime of violence" within the meaning of the GMVA.

### III. Tantaros's Service Arguments Fail

Tantaros's service arguments must be rejected. (Sur-Reply 7–8.)

*First*, Tantaros might be understood as arguing that Brown has conceded service is good. She writes that "Brown stresses that Plaintiff should have served him via USPS Certified Mail." (Sur-Reply 8.) Another recent filing by Tantaros, although principally addressing other defendants, claims that Brown "emphasizes repeatedly in his Reply that USPS Certified Mail constitutes proper service."[4] This is all false. Brown's argument is that service by mail ***is not proper***, irrespective of actual notice. (Brown Mem. 16–20; Reply 5.) Relatedly, Tantaros's attempt to cure her original service error by mailing the papers to Brown and his counsel is ineffective because that is the same defective method she used before—only this time, after the service deadline.

*Second*, Tantaros's argument that she properly served Brown in accordance with the Court's recent decision denying alternative service cannot be credited. (Sur-Reply 8.) The cited portion of the Court's decision did no more than generally set forth the service requirements under New York law. (Order dated Aug. 5, 2025 ("August 5 Order"), ECF No. 35.) The Court never suggested (much less held) that service by mail is good, and the law is clear that it is not—irrespective of whether the defendant had actual notice. *See, e.g.*, *Watson v. New York*, No. 22-CV-9613 (KMK), 2023 WL 6200979, at *5-*6 (S.D.N.Y. Sept. 22, 2023) (dismissing complaint

---

[4] Plaintiff's Opposition to Defendants' Request for Extension of Time and Objection to Defendants' Request to Dismiss the Complaint 3, ECF No. 29.

4

for improper service, where *pro se* plaintiff sent pleadings by UPS and defendant appeared and moved to dismiss).

*Third*, the Court should reject Tantaros's argument that service was good because Brown had actual notice. Tantaros's latest support for this argument comprises four aged and inapposite Ninth Circuit decisions. Only one deals with service by mail, and it is plainly distinguishable. *See Borzeka v. Heckler*, 739 F.2d 444 (9th Cir. 1984). *Borzeka* required the plaintiff to have a "justifiable excuse for the failure to serve properly," and it found that requirement satisfied because the district court purportedly told the plaintiff "that he could not deliver the summons and complaint himself and that the United States Marshal's office would not deliver the documents." *Id.* at 447, 446. Here, Tantaros has never offered any excuse at all for failing to serve.

Tantaros's remaining cases are leagues apart from this one. *See Errion v. Connell*, 236 F.2d 447, 457 (9th Cir. 1956) (deeming service good where the sheriff personally "pitched the papers" into a defendant's apartment); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994) (same, where corporation was served through personal delivery on owner and president); *United Food & Com. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) (rejecting argument that technical defect in summons invalidated service). Tantaros's treatment of *Errion* is particularly troubling. She purports to quote the following sentence from the decision: "Where actual notice of the proceedings has been received, and the defendant has not been prejudiced by the manner of service, courts will not set aside a judgment merely because the service was defective." (Sur-Reply 7.) That sentence does not appear in *Errion* or in any other decision that Brown can locate, and *Errion* does not fairly stand for that broad proposition.

**IV.     Tantaros's Remaining Arguments Fail**

Tantaros's remaining arguments fall flat. *First*, Tantaros faults Brown for not denying her allegations forcefully enough and for not engaging with her supposed "evidence" of misconduct.

5

(Sur-Reply 9–10.) This is frivolous. Consistent with Rule 12(b)(6) practice, Brown has assumed that Tantaros's false accusations are true solely for purposes of the motion to dismiss. Nothing more is required, and Tantaros's claims fail under the appropriate standard of review. *Second*, although Tantaros urges that her claim is not barred by *res judicata*, Brown's motion did not rest on that ground, and no question of preclusion is before the Court. (Sur-Reply 4 n.1, 5.)

## V. Tantaros's Conduct Is Sanctionable

When this case began, it was perhaps possible that Tantaros didn't know that her tools can hallucinate or that she must verify her citations on pain of sanctions. Tantaros knew better this time. After Brown's counsel told Tantaros that her first set of fake cases could not be found, Tantaros filed a "Notice of Correction of Citations" purporting to withdraw them. (*See* Reply 9.) That filing shows that Tantaros understands perfectly well that a citation can be fake even when it is "structured in the proper format and returned in real-time" by her "legal tool."[5] Brown's reply brief, submitted a short time later, elaborated further on this issue and explained that submitting faked authorities is sanctionable misconduct for parties and attorneys alike. (Reply 1, 10–11.)

In these circumstances, Tantaros's further fakery is unmistakable evidence of bad faith. *See Romero v. Goldman Sachs Bank USA*, No. 1:25-CV-2857-GHW, 2025 WL 1916119, at *2 (S.D.N.Y. June 25, 2025) (warning that further submission of faked authorities will be considered "evidence of subjective bad faith"). The Court has authority to sanction Tantaros, including by issuing a monetary penalty, awarding attorney's fees, and dismissing the case, and it appears that sanctions may be necessary to curb Tantaros's abusive practices. *See Benjamin v. Costco Wholesale Corp.*, No. 2:24-CV-7399 (LGD), 2025 WL 1195925, at *6, *9 (E.D.N.Y. Apr. 24, 2025) (penalties); *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No.

---

[5] Notice of Correction of Citations, ECF No. 22.

17-CV-81140, 2025 WL 1440351, at *7 (S.D. Fla. May 20, 2025) (attorney's fees and fines); *Thomas v. Pangburn*, No. CV423-046, 2023 WL 9425765, at *5, *7 (S.D. Ga. Oct. 6, 2023) (dismissal), *report and recommendation adopted*, No. 4:23-CV-46, 2024 WL 329947 (S.D. Ga. Jan. 29, 2024), *appeal dismissed*, No. 24-10368-C, 2024 WL 5389428 (11th Cir. Oct. 21, 2024).

## CONCLUSION

The claim against Brown should be dismissed with prejudice without delay.

Dated: August 12, 2025
      New York, New York

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ *Richard A. Edlin*
    Richard A. Edlin
    One Vanderbilt Avenue
    New York, NY 10017
    (212) 801-9200
    edlinr@gtlaw.com

*Attorneys for Defendant Scott Brown*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit as it relates to reply memoranda because it contains 2,091 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document.

/s/ *Richard A. Edlin*
Richard A. Edlin
