# EVANS DECLARATION EXHIBIT 3

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 2 of 50

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------- x

ANDREA TANTAROS,

                        Plaintiff,

             - against -

FOX NEWS NETWORK, LLC, ROGER AILES,
WILLIAM SHINE, DIANNE BRANDI, IRENA
BRIGANTI, and SUZANNE SCOTT,

                    Defendants.

---------------------------------------------- x

Index No. 157054/2016

Justice David B. Cohen

**NOTICE OF ENTRY**

       PLEASE TAKE NOTICE that the attached is a true copy of an order in this matter that

was entered in the office of the Clerk of the Supreme Court, New York County, on the 13th day

of March, 2017.

Dated: New York, New York
        March 13, 2017

                           DECHERT LLP

Of Counsel:

| | |
|---|---|
| Ronald M. Green | By: ____/s/ Linda C. Goldstein____ |
| Barry Asen |     Andrew J. Levander |
| David W. Garland |     Linda C. Goldstein |
| EPSTEIN BECKER & GREEN |     Nicolle L. Jacoby |
| 250 Park Avenue | 1095 Avenue of the Americas |
| New York, New York 10177 | New York, New York 10036 |
| (212) 351-4500 | (212) 698-3500 |
| rgreen@ebglaw.com | andrew.levander@dechert.com |
| basen@ebglaw.com | linda.goldstein@dechert.com |
| dgarland@ebglaw.com | nicolle.jacoby@dechert.com |

                           *Attorneys for Defendants Fox News Network,*
                           *LLC, William Shine, Dianne Brandi, Irena*
                           *Briganti, and Suzanne Scott*

1

Case 1:25-cv-01675-VSB   Document 44-3   Filed 09/02/25   Page 3 of 50

TO:   JUDD BURSTEIN, P.C.
      Judd Burstein
      5 Columbus Circle, Suite 1501
      New York, New York  10019
      (212) 974-2400

      *Attorneys for Plaintiff*

      QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Peter Calamari
      51 Madison Avenue, 22nd Floor
      New York, New York  10010
      (212) 849-7000

      *Attorneys for Defendant Roger Ailes*

1

1  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF NEW YORK : CIVIL TERM  PART 58
2  ----------------------------------------------X
   ANDREA TANTAROS,
3                             Plaintiff,

4          - against -

5  FOX NEWS NETWORK, LLC, ROGER AILES,
   WILLIAM SHINE, DIANNE BRANDI, IRENA
6  BRIGANTI, and SUZANNE SCOTT,
                             Defendants.
7  ----------------------------------------------X
   INDEX NO. 157054/16          111 Centre Street
8                               New York, New York
                                February 15, 2017
9  BEFORE:

10         THE HON. DAVID B. COHEN, J.S.C.

11

12 APPEARANCES:

13 FOR THE PLAINTIFF:

14 JUDD BURSTEIN, P.C.
   5 Columbus Circle
15 New York, New York  10019

16 FOR THE DEFENDANTS:

17 DECHERT LLP
   1095 Avenue of the Americas
18 New York, New York  10036
   BY: ANDREW J. LEVANDER, ESQ.
19     LINDA C. GOLDSTEIN, ESQ.

20 QUINN EMANUEL URQUHART & SULLIVAN, LLP
   51 Madison Avenue, 22nd floor
21 New York, New York  10010
   BY: PETER CALAMARI, ESQ.

22

23

24                      JACK L. MORELLI
                        Senior Court Reporter
25

2

### PROCEEDINGS

1  THE COURT: Good afternoon. This is Andrea

2  Tantaros against Fox News Network, LLC, Roger Ailes,

3  William Shine, Dianne Brandi, Irena Briganti and Suzanne

4  Scott, under Supreme Court index 157054 of 2016. Starting

5  with plaintiff's counsel, put your appearance on the

6  record.

7  MR. BURSTEIN: Good afternoon, Your Honor. Judd

8  Burstein, of Judd Burstein, P.C., for the plaintiff.

9  MR. LEVANDER: Your Honor, good afternoon.

10  Andrew Levander with Linda Goldstein, from Dechert. We

11  represent Fox and the other individuals except for Roger

12  Ailes.

13  MR. CALAMARI: Peter Calamari, and sitting in

14  the box is Joseph Sarles, from Quinn Emanuel, and we

15  represent Roger Ailes.

16  THE COURT: Did you want to put your additional

17  members or associates on the record as well or at least

18  their names?

19  MR. LEVANDER: I think that's fine, Your Honor.

20  THE COURT: Okay. I read the papers, I'm ready

21  for argument. At this time who is arguing for Fox, Mr.

22  Levander?

23  MR. LEVANDER: Yes, Your Honor.

24  THE COURT: You may procedure.

25  MR. LEVANDER: Thank you, Your Honor. May it

- J L M -

3

## PROCEEDINGS

1  please the Court, the motion before the Court, as the

2  Court undoubtedly is aware, concerns a broad arbitration

3  clause in an employment contract.  Ms. Tantaros was very

4  sophisticated, she signed that employment contract with

5  Fox containing that express broad arbitration clause not

6  once but twice, and she was represented by a sophisticated

7  talent agency.

8         THE COURT:  By broad you mean it doesn't

9  reference any specific types of claims in it?

10        MR. LEVANDER:  Correct.

11        THE COURT:  That's one of the plaintiff's

12  arguments, isn't it, that that is the failing of this

13  clause?

14        MR. LEVANDER:  Yes, but that's not the law.  But

15  if you want me to get to that right now I can, but I was

16  going to build my way there.  But I'm happy to fire away.

17        THE COURT:  As you wish, counsel, we'll get to

18  it.

19        MR. LEVANDER:  The broad clause does say, any

20  controversy, claim or dispute arising out of or relating

21  not only to the agreement but her employment, and any such

22  claim has to be arbitrated.  Under both federal and state

23  law that provision needs to be enforced.  Indeed there is

24  a strong policy in favor of arbitration reflected in the

25  CPLR, Federal Arbitration Act and a plethora of cases over

- J L M -

PROCEEDINGS                                    4

1    the last 50 *years* or more, including the New York Court of

2    Appeals case in Smith Barney versus Luckie, which the New

3    York Court of Appeals directed the lower courts to

4    "rigorous judicial enforcement of arbitration agreements."

5    The Westinghouse case, New York Court of Appeals did the

6    same, and the Supreme Court of the United States has also

7    issued its opinions.  I'm talking about the strong policy

8    in favor of arbitration.

9            THE COURT:  Is that the Hirschfeld case you're

10    referring to?

11            MR. LEVANDER:  That's the New York Court of

12    Appeals case.  Supreme Court of the United States would be

13    Moses Cone Memorial Hospital, it would be

14    Shearson/American Express versus McMahon.  There is a

15    plethora of cases, Your Honor.  Indeed the 2nd Circuit has

16    observed in Arciniaga versus General Motors, 460 F.3d at

17    page 234, "It is difficult to overstate the strong federal

18    policy in favor of arbitration."  And that's the law in

19    New York as well.

20            Based on those cases, those principles and the

21    authority on point that I will now discuss, we believe

22    that the motion to compel arbitration should be plainly

23    granted.  Indeed, Your Honor, plaintiff has flouted the

24    terms of her contract, including the arbitration clause,

25    in bringing this case, in the various publicity stunts she

                         - J L M -

PROCEEDINGS                                              5

1    has engaged in.

2            The argument that they make, however, ignores

3    overwhelming precedent.  I will focus on the three issues

4    that counsel raises, as I understand them, as to why she

5    should be allowed out of her arbitration clause and to be

6    able to litigate in court.

7            As I understand it, her first argument is,

8    although I'm compelled to arbitrate certain claims, I

9    don't have to arbitrate sexual harassment claims.  And

10   that's because the words sexual harassment don't appear in

11   the broad clause, as Your Honor referenced a few moments

12   ago.  That is simply not the law.  Plaintiff does not cite

13   a single case in which a Court has held that a broad

14   employment arbitration clause in an employment agreement

15   that encompasses any claim relating to her employment,

16   does not encompass sexual harassment, whether or not the

17   arbitration clause contains the words sexual harassment,

18   it's just not a requirement of the law to the contrary.

19           She cites a couple of cases in which the Court

20   has noted the full term of the language that the _clauses_

21   arbitration clause, and some arbitration ~~clause~~ do have

22   _things_ ~~Things~~ like any claim including but not limited to.  But,

23   for example, in Cicchetti versus Davis, which is a

24   Southern District case in 2003, but the --

25           THE COURT:  Isn't it sufficient if a clause says

                          - J L M -

PROCEEDINGS

6

1  essentially the same thing as her clause, if it says any

2  claim and specifies a few, isn't that essentially the

3  same?

4       MR. LEVANDER:  In our view it's exactly the same

5  whether it says including but not limited to or it doesn't

6  have the including but not limited to, any claim means any

7  claim and that's what we have here.

8       Indeed, in Cicchetti, one of the cases she

9  relied on, while it drops a footnote that says, "The

10  language has the including but not limited to sexual

11  harassment."  The analysis of the Court was that it was

12  because the arbitration clause related to "all her

13  employment."  Precisely what the arbitration clause in

14  this case does.

15       As I said, Mr. Burstein has not cited a single

16  case in which a Court has said, okay, you have a broad

17  thing that says any claim relating to employment.  But you

18  didn't put in the words sexual harassment and therefore,

19  we're not going to allow arbitration of the sexual

20  harassment claim; not a single one.

21       Indeed, in Tong versus S.A.C. Capital

22  Management, which is a 1st Department case from 2008 which

23  you cited in approval in your Siroy, decision recently,

24  "The clause that was held to encompass claims under both

25  the New York State and the New York City Human Rights

- J L M -

PROCEEDINGS

7

1    Laws," exactly the claims that are in this case, "was

2    exactly the same as the clause in our case relating to

3    anything under your employment agreement." No reference

4    to sexual harassment. Nonetheless, the 1st Department

5    ordered, compelled arbitration.

6              THE COURT: But how does the contract alleged

7    fall within the scope of employment?

8              MR. LEVANDER: That's simple, Your Honor, if you

9    just read the complaint. And the complaint, I will

10   particularly refer you to, and that's the whole thing, but

11   if you look at paragraphs 14 through 18 --

12             THE COURT: I've read the complaint, counsel.

13             MR. LEVANDER: It says, "Every act that occurred

14   here occurred on the premises."

15             THE COURT: In New York.

16             MR. LEVANDER: Of Fox in New York.

17             THE COURT: I know.

18             MR. LEVANDER: And the claims are all based on

19   our status as an employer. So this is quintessentially an

20   employment place claim. This is not -- you know, he cites

21   as an exception the case, for example, where an employee

22   is off premises and there is a social interaction not part

23   of business and a sexual assault is alleged. That's not

24   what this case is about. What this case is about is,

25   allegedly systematic conduct at Fox, at the news station,

- J L M -

Case 1:25-cv-01675-VSB   Document 44-3   Filed 09/02/25   Page 11 of 50

PROCEEDINGS

8

1    that sexual harassment.  And if it wasn't related to --

2              THE COURT:  Are you contending that if the

3    sexual assault took place in Fox's premises that that

4    would fall within the scope of employment?

5              MR. LEVANDER:  I actually think it would.  But

6    we don't have to cross that bridge in this case.  The case

7    here is, the only way we're liable is as an employer.

8    This is quintessentially an employment case, therefore it

9    is encompassed.  And even Mr. Burstein doesn't make that

10   argument -- but if he did make the argument that it was

11   unrelated to employment, he would automatically lose his

12  - New York State, New York City Human Rights Law claims

13   because they are only bringable [sic] against an employer.

14              So, the same is true in the 2nd Circuit's case

15   called Oldroyd, 134 F.3d 72.  And there the holding was a

16   federal statutory whistleblower claim is encompassed by an

17   arbitration clause that says, "Any claim arising under the

18   employment agreement."  No reference to harassment.  No

19   reference to whistleblower.  No reference to anything

20   else, just a broad clause; exactly as we have here.

21              We've cited to Your Honor a host of other cases

22   which uniformly hold the same thing.  There is a Fox case,

23   there is a Gateson case, there is a Valdes case, all in

24   the Southern District, in which arbitration has been

25   compelled in harassment cases based on a clause that is

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 12 of 50

9

## PROCEEDINGS

1  identical or indistinguishable from the clause in our case

2  which is, "Any claim, controversy or dispute relating to

3  your employment agreement or your employment."

4        The cases apply this principle uniformly.  For

5  example, Mr. Burstein cites the Coors case in the 10th

6  Circuit.  But the Coors case is exactly on point.  It's

7  not a harassment case, it's an antitrust case.  There it

8  says, any claim relating to the contract.  The Court says,

9  well, you're compelled to.  In the antitrust case cited in

10  the Supreme Court case in Mitsubishi, Supreme Court of the

11  United States saying, you've got -- it doesn't matter that

12  it doesn't say antitrust, it's related to the contract.

13  End of story, you go arbitrate.  That is the federal

14  policy that's involved here.  Indeed, Your Honor, your

15  Siroy decision, I believe --

16        THE COURT:  Which you smattered through the

17  brief at every opportunity.

18        MR. LEVANDER:  I may not have done it enough but

19  I tried.  But I think that it's pretty on point.  In Siroy

20  there was a forum selection clause which is similar to

21  a --

22        THE COURT:  But not the same.

23        MR. LEVANDER:  Not the same.  But you cited a

24  bunch of the arbitration cases that are on point.

25        THE COURT:  But there aren't a lot of forum

- J L M -

PROCEEDINGS

1    selection clauses.

2            MR. LEVANDER:  But the principle was that was a

3    forum selection clause which said any claim.  It didn't

4    include the sexual harassment claim.  But you said

5    nonetheless, this case gets shipped to New Jersey, I

6    believe it was.  And you cited, even though there was no

7    reference to sexual harassment in the clause, and you

8    cited Tong, the 1st Department case I mentioned a moment

9    ago which is right on point and I think controlling here.

10   The petition of Levitt, another arbitration case in which

11   the same principle applied and you cited those two cases

12   with approval as compelling your decision.

13           Now, there is also a suggestion in his brief

14   that somehow because it's sexual harassment that deserves

15   to be in a courtroom notwithstanding the arbitration

16   clause, and that doesn't fly.  In fact, the Supreme Court

17   in 1991 in the Gilmore case specifically threw that

18   principle out, rejected it and says, "Harassment claims by

19   any other claims, discrimination claims, should be heard

20   pursuant to arbitration if that's what the clause covers."

21   And the New York Court of Appeals followed Gilmore shortly

22   thereafter in Fletcher versus Kidder Peabody, a 1993

23   decision which, again, ironically, Mr. Burstein cites in

24   his brief with approval.

25           Indeed, in Guyden versus Aetna, 544 F.3d in the

                        - J L M -

PROCEEDINGS

11

1    2nd Circuit 2008, the Court specifically held, "That the

2    inability of an employee to publicly air their

3    whistleblower claim under statute does not give rise to

4    vitiating an arbitration clause."  Right on point.

5         Second argument that he makes, as I understand

6    it, even he describes it is unprecedented, I would

7    describe it as frivolous, the notion that after the

8    arbitration clause was signed, two years later after there

9    is a torrent of public stunts and public appearances by

10   plaintiff and her lawyer, in which even Mr. Burstein

11   acknowledged that he would probably be violating the

12   contract of his client, that the Fox News issued a

13   statement that said, "We've already filed an arbitration

14   claim against Ms. Tantaros."

15        THE COURT:  Now, did that claim make it into the

16   news?  It seemed like it may not have, right?

17        MR. LEVANDER:  If it was -- it did not.

18        THE COURT:  Did that get reported in the end?

19        MR. LEVANDER:  I never saw it.

20        THE COURT:  Okay.

21        MR. LEVANDER:  Whatever one's view of whether or

22   not that anodyne statement is a violation of the

23   confidentiality agreement in a contract, that's a contract

24   claim that must be arbitrated, not a basis to vitiate an

25   arbitration clause.

- J L M -

Case 1:25-cv-01675-VSB     Document 44-3     Filed 09/02/25     Page 15 of 50

12

## PROCEEDINGS

1    THE COURT:  So, you send to arbitration a claim

2  as to whether or not arbitration was vitiated by some

3  waiver?

4    MR. LEVANDER:  No, we've made an arbitration

5  claim based on the fact that she published a book without

6  getting preapproval and said that violated her contract.

7  That's our pending arbitration claim.  They then brought

8  this case and in response to we issued -- after they were

9  on TV, radio, newspaper --

10    THE COURT:  Then you brought this motion?

11    MR. LEVANDER:  And then we brought this motion.

12  We never litigated anything about the defense of this

13  case.  We've never done anything but immediately bring an

14  action to compel arbitration.  The only way --

15    THE COURT:  But how do you respond to

16  plaintiff's argument that you waived your right to compel

17  arbitration under the arbitration clause by violating the

18  confidentiality of the arbitration?

19    MR. LEVANDER:  Because the case law is

20  overwhelming.  Waiver only occurs when you litigate, okay?

21  Making a statement is not litigation.  Actually litigate,

22  protracted litigation is the standard which actually

23  prejudices the other party.  I can cite, those are the

24  exact words of the PPG Industries versus Webster case in

25  the 2nd Circuit, Thyssen versus Calypso Shipping in the

- J L M -

Case 1:25-cv-01675-VSB Document 44-3 Filed 09/02/25 Page 16 of 50

13

PROCEEDINGS

1   2nd Circuit, and the New York Court of Appeals decision in
2   Cusimano versus Schnurr. In fact, in Cusimano the New
3   York Court of Appeals emphasized that the waiver turned on
4   the protracted use of the courts. A statement
5   out-of-court is not the use of the courts to the actual
6   prejudice of the other party. That's the standard and
7   that didn't occur here. Nothing was prejudicial.
8           THE COURT: Counsel, two more minutes and I
9   think that you probably want to get to the claim as to the
10  individuals.
11          MR. LEVANDER: Yes, I do.
12          THE COURT: Because you have several of them as
13  well.
14          MR. LEVANDER: Yes. So, I also just want to
15  point out before I do though, that there are at least two
16  very good cases to read about that, "All acts of the
17  parties subsequent to the making of the contract which
18  raised issues of facts or law lie exclusively with the
19  arbitrator." Here you have a post-contract statement, in
20  fact, a post-arbitration statement. That's their basis,
21  it goes to the arbitrator. We violated the contract, the
22  arbitrator can find that. Finally, you can't avoid an
23  arbitration clause by suing your employer, that's Black
24  Letter Law also.
25          In Hirschfeld Products, which Your Honor

- J L M -

## PROCEEDINGS

1    referred to earlier, against Mirvish, the 1st Department

2    which was subsequently affirmed by the Court of Appeals

3    explained there, "The attempt to distinguish officers and

4    directors from the corporation they represent for the

5    purposes of evading an arbitration provision is contrary

6    to the established policy of this state."  Subsequently in

7    the Court of Appeals, the Court of Appeals affirmed that

8    holding and said, that under New York and federal law the

9    arbitration clause of the employer extends to quote, "Any

10   agent of the employer."  88 NY2d at 156.

11        More recently still in DiBello versus Salkowitz

12   in the 1st Department, the Court held, "The enforceability

13   of the arbitration agreement is not affected by the

14   statutory nature of the discrimination claims.  And given

15   the employment related nature of the claims, the

16   individual employee defendant as an agent of the employer

17   is entitled to demand arbitration of the claims against

18   him, no less than the employer is entitled to demand

19   arbitration of the claims against it.  That is the 1st

20   Department's holding in DiBello.

21        The 2nd Circuit has numerous cases holding to

22   the same effect, including Ragone and Powers.  Indeed, in

23   the 2nd Circuit in Roby versus Lloyd's, which is one of

24   the cases you cited with approval in Siroy, the Court

25   stated, 2nd Circuit stated, "In this and other circuits

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 18 of 50

PROCEEDINGS

15

1    consistently have held that employees of any entity,

2    employee of any entity that is party to an arbitration

3    agreement are protected by that agreement."

4                The 2nd Circuit has also emphasized that when

5    you're moving to compel arbitration the standard is even

6    easier if the party that you were moving to compel against

7    is the one that signed. So here she signed, she agreed to

8    arbitration. Any claim to avoid arbitration is less

9    strong under those circumstances.

10                THE COURT: You may conclude, counsel.

11                MR. LEVANDER: I'm going to hold the rest of my

12    time for rebuttal. Thank you.

13                THE COURT: You may be seated.

14                Mr. Calamari.

15                MR. CALAMARI: Yes, Your Honor, I'll be very

16    brief. I just join in the arguments of Mr. Levander. The

17    cases are absolutely clear here. There is just no law to

18    support the position of plaintiff's counsel. And I'll, if

19    I may, reserve my time for rebuttal.

20                THE COURT: I believe we reserved three minutes

21    for rebuttal on the defense side.

22                MR. LEVANDER: Thank you, Your Honor.

23                THE COURT: Okay. I think that you probably

24    were a minute under, so I'll give you that additional

25    minute if you need it, okay?

                          - J L M -

16

PROCEEDINGS

1          Mr. Burstein, you're up.

2          MR. BURSTEIN:  I'll try and talk quickly and try

3      and work backwards.  I don't dispute that there is a

4      presumption in favor of arbitration.  But I also I don't

5      think that the other side can dispute that one shouldn't

6      have to arbitrate if you haven't agreed to arbitrate.

7      Although there are many cases that say that an employer,

8      an employee can be required to arbitrate against other

9      executives, for example, when there is a broad arbitration

10     clause; this case is different.  Everybody is pointing to

11     Siroy but let me tell you why Siroy is actually helpful to

12     me.  In Siroy you pointed out three different situations

13     where admittedly in a forum selection clause where another

14     nonparty to the agreement might be entitled to

15     arbitration.  The two that are sort of relevant is

16     third-party beneficiary and the third which is so close

17     that it's all interrelated.  One could argue under normal

18     circumstances that we might fall within the third

19     category, but this case is different.  I don't know if

20     you've seen the entire agreement, Your Honor, and I have a

21     copy.

22          THE COURT:  I've seen all portions of the

23     agreement that were in the papers, so I have everything

24     that's in the record.

25          MR. BURSTEIN:  Okay, well, what's in the record

                          - J L M -

PROCEEDINGS

17

1   then in our opposition papers is 15.1 of Ms. Tantaros's

2   agreement.  It's one of the exhibits to my ~~affidavit~~ affirmation.

3   There are so many papers here.

4           THE COURT:  Is it you're saying 15.1, "This

5   agreement is non-assignable by performer"?

6           MR. BURSTEIN:  Yes.

7           THE COURT:  I'm looking at it.

8           MR. BURSTEIN:  So what 15.1 says is, "That this

9   agreement shall inure to the benefit of Fox's successors,

10  assignees, affiliates."  It says, "As used in this

11  agreement the term 'affiliate' shall mean any company

12  controlling, controlled by or under common control with

13  Fox."

14          THE COURT:  So what that would mean if Fox was

15  acquired, right, and Fox's employees were covered, then

16  the acquiring entity employees would be covered as well,

17  right?

18          MR. BURSTEIN:  No.  Respectfully, I think that

19  if, in fact, there were another provision in this

20  agreement that protected employees, perhaps.  But this

21  provision can only be read one way, that this is an

22  agreement, as some parties do, they have an agreement

23  where they say there are no third-party beneficiaries and

24  this agreement is only for the benefit of certain people.

25  There is no definition of Fox in the agreement to include

- J L M -

18

## PROCEEDINGS

1    employees or anyone else.  That's why this case is

2    fundamentally different than any other case, because --

3              THE COURT:  But doesn't this provision deal with

4    issues if Fox is acquired or merges or something else like

5    that?  How does that exclude employees?

6              MR. BURSTEIN:  It does, because it's made a part

7    of the agreement.  And the part of the agreement that it's

8    made a part of are standard conditions of employment.

9    This is an agreement between Fox News and Andrea Tantaros.

10   The agreement includes not only the part that is specific

11   to Ms. Tantaros, but says the standard conditions of

12   employment also apply.  There are all sorts of provisions

13   in here that are not talking about, you know, mergers,

14   they are talking about when a performer can perform

15   services.  What rights the performer has.

16   Indemnification, commissions, Internet restrictions,

17   promotions, injunctive relief.  This is all specific to

18   the employee.  And if an employer --

19             THE COURT:  I think a lot of that stuff is

20   blacked out in the papers.

21             MR. BURSTEIN:  I can give you a full set.

22             THE COURT:  It was redacted for a reason and it

23   wasn't in the papers, so.

24             MR. BURSTEIN:  But it's a public -- I wanted to

25   be careful as to the other side since it's theoretically a

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 22 of 50

PROCEEDINGS
19

1    confidential agreement, I didn't want to put in anything

2    other than what was absolutely necessary. But I think

3    that Mr. Levander will agree, that this is not some single

4    part of the agreement. I think it would be helpful to

5    allow me to supplement the record with a copy of the

6    entire agreement. Because you will see that it -- when

7    two parties enter into a contract and they say this is

8    only for the benefit of the two parties, and with respect

9    to Fox it's only with respect to Fox and its affiliates

10   and this is how we define Fox and affiliates, and there is

11   no definition of Fox News. If you look at the first --

12   well, you don't have it but there is no definition of Fox

13   as Fox including its employees.

14            THE COURT: I know you're trying to convince me

15   that this agreement somehow excludes the employees. But

16   it says this agreement is nonassignable by performer.

17   Which means your client can't assign it but Fox can. But

18   it doesn't say anything about whether employees are or are

19   not considered. This deals with the assignment of the

20   agreement to any future entity, which hasn't happened in

21   this case. But it doesn't exclude -- show me how it

22   excludes employees at this time.

23            MR. BURSTEIN: Well, there is one thing where it

24   says it has the right to freely assign. I'm not relying

25   on that language. I'm relying on the language which says,

- J L M -

PROCEEDINGS

20

1    "This agreement shall inure to the benefit of Fox's

2    successors, assignees and affiliates." Affiliates is

3    important, it's not just about selling the company. It's

4    about, for example, I guess, 21st Century Fox or Fox

5    Business News. They could have added "and employee."

6    They could have defined and -- it's interesting, their

7    reply papers are silent on this issue. You can't find

8    anything on it.

9            So it seems to me that the plain language of

10    this agreement, and you see this all the time in

11    agreements when they want to exclude third-party

12    beneficiaries, they want to keep people -- they want to

13    make sure that this is only going to be for the benefit of

14    the parties to the agreement, not give third parties rights.

15    That is precisely what happened. And it's not remotely

16    found in their reply. They've never addressed this issue.

17    So, the record stands with my argument. The reason they

18    haven't addressed this issue is, they know it would be

19    frivolous to address it because that's what the agreement

20    says.

21            Now, there is another important point here, this

22    case, although it was given short shrift of the arguments

23    of mine that were characterized, I didn't quite recognize.

24    But one of the arguments --

25            THE COURT: That's why you get a chance to talk,

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 24 of 50

PROCEEDINGS                                          21

1    counsel.

2              MR. BURSTEIN:  But one of the arguments that I

3    do think is a question of first impression and is very

4    important is the arbitration clause itself.  Now, this is

5    a situation --

6              THE COURT:  This is the waiver claim?

7              MR. BURSTEIN:  It's not a waiver claim.

8              THE COURT:  It's not?

9              MR. BURSTEIN:  It's a breach claim for the

10   following reason.  I mean --

11             THE COURT:  But the breach has to result in a

12   waiver, right?

13             MR. BURSTEIN:  Yes.  Well, excuse of

14   performance.

15             THE COURT:  Let's get to breach.

16             MR. BURSTEIN:  You have, unlike any other kind

17   of agreement I've ever seen, an arbitration clause that

18   has an arbitration clause that has a strict

19   confidentiality provision and says, "The violation of this

20   clause will be a material breach of the agreement."  Now,

21   you'll never see that.  And this is why it's important.

22   The law, if you take the law generally, what do you have?

23   You have a situation where a party claims a contract has

24   been breached or he or she has been defrauded into

25   agreeing to the contract.  The law is very clear, that

                        - J L M -

PROCEEDINGS

22

1   doesn't do you any good in terms of getting out of an

2   arbitration agreement unless you can show that the

3   arbitration agreement itself was procured by fraud.

4       THE COURT:  Let's talk about who is in breach

5   here, counsel, because the other side says that you're in

6   breach.  When I say "you," I mean not just your client,

7   your individual involvement in breaching that

8   confidentiality.  Typically in contract claims situations

9   the focus is on who breached first, right?  Who made the

10  initial breach.  Because that often excuses the other

11  party from their breach, doesn't it?

12      MR. BURSTEIN:  Yes, but the complaint --

13      THE COURT:  How does that not apply here?

14      MR. BURSTEIN:  For two reasons.  One, the

15  complaint alleges, and I can give you the paragraph, a

16  prior breach which was the failure to provide a personal

17  assistant over the three years.  And that is --

18      THE COURT:  But that's not a breach of the

19  confidentiality provision or the arbitration clause,

20  right?  That would be subject to arbitration under this

21  agreement.  You agree to that?

22      MR. BURSTEIN:  I agree that would be.

23      THE COURT:  So, if your client wants to bring a

24  claim that she wasn't given her assistant over that period

25  of time, that's subject to arbitration.

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 26 of 50

PROCEEDINGS

23

1    MR. BURSTEIN: Yes, but my point is this, a

2    general breach of confidentiality -- there is no breach of

3    the confidentiality requirements of agreement and

4    certainly not of that paragraph. It might give rise to

5    some other kind of breach excusing performance or giving

6    rise to damages. But when you have an arbitration clause

7    which says that this is a material breach specifically of

8    this arbitration clause, it relates solely to this

9    arbitration clause, that is different. That's the

10   equivalent of the sort of the converse where you say,

11   okay, parties have disputes. But you can't get out of

12   arbitration unless you can show fraud in the securing of

13   the arbitration agreement. Similarly it's the same

14   concept.

15       THE COURT: But doesn't your client's breach

16   excuse any breach after that?

17       MR. BURSTEIN: No. For a number of reasons.

18       THE COURT: Isn't that Contracts 101?

19       MR. BURSTEIN: No -- I mean, yes, of course it's

20   Contracts 101. But you have to look at the allegations.

21   Again, this is not an issue for the arbitrator. This is

22   an issue as to what this clause means, as to whether or

23   not we're to be forced into arbitration. And the things

24   they say that we said are not breaches of the

25   confidentiality provision in the contract. And they --

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 27 of 50

24

## PROCEEDINGS

1      THE COURT:  Are you disputing that if the

2   confidentiality provision is valid and they sought

3   arbitration, that your conduct and the conduct of your

4   client didn't breach that?

5      MR. BURSTEIN:  Yes.

6      THE COURT:  How?

7      MR. BURSTEIN:  Because the confidentiality

8   agreement is very limited.  The confidentiality agreement

9   says, "That the performer shall not directly or indirectly

10  disclose, divulge, render or offer any knowledge or

11  information to any other person or party concerning

12  matters relating to any program or Fox affairs and plans."

13      Now, unless they're using the word affairs in

14  the way that Roger Ailes had affairs, this does not relate

15  to their Fox's affairs.  That's one confidentiality

16  provision.  There is nothing in the record to suggest that

17  Ms. Tantaros or I breached that provision.  Then the other

18  one is, "Ms. Tantaros shall not issue any statements or

19  grant any interview concerning performances, services

20  hereunder."  No suggestion here that that was breached.

21  Those are the only confidentiality provisions in the

22  agreement.

23      So there is no breach of any confidentiality.

24  The only breach of confidentiality is their admitted

25  breach of trying to rebut legitimate statements that Ms.

- J L M -

Case 1:25-cv-01675-VSB     Document 44-3     Filed 09/02/25     Page 28 of 50

25

PROCEEDINGS

1    Tantaros or I on her behalf, could make with divulging the

2    existence of the arbitration and the terms.

3           How much time do I have so I make sure --

4           THE COURT:  You have eight more minutes.

5           MR. BURSTEIN:  So let me move on.  If you want

6    to talk about sort of the general principle.  If you take

7    their argument to a logical end, let's say Bill Shine or

8    one of the other defendants could have raped Ms. Tantaros

9    in the Fox building and that would be subject to

10   arbitration because she was in the building.

11          THE COURT:  Wait, that's an intentional tort and

12   that's an assault, right?  That's an assault.  And there

13   is lots of case law cited in both your briefs that takes

14   assault out of the context of the typical arbitration

15   clause.

16          MR. BURSTEIN:  I'll give another one.

17          THE COURT:  Is there any assault alleged in this

18   case?

19          MR. BURSTEIN:  No.

20          THE COURT:  Any physical assault?

21          MR. BURSTEIN:  No physical.  She trips and falls

22   coming out of the elevator because they didn't

23   adequately -- they were negligent in some way.  She

24   wouldn't have tripped and fallen if she hadn't been an

25   employee on their theory.  That's arbitrable.  Now, here

- J L M -

26

## PROCEEDINGS

1    is what the case law says, everybody cites and of course

2    Your Honor cites to the Tong case.  That's really the

3    major case here because it's 1st Department.  But nobody,

4    my adversaries haven't bothered to look at Justice ~~Freed~~'s

5    underlying decision, what the Appellate Division affirmed.

6    And there they had an arbitration agreement, any dispute

7    arising out of this agreement will be subject to

8    arbitration.  But as Justice ~~Freed~~ wrote, "Among the

9    conditions the agreement provides that Tong would not

10   disclose any of S.A.C.'s confidential information during

11   or after his employment."  This information was defined to

12   include any information relating to the business and

13   personal affairs of any of the principals.

14        Nobody seems to have paid attention to what was

15   actually being affirmed.  There was an affirmation of a

16   decision by Justice ~~Freed~~ saying that the broad language

17   of the arbitration agreement applying to breaches of the

18   contract was covered.  But the arbitration agreement in

19   that case was radically -- I mean the underlying contract

20   was radically different.  So if you read Justice ~~Freed~~'s

21   opinion, you will see something that is just quite

22   extraordinary and that makes all the difference in the

23   world.

24        The other cases they have cited, like Oldroyd

25   and Powers, they have a number of them, they are all

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 30 of 50

1    termination of employment cases.  This is a different kind

2    of case.  We also have the tortious interference claim

3    which is something different which is a tort claim, not a

4    contract claim.  It involves them going out and

5    interfering with the sale of her book.

6              THE COURT:  How is retaliation different than

7    termination?  Aren't those two sides of the same coin?

8              MR. BURSTEIN:  Except that all the cases that

9    they cite are termination clauses and all of those are

10   essentially breach of employment agreements as opposed to

11   here where there is no breach of contract claim.

12             Then, again, the other thing I want to say in my

13   last few minutes is, that if Your Honor is inclined --

14             THE COURT:  Speaking of that, five more minutes.

15             MR. BURSTEIN:  If Your Honor is inclined to send

16   us to arbitration, I would like the opportunity to amend

17   based upon new information.  I learned very recently, just

18   two nights ago, that another one of my clients, who shall

19   remain nameless, was subpoenaed.  And I was told by the

20   United States Attorney's office that there is an ongoing

21   criminal investigation of Fox relating to all of these

22   allegations, not just Ms. Tantaros, but all of the sexual

23   harassment allegations.  And I have a subpoena, it's

24   ongoing relating to another client, although I suspect

25   that Ms. Tantaros will be subpoenaed.  But here is the

                         - J L M -

PROCEEDINGS                                  28

1    point, based upon my discussions with the prosecutors, and

2    they didn't tell me what exactly what it was, but once I

3    saw that it was the securities prosecutors I understood

4    immediately what was going on here, which is that what Fox

5    has done is enter into agreement, after agreement, after

6    agreement, with victims of sexual harassment, not reported

7    them in any of their SEC filings.  Because what they do,

8    as they offered Ms. Tantaros when they tried to settle the

9    case, they keep them as employees, per se, so nothing ever

10   gets reported.

11           Now, that's not what the U.S. Attorney says but

12   that's what I think is going on.  I now believe -- that

13   not -- that I'm not saying it's necessarily not subject to

14   arbitration, I believe I have a racketeering case here

15   based upon that and the extortions of my client.  There is

16   a very strong case law that suggests in this case you will

17   lose your job if you report sexual harassment, gives rise

18   to a pattern of racketeering activity which this Court can

19   look at, and then there are other claims.  I have

20   compelling evidence through confidential sources that Fox

21   was involved in electronic surveillance of my client on

22   her private communications in violation of 18 U.S.C. 2510,

23   which has a private right of action.  They have been --

24   just today The Times reported that they maintain fake news

25   sites and also what are known as sock puppet accounts,

- J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 32 of 50

PROCEEDINGS

1  fraudulent Twitter accounts.

2         THE COURT:  You made reference to that in your

3  papers and the complaint extensively.

4         MR. BURSTEIN:  Yes, but I have more information

5  about that.  I also have the fact that we allege that Fox

6  has subsequently, and this is important, post-employment,

7  has tortiously interfered with Ms. Tantaros' agreement

8  with her speaking agency, who represents numerous other

9  Fox talents and can only represent them with Fox's

10  permission.  That they have tortiously interfered with her

11  ability to get speaking engagements.

12         I think that all of this information is very

13  significant.  I only need two weeks to amend.  I think

14  that if I can allege -- Your Honor, just said it,

15  intentional torts don't fall within an arbitration clause.

16  I didn't bring a RICO case before because I didn't think

17  that I could establish a pattern of racketeering activity.

18  Now that I know that the U.S. Attorney's office is issuing

19  subpoenas and undergoing, according to the subpoena,

20  investigating alleged violations of federal criminal law

21  by Fox, and I figured out exactly what's going on, I can

22  make a RICO case.  I can make the argument that the

23  conduct by Mr. Shine and others was an extortion under the

24  Hobbs Act.

25         THE COURT:  Two minutes.

                     - J L M -

PROCEEDINGS

1      MR. BURSTEIN:  I got in under the bell.  Unless

2  Your Honor has any questions.

3      THE COURT:  Not at this time.

4      Rebuttal.

5      MR. LEVANDER:  Indeed, Your Honor.

6      May it please the Court, Mr. Burstein has gone

7  way outside the record.  I would note that the courts have

8  held that RICO claims, if you could make one, which he

9  can't, would be arbitrable as well.

10     THE COURT:  I didn't have any briefing on that

11  so I don't know the answer.

12     MR. LEVANDER:  I'll represent that to you.  And

13  the antitrust cases follow RICO cases.  First of all, we

14  did address the question, he said it was not addressed, I

15  suggest you look at page 22 of our brief when you have a

16  chance, Your Honor.  I would like to focus on Siroy and --

17     THE COURT:  That's the reply brief you're

18  referring to, counsel?

19     MR. LEVANDER:  Yes, exactly.  So, it doesn't

20  say, as Mr. Burstein represented to Your Honor a moment

21  ago, that the confidentiality issue, even if you ignore

22  Contracts 101 and you ignore his outrageous behavior and

23  all of that is a breach of the arbitration agreement, it's

24  a breach of the agreement.  So, therefore, it is a --

25     THE COURT:  Wait.  But it's in the arbitration

- J L M -

PROCEEDINGS

1     clause of the agreement.

2            MR. LEVANDER:  But it's an agreement of a

3     breach, breach of the agreement.  And the courts have said

4     over and over again, and I read to you the --

5            THE COURT:  The nuance you're claiming, it's a

6     breach of the agreement but not specifically a voiding of

7     the arbitration clause?

8            MR. LEVANDER:  Correct.  It also doesn't void

9     the arbitration clause.  Only thing that voids an

10    arbitration clause is if you are unconscionable in the way

11    that you created the arbitration clause.  Here, as I said,

12    cited to you both federal and state cases, any

13    post-contract conduct that you think is actionable is to

14    be arbitrated.  That is what the law is.

15           Indeed, Your Honor, Tong is right on point.  It

16    has nothing about harassment in it.  It's a harassment

17    case and the Court ordered, the 1st Department ordered the

18    arbitration to occur.  This is what you said about Tong in

19    your Siroy opinion.  First of all, you're talking about in

20    the Siroy case, it's a harassment, discrimination case and

21    you say, the language in Section 13, that's 13 of the

22    contract, specifically encompasses "all claims," just like

23    it does here, "arising out of or relating to the

24    employment agreement."  Exactly what we have here.

25    Nothing about harassment.

                        - J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 35 of 50

PROCEEDINGS

32

1    Plaintiff's claims of employment discrimination,

2    retaliation, clearly arise in and relate to her employment

3    and are thus governed by Section 13 and covered by her

4    employment agreement, citing Tong.  You describe Tong as

5    holding, "That since plaintiff's claims arose out of the

6    events that occurred in the course of his employment by

7    defendant and supervisor, the supervisors of the

8    defendant, they were deemed subject to the employment

9    agreement which covered any dispute or controversy arising

10   out of or relating to the agreement."  It's exactly the

11   analysis here.  All of her claims arise out of and are

12   related to.

13    THE COURT:  What about the tortious interference

14   claim?

15    MR. LEVANDER:  He conceded that's subject to

16   arbitration in his earlier papers.  And tortious

17   interference is a tortious interference with the contract.

18   So it relates to the contract.  It's clear that everything

19   is encompassed by the --

20    THE COURT:  And it relates to particularly the

21   book provision within the contract, right?

22    MR. LEVANDER:  Right.  We are enforcing the book

23   provision and he's saying that enforcement of our

24   contractual right, which is the subject of the arbitration

25   clause, is a tortious interference with the other

- J L M -

33

PROCEEDINGS

1    contract.

2              THE COURT:  Did you say earlier that your

3    arbitration, your arbitration claim only relates to the

4    book and not to the alleged harassment and retaliation

5    claims?

6              MR. LEVANDER:  When we first brought the

7    arbitration claims that's exactly what it related to.

8    When this goes forward, I hope in arbitration, it will be

9    expanded, no doubt, to encompass some other things.  I

10   suggest, Your Honor, Mr. Burstein said that he waffled on

11   whether or not his client violated the contract.  But in

12   Exhibit H --

13             THE COURT:  He didn't waffle, he said that she

14   didn't, but really avoided explaining how in a way that

15   was persuasive.  I might give him a chance, last chance on

16   that since you raised it.

17             MR. LEVANDER:  But Exhibit H to my reply

18   affidavit attaches Mr. Burstein's comments to the press

19   which said that she knows that she's taking a risk in

20   violating her contract's confidentiality clause in making

21   these statements.  There is no question that she violated

22   it and they knew that she was violating it when she got

23   involved.

24             Also, the confidentiality agreement that was

25   gone over by Mr. Burstein when he read it covers not only

                        - J L M -

PROCEEDINGS

34

1   arbitration but "All relevant allegations and events

2   leading up to the arbitration." So it's broader than what

3   he just said, it encompasses her claims, period.

4          Finally, I would note that Mr. Burstein has

5   tried to inject into here all kinds of extraneous stuff

6   that is not in the record. The fact that he has a male

7   client that may have received a subpoena. Fox has not

8   received a subpoena. Fox would clearly cooperate if there

9   were a subpoena. But that he is trying to somehow make

10  this case not about the arbitration clause, which it is,

11  but to bring in something that has to do with another one

12  of his clients, not this client and not a sexual

13  harassment claim, is beyond the pale.

14          THE COURT: Time. I'm going to address Mr.

15  Burstein one more time because --

16          MR. BURSTEIN: Could I have two minutes?

17          THE COURT: Two minutes. But I specifically

18  want you to address the issue of the breach by your

19  client.

20          MR. BURSTEIN: Sure. I want to make one thing

21  clear, I never said it was a male client, that was Mr.

22  Levander.

23          THE COURT: No, you didn't.

24          MR. BURSTEIN: I never said it was a male client

25  and I want that to be on record.

                    - J L M -

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 38 of 50

PROCEEDINGS                                    35

1          Second of all, I would ask Your Honor, although

2     neither party did it because I think that there were

3     concerns about confidentiality, I think that both parties,

4     for Your Honor to have a full record, should see the

5     entire employment agreement because it really addresses --

6          THE COURT:  Then you could have provided it to

7     me at the time that you submitted the papers or asked for

8     it to be submitted in camera and you haven't done that.

9          MR. BURSTEIN:  But they haven't --

10          THE COURT:  So explain to me how your client's

11    breach is not a breach.

12          MR. BURSTEIN:  My client's breach is not a

13    breach because there is nothing that the other side has

14    shown which makes clear, and if I could have a moment let

15    me just look at what the exhibit that they have.

16          (Pause)

17          MR. BURSTEIN:  Well, one of the problems, and

18    maybe this is -- they don't put the full agreement in, so

19    they only give you part of the agreement, they leave out

20    the other part about confidentiality.

21          THE COURT:  You did the same.

22          MR. BURSTEIN:  I understand.  But the point

23    would be, you have nothing before you to show that she

24    violated confidentiality.  They haven't submitted any

25    document.  They have statements by me, but they haven't

                          - J L M -

36

PROCEEDINGS

1    provided the provisions of the agreement that talk about

2    confidentiality.  So they say it's a breach but there is

3    nothing in their papers, that as far as I can tell,

4    actually identified what would be a breach of

5    confidentiality.

6              THE COURT:  Okay.  Can we take a five minute

7    break at this time and then we'll go back on the record.

8              (Short recess taken)

9              THE COURT:  On the record.  First, I would like

10   to commend counsel on extremely well-prepared,

11   well-organized and capable argument made on the record

12   today, as well as in the papers on the briefing of this

13   case.

14              At this point in time I'm going to render my

15   decision on the record.  Plaintiff's employment at Fox was

16   covered by an employment agreement that contained a valid,

17   broad and unambiguous arbitration provision requiring that

18   any controversy, claim or dispute arising out of or

19   relating to this agreement or your employment shall be

20   brought before a mutually selected three member

21   arbitration panel.  Ample case laws in both New York State

22   and the Federal Courts has held that all the claims and

23   controversies sought to be litigated by plaintiff fall

24   within the terms of the parties broad arbitration

25   provision.  Including her claims under the New York State

- J L M -

PROCEEDINGS

1     Human Rights Law and New York City Human Rights Law for

2     harassment and retaliation, as well as her claims for

3     tortious interference, since those claims arose within the

4     scope of plaintiff's employment and clearly fall within

5     that scope.

6            All of the individual defendants, though they

7     are not signatories to the arbitration agreement, can

8     invoke the arbitration clause and compel arbitration.

9     This would apply even if the claims against them were

10    severed from the claims against Fox.  The misconduct

11    alleged by plaintiff relates to these individual's

12    behavior as officers, directors and employees or agents of

13    Fox, and they necessarily relate to their alleged conduct

14    as agents of Fox News.  Further, a careful review of the

15    claims against the individual defendants shows that these

16    claims are factually intertwined with the agreement and

17    the claims against Fox News.  The claims against the

18    individual defendants involve the very same issues and

19    circumstances.  This principle applies equally to the

20    employment claims and the tortious interference claims at

21    issue in this case.  Allowing such claims to proceed in

22    court would be contrary to established public policy

23    strongly favoring arbitration of such disputes.

24            Plaintiff's claim that the defendants waived

25    arbitration by materially breaching the arbitration clause

- J L M -

PROCEEDINGS

38

1   is unsupported by any pertinent case law.  That claim is

2   without merit as the defendants have not engaged in

3   protracted litigation that prejudiced the plaintiff.  In

4   any event, it was plaintiff who first involved the news

5   media in this dispute in violation of the confidentiality

6   provisions of the parties' agreement.  Any remaining

7   claims by ~~defendant~~ [Plaintiff] to bring this case outside the scope

8   of arbitration have been considered by the Court and have

9   been found to be without merit.

10          Plaintiff's oral application made for the first

11   time on argument to amend the pleadings is denied.  That

12   denial is without prejudice.  Defendants' motion to compel

13   arbitration of all of plaintiff's claims against all of

14   the defendants pursuant to CPLR 7503 are granted.  Thank

15   you.  Pursuant to law, this action is stayed pending its

16   outcome of the arbitration.

17          You can order the transcript, counsel, submit it

18   to me to be so ordered.  Then, counsel, you'll have the

19   opportunity to file your notices of appeal.

20          MR. BURSTEIN:  Thank you, Your Honor.

21          THE COURT:  Thank you, counsel.

22   CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT.

23

24   ------------------------------

25   SO ORDERED          JACK L. MORELLI, CM, CSR

------------------------------                 J L M -

DAVID B. COHEN, J.S.C.

3-9-2017

{

[sic] (1)
8:13

**A**

ability (1)
29:11
able (1)
5:6
absolutely (2)
15:17;19:2
according (1)
29:19
accounts (2)
28:25;29:1
ACCURATE (1)
38:22
acknowledged (1)
11:11
acquired (2)
17:15;18:4
acquiring (1)
17:16
Act (3)
3:25;7:13;29:24
action (3)
12:14;28:23;38:15
actionable (1)
31:13
activity (2)
28:18;29:17
acts (1)
13:16
actual (1)
13:5
actually (6)
8:5;12:21,22;
16:11;26:15;36:4
added (1)
20:5
additional (2)
2:16;15:24
address (4)
20:19;30:14;34:14,
18
addressed (3)
20:16,18;30:14
addresses (1)
35:5
adequately (1)
25:23
admitted (1)
24:24
admittedly (1)
16:13
adversaries (1)
26:4
Aetna (1)
10:25
affairs (5)

24:12,13,14,15;
26:13
affected (1)
14:13
affidavit (2)
17:2;33:18
affiliate' (1)
17:11
affiliates (5)
17:10;19:9,10;
20:2,2
affirmation (1)
26:15
affirmed (4)
14:2,7;26:5,15
afternoon (3)
2:1,7,9
again (4)
10:23;23:21;27:12;
31:4
against (14)
2:2;8:13;11:14;
14:1,17,19;15:6;
16:8;37:9,10,15,17,
17;38:13
agency (2)
3:7;29:8
agent (1)
14:10,16
agents (2)
37:12,14
ago (4)
5:12;10:9;27:18;
30:21
agree (3)
19:3;22:21,22
agreed (2)
15:7;16:6
agreeing (1)
21:25
agreement (74)
3:21;5:14;7:3;
8:18;9:3;11:23;
14:13;15:3,3;16:14,
20,23;17:2,5,9,11,20,
22,22,24,25;18:7,7,9,
10;19:1,4,6,15,16,20;
20:1,10,14,19;21:17,
20;22:2,3,21;23:3,13;
24:8,8,22;26:6,7,9,
17,18;28:5,5,6;29:7;
30:23,24;31:1,2,3,6,
24;32:4,9,10;33:24;
35:5,18,19;36:1,16,
19;37:7,16;38:6
agreements (3)
4:4;20:11;27:10
Ailes (4)
2:2,12,15;24:14
air (1)
11:2
allegations (4)
23:20;27:22,23;

34:1
allege (2)
29:5,14
alleged (7)
7:6,23;25:17;
29:20;33:4;37:11,13
allegedly (1)
7:25
alleges (1)
22:15
allow (2)
6:19;19:5
allowed (1)
5:5
Allowing (1)
37:21
although (5)
5:8;16:7;20:22;
27:24;35:1
amend (3)
27:16;29:13;38:11
Among (1)
26:8
Ample (1)
36:21
analysis (2)
6:11;32:11
Andrea (2)
2:1;18:9
Andrew (1)
2:10
anodyne (1)
11:22
antitrust (4)
9:7,9,12;30:13
appeal (1)
38:19
Appeals (10)
4:2,3,5,12;10:21;
13:1,3;14:2,7,7
appear (1)
5:10
appearance (1)
2:5
appearances (1)
11:9
Appellate (1)
26:5
application (1)
38:10
applied (1)
10:11
applies (1)
37:19
apply (4)
9:4;18:12;22:13;
37:9
applying (1)
26:17
approval (4)
6:23;10:12,24;
14:24
arbitrable (2)

25:25;30:9
arbitrate (6)
5:8;9:9;13:16;6,6,8
arbitrated (3)
3:22;11:24;31:14
arbitration (102)
3:2,3,24,25;4:4,8,
18,22,24;5:5,14,17,
21,21;6:12,13,19;7:5;
8:17,24;9:24;10:10,
15,20;11:4,8,13,25;
12:1,2,4,7,14,17,17,
18;13:23;14:5,9,13,
17,19;15:2,5,8,8;
16:4,9,15;21:4,17,18;
22:2,3,19,20,25;23:6,
8,9,12,13,23;24:3;
25:2,10,14;26:6,8,17,
18;27:16;28:14;
29:15;30:23,25;31:7,
9,10,11,18;32:16,24;
33:3,3,7,8;34:1,2,10;
36:17,21,24;37:7,8,8,
23,25,25;38:8,13,16
arbitrator (4)
13:19,21,22;23:21
Areinlaga (1)
4:16
argue (1)
16:17
arguing (1)
2:21
argument (12)
2:21;5:2,7;8:10,10;
11:5;12:16;20:17;
25:7;29:22;36:11;
38:11
arguments (5)
3:12;15:16;20:22,
24;21:2
arise (2)
32:2,11
arising (6)
3:20;8:17;26:7;
31:23;32:9;36:18
arose (2)
32:5;37:3
assault (5)
7:23;8:3;25:12,12,
14,17,20
assign (2)
19:17,24
assignees (2)
17:10;20:2
assignment (1)
19:19
assistant (1)
22:17,24
associates (1)
2:17
attaches (1)
33:18
attempt (1)

14:3
attention (1)
26:14
Attorney (1)
28:11
Attorney's (2)
27:20;29:18
authority (1)
4:21
automatically (1)
8:11
avoid (2)
13:22;15:8
avoided (1)
33:14
aware (1)
3:2
away (1)
3:16

**B**

back (1)
36:7
backwards (1)
16:3
Barney (1)
4:2
Based (7)
4:20;7:18;8:25;
12:5;27:17;28:1,15
basis (2)
11:24;13:20
behalf (1)
25:1
behavior (2)
30:22;37:12
bell (1)
30:1
beneficiaries (2)
17:23;20:12
beneficiary (1)
16:16
benefit (5)
17:9,24;19:8;20:1,
13
beyond (1)
34:13
Bill (1)
25:7
Black (1)
13:23
blacked (1)
18:20
book (5)
12:5;27:5;32:21,
22;33:4
both (6)
3:22;6:24;25:13;
31:12;35:3;36:21
bothered (1)
26:4
box (1)

TANTAROS v.
FOX NEWS

February 16, 2017

2:14
Brandi (1)
  2:3
breach (34)
  21:9,11,15,20;22:4,
  6,10,11,16,18;23:2,2,
  5,7,15,16;24:4,23,24,
  25;27:10,11;30:23,
  24;31:3,3,6;34:18;
  35:11,11,12,13;36:2,
  4
breached (4)
  21:24;22:9;24:17,
  20
breaches (2)
  23:24;26:17
breaching (2)
  22:7;37:25
break (1)
  36:7
bridge (1)
  8:6
brief (6)
  9:17;10:13,24;
  15:16;30:15,17
briefing (2)
  30:10;36:12
briefs (1)
  25:13
Briganti (1)
  2:3
bring (5)
  12:13;22:23;29:16;
  34:11;38:7
bringable (1)
  8:13
bringing (1)
  4:25
broad (12)
  3:2,5,8,19;5:11,13;
  6:16;8:20;16:9;
  26:16;36:17,24
broader (1)
  34:2
brought (5)
  12:7,10,11;33:6;
  36:20
build (1)
  3:16
building (2)
  25:9,10
bunch (1)
  9:24
BURSTEIN (53)
  2:7,8,8;6:15;8:9;
  9:5;10:23;11:10;
  16:1,2,25;17:6,8,18;
  18:6,21,24;19:23;
  21:2,7,9,13,16;22:12,
  14,22;23:1,17,19;
  24:5,7;25:5,16,19,21;
  27:8,15;29:4;30:1,6,
  20;33:10,25;34:4,15,

16,20,24;35:9,12,17,
22;38:20
Burstein's (1)
  33:18
business (3)
  7:23;20:5;26:12

**C**

CALAMARI (4)
  2:13,13;15:14,15
called (1)
  8:15
Calypso (1)
  12:25
camera (1)
  35:8
can (21)
  3:15;12:23;13:22;
  16:5,8;17:21;18:14,
  21;19:17;22:2,15;
  23:12;28:18;29:9,14,
  21,22;36:3,6;37:7;
  38:17
capable (1)
  36:11
Capital (1)
  6:21
careful (2)
  18:25;37:14
case (65)
  4:2,5,9,12,25;5:13,
  24;6:14,16,22;7:1,2,
  21,24,24;8:6,6,8,14,
  22,23,23;9:1,5,6,7,7,
  9,10;10:5,8,10,17;
  12:8,13,19,24;16:10,
  19;18:1,2;19:21;
  20:22;25:13,18;26:1,
  2,3,19;27:2;28:9,14,
  16,16;29:16,22;
  31:17,20,20;34:10;
  36:13,21;37:21;38:1,
  7
cases (21)
  3:25;4:15,20;5:19;
  6:8;8:21,25;9:4,24;
  10:11;13:16;14:21,
  24;15:17;16:7;26:24;
  27:1,8;30:13,13;
  31:12
category (1)
  16:19
cause (1)
  3:13
Century (1)
  20:4
certain (2)
  5:8;17:24
certainly (1)
  23:4
CERTIFIED (1)
  38:22

chance (4)
  20:25;30:16;33:15,
  15
characterized (1)
  20:23
Cicchetti (2)
  5:23;6:8
Circuit (9)
  4:15;9:6;11:1;
  12:25;13:1;14:21,23,
  25;15:4
circuits (1)
  14:25
Circuit's (1)
  8:14
circumstances (3)
  15:9;16:18;37:19
cite (3)
  5:12;12:23;27:9
cited (12)
  6:15,23;8:21;9:9,
  23;10:6,8,11;14:24;
  25:13;26:24;31:12
cites (6)
  5:19;7:20;9:5;
  10:23;26:1,2
citing (1)
  32:4
City (3)
  6:25;8:12;37:1
claim (39)
  3:20,22;5:15,22;
  6:2,6,7,17,20;7:20;
  8:16,17;9:2,8;10:3,4;
  11:3,14,15,24;12:1,5,
  7;13:9;15:8;21:6,7,9;
  22:24;27:2,3,4,11;
  32:14;33:3;34:13;
  36:18;37:24;38:1
claiming (1)
  31:5
claims (40)
  3:9;5:8,9;6:24;7:1,
  18;8:12;10:18,19,19;
  14:14,15,17,19;
  21:23;22:8;28:19;
  30:8;31:22;32:1,5,
  11;33:5,7;34:3;
  36:22,25;37:2,3,9,10,
  15,16,17,17,20,20,21;
  38:7,13
clause (54)
  3:3,5,19;4:24;5:5,
  11,14,17,21,21,25;
  6:1,12,13,24;7:2;
  8:17,20,25;9:1,20;
  10:3,7,16,20;11:4,8,
  25;12:17;13:23;14:9;
  16:10,13;21:4,17,18,
  20;22:19;23:6,8,9,22;
  25:15;29:15;31:1,7,9,
  10,11;32:25;33:20;
  34:10;37:8,25

clauses (2)
  10:1;27:9
clear (5)
  15:17;21:25;32:18;
  34:21;35:14
clearly (3)
  32:2;34:8;37:4
client (14)
  11:12;19:17;22:6,
  23;24:4;27:24;28:15,
  21;33:11;34:7,12,19,
  21,24
clients (2)
  27:18;34:12
client's (3)
  23:15;35:10,12
close (1)
  16:16
CM (1)
  38:25
coin (1)
  27:7
coming (1)
  25:22
commend (1)
  36:10
comments (1)
  33:18
commissions (1)
  18:16
common (1)
  17:12
communications (1)
  28:22
company (2)
  17:11;20:3
compel (7)
  4:22;12:14,16;
  15:5,6;37:8;38:12
compelled (4)
  5:8;7:5;8:25;9:9
compelling (2)
  10:12;28:20
complaint (6)
  7:9,9,12;22:12,15;
  29:3
conceded (1)
  32:15
concept (1)
  23:14
concerning (2)
  24:11,19
concerns (2)
  3:2;35:3
conclude (1)
  15:10
conditions (3)
  18:8,11;26:9
conduct (6)
  7:25;24:3,3;29:23;
  31:13;37:13
Cone (1)
  4:13

confidential (3)
  19:1;26:10;28:20
confidentiality (24)
  11:23;12:18;21:19;
  22:8,19;23:2,3,25;
  24:2,7,8,15,21,23,24;
  30:21;33:20,24;35:3,
  20,24;36:2,5;38:5
considered (2)
  19:19;38:8
consistently (1)
  15:1
contained (1)
  36:16
containing (1)
  3:5
contains (1)
  5:17
contending (1)
  8:2
context (1)
  25:14
contract (27)
  3:3,4;4:24;7:6;9:8,
  12;11:12,23,23;12:6;
  13:17,21;19:7;21:23,
  25;22:8;23:25;26:18,
  19;27:4,11;31:22;
  32:17,18,21;33:1,11
Contracts (3)
  23:18,20;30:22
contract's (1)
  33:20
contractual (1)
  32:24
contrary (3)
  5:18;14:5;37:22
control (1)
  17:12
controlled (1)
  17:12
controlling (2)
  10:9;17:12
controversies (1)
  36:23
controversy (4)
  3:20;9:2;32:9;
  36:18
converse (1)
  23:10
convince (1)
  19:14
cooperate (1)
  34:8
Coors (2)
  9:5,6
copy (2)
  16:21;19:5
corporation (1)
  14:4
counsel (14)
  2:5;3:17;5:4;7:12;
  13:8;15:10,18;21:1;

Case 1:25-cv-01675-VSB    Document 44-3    Filed 09/02/25    Page 44 of 50

TANTAROS v.
FOX NEWS

February 16, 2017

22:5;30:18;36:10;
38:17,18,21
couple (1)
5:19
course (3)
23:19;26:1;32:6
COURT (109)
2:1,4,16,20,24;3:1,
1,2,8,11,17;4:1,3,5,6,
9,11,12;5:6,13,19,25;
6:11,16;7:6,12,15,17;
8:2;9:8,10,10,16,22,
25;10:16,21;11:1,15,
18,20;12:1,10,15;
13:1,3,8,12;14:2,7,7,
12,24;15:10,13,20,
23;16:22;17:4,7,14;
18:3,19,22;19:14;
20:25;21:6,8,11,15;
22:4,13,18,23;23:15,
18;24:1,6;25:4,11,17,
20;27:6,14;28:18;
29:2,25;30:3,6,10,17,
25;31:5,17;32:13,20;
33:2,13;34:14,17,23;
35:6,10,21;36:6,9;
37:22;38:8,21
courtroom (1)
10:15
courts (6)
4:3;13:4,5;30:7;
31:3;36:22
covered (6)
17:15,16;26:18;
32:3,9;36:16
covers (2)
10:20;33:25
CPLR (2)
3:25;38:14
created (1)
31:11
criminal (2)
27:21;29:20
cross (1)
8:6
CSR (1)
38:25
Cusimano (2)
13:2,2

**D**

damages (1)
23:6
Davis (1)
5:23
deal (1)
18:3
deals (1)
19:19
Dechert (1)
2:10
decision (8)

6:23;9:15;10:12,
23;13:1;26:5,16;
36:15
deemed (1)
32:8
defendant (4)
14:16;32:7,8;38:7
defendants (7)
25:8;37:6,15,18,
24;38:2,14
Defendants' (1)
38:12
defense (2)
12:12;15:21
define (1)
19:10
defined (2)
20:6;26:11
definition (3)
17:25;19:11,12
defrauded (1)
21:24
demand (2)
14:17,18
denial (1)
38:12
denied (1)
38:11
Department (7)
6:22;7:4;10:8;14:1,
12;26:3;31:17
Department's (1)
14:20
describe (2)
11:7;32:4
describes (1)
11:6
deserves (1)
10:14
Dianne (1)
2:3
DiBello (2)
14:11,20
difference (1)
26:22
different (9)
16:10,12,19;18:2;
23:9;26:20;27:1,3,6
difficult (1)
4:17
directed (1)
4:3
directly (1)
24:9
directors (2)
14:4;37:12
disclose (2)
24:10;26:10
discrimination (4)
10:19;14:14;31:20;
32:1
discuss (1)
4:21

discussions (1)
28:1
dispute (8)
3:20;9:2;16:3,5;
26:6;32:9;36:18;38:5
disputes (2)
23:11;37:23
disputing (1)
24:1
distinguish (1)
14:3
District (2)
5:24;8:24
Division (1)
26:5
divulge (1)
24:10
divulging (1)
25:1
document (1)
35:25
done (4)
9:18;12:13;28:5;
35:8
doubt (1)
33:9
drops (1)
6:9
during (1)
26:10

**E**

earlier (3)
14:1;32:16;33:2
easier (1)
15:6
effect (1)
14:22
eight (1)
25:4
electronic (1)
28:21
elevator (1)
25:22
else (3)
8:20;18:1,4
Emanuel (1)
2:14
emphasized (2)
13:3;15:4
employee (9)
7:21;11:2;14:16;
15:2;16:8;18:18;
20:5;25:25
employees (12)
15:1;17:15,16,20;
18:1,5;19:13,15,18,
22;28:9;37:12
employer (10)
7:19;8:7,13;13:23;
14:9,10,16,18;16:7;
18:18

employment (35)
3:3,4,21;5:14,14,
15;6:13,17;7:3,7,20;
8:4,8,11,18;9:3,3;
14:15;18:8,12;26:11;
27:1,10;31:24;32:1,2,
4,6,8;35:5;36:15,16,
19;37:4,20
encompass (3)
5:16;6:24;33:9
encompassed (3)
8:9,16;32:19
encompasses (3)
5:15;31:22;34:3
End (3)
9:13;11:18;25:7
enforceability (1)
14:12
enforced (1)
3:23
enforcement (2)
4:4;32:23
enforcing (1)
32:22
engaged (2)
5:1;38:2
engagements (1)
29:11
enough (1)
9:18
enter (2)
19:7;28:5
entire (3)
16:20;19:6;35:5
entitled (3)
14:17,18;16:14
entity (4)
15:1,2;17:16;19:20
equally (1)
37:19
equivalent (1)
23:10
essentially (3)
6:1,2;27:10
establish (1)
29:17
established (2)
14:6;37:22
evading (1)
14:5
even (7)
8:9;10:6;11:6,10;
15:5;30:21;37:9
event (1)
38:4
events (2)
32:6;34:1
Everybody (2)
16:10;26:1
evidence (1)
28:20
exact (1)
12:24

exactly (11)
6:4;7:1,2;8:20;9:6;
28:2;29:21;30:19;
31:24;32:10;33:7
example (5)
5:23;7:21;9:5;
16:9;20:4
except (2)
2:11;27:8
exception (1)
7:21
exclude (3)
18:5;19:21;20:11
excludes (2)
19:15,22
exclusively (1)
13:18
excuse (2)
21:13;23:16
excuses (1)
22:10
excusing (1)
23:5
executives (1)
16:9
Exhibit (3)
33:12,17;35:15
exhibits (1)
17:2
existence (1)
25:2
expanded (1)
33:9
explain (1)
35:10
explained (1)
14:3
explaining (1)
33:14
express (2)
3:5;4:14
extends (1)
14:9
extensively (1)
29:3
extortion (1)
29:23
extortious (1)
28:15
extraneous (1)
34:5
extraordinary (1)
26:22
extremely (1)
36:10

**F**

F3d (3)
4:16;8:15;10:25
fact (7)
10:16;12:5;13:2,
20;17:19;29:5;34:6

TANTAROS v.
FOX NEWS

February 16, 2017

facts (1)
    13:18
factually (1)
    37:16
failing (1)
    3:12
failure (1)
    22:16
fake (1)
    28:24
fall (6)
    7:7;8:4;16:18;
    29:15;36:23;37:4
fallen (1)
    25:24
falls (1)
    25:21
far (1)
    36:3
favor (4)
    3:24;4:8,18;16:4
favoring (1)
    37:23
federal (9)
    3:22,25;4:17;8:16;
    9:13;14:8;29:20;
    31:12;36:22
few (3)
    5:11;6:2;27:13
figured (1)
    29:21
file (1)
    38:19
filed (1)
    11:13
filings (1)
    28:7
Finally (2)
    13:22;34:4
find (2)
    13:22;20:7
fine (1)
    2:19
fire (1)
    3:16
first (10)
    5:7;19:11;21:3;
    22:9;30:13;31:19;
    33:6;36:9;38:4,10
five (2)
    27:14;36:6
Fletcher (1)
    10:22
flouted (1)
    4:23
fly (1)
    10:16
focus (3)
    5:3;22:9;30:16
follow (1)
    30:13
followed (1)
    10:21

following (1)
    21:10
footnote (1)
    6:9
forced (1)
    23:23
forum (4)
    9:20,25;10:3;16:13
forward (1)
    33:8
found (2)
    20:16;38:9
Fox (37)
    2:2,11,21;3:5;7:16,
    25;8:22;11:12;17:13,
    14,25;18:4,9;19:9,9,
    10,11,12,13,17;20:4,
    4;24:12;25:9;27:21;
    28:4,20;29:5,9,21;
    34:7,8;36:15;37:10,
    13,14,17
Fox's (6)
    8:3;17:9,15;20:1;
    24:15;29:9
frand (2)
    22:3;23:12
fraudulent (1)
    29:1
Freed (2)
    26:8,16
Freed's (2)
    26:4,20
freely (1)
    19:24
frivolous (2)
    11:7;20:19
full (4)
    5:20;18:21;35:4,18
fundamentally (1)
    18:2
Further (1)
    37:14
future (1)
    19:20

G

Gateson (1)
    8:23
General (3)
    4:16;23:2;25:6
generally (1)
    21:22
gets (2)
    10:5;28:10
Gilmore (2)
    10:17,21
given (3)
    14:14;20:22;22:24
gives (1)
    28:17
giving (1)
    23:5

goes (2)
    13:21;33:8
Goldstein (1)
    2:10
Good (5)
    2:1,7,9;13:16;22:1
governed (1)
    32:3
grant (1)
    24:19
granted (2)
    4:23;38:14
guess (1)
    20:4
Guyden (1)
    10:25

H

happened (2)
    19:20;20:15
happy (1)
    3:16
harassment (26)
    5:9,10,16,17;6:11,
    18,20;7:4;8:1,18,25;
    9:7;10:4,7,14,18;
    27:23;28:6,17;31:16,
    16,20,25;33:4;34:13;
    37:2
heard (1)
    10:19
held (7)
    5:13;6:24;11:1;
    14:12;15:1;30:8;
    36:22
helpful (2)
    16:11;19:4
hereunder (1)
    24:20
Hirschfeld (2)
    4:9;13:25
Hobbs (1)
    29:24
hold (2)
    8:22;15:11
holding (5)
    8:15;14:8,20,21;
    32:5
Honor (28)
    2:7,9,19,23,25;
    4:15,23;5:11;7:8;
    8:21;9:14;13:25;
    15:15,22;16:20;26:2;
    27:13,15;29:14;30:2,
    5,16,20;31:15;33:10;
    35:1,4;38:20
hope (1)
    33:8
Hospital (1)
    4:13
host (1)
    8:21

Human (4)
    6:25;8:12;37:1,1

I

Identical (1)
    9:1
Identified (1)
    36:4
ignore (2)
    30:21,22
ignores (1)
    5:2
immediately (2)
    12:13;28:4
important (5)
    20:3,21;21:4,21;
    29:6
impression (1)
    21:3
inability (1)
    11:2
inclined (2)
    27:13,15
include (3)
    10:4;17:25;26:12
includes (1)
    18:10
including (9)
    4:1,24;5:22;6:5,6,
    10;14:22;19:13;
    36:25
Indeed (10)
    3:23;4:15,23;6:8,
    21;9:14;10:25;14:22;
    30:5;31:15
Indemnification (1)
    18:16
index (1)
    2:4
indirectly (1)
    24:9
indistinguishable (1)
    9:1
individual (5)
    14:16;22:7;37:6,
    15,18
individuals (2)
    2:11;13:10
individual's (1)
    37:11
Industries (1)
    12:24
information (7)
    24:11;26:10,11,12;
    27:17;29:4,12
initial (1)
    22:10
inject (1)
    34:5
injunctive (1)
    18:17
intentional (2)

25:11;29:15
interaction (1)
    7:22
interesting (1)
    20:6
interfered (2)
    29:7,10
interference (7)
    27:2;32:13,17,17,
    25;37:3,20
interfering (1)
    27:5
Internet (1)
    18:16
interrelated (1)
    16:17
intertwined (1)
    37:16
interview (1)
    24:19
into (6)
    11:15;19:7;21:24;
    23:23;28:5;34:5
inure (2)
    17:9;20:1
investigating (1)
    29:20
investigation (1)
    27:21
invoke (1)
    37:8
involve (1)
    37:18
involved (4)
    9:14;28:21;33:23;
    38:4
involvement (1)
    22:7
Involves (1)
    27:4
Irena (1)
    2:3
ironically (1)
    10:23
issue (9)
    20:7,16,18;23:21,
    22;24:18;30:21;
    34:18;37:21
issued (3)
    4:7;11:12;12:8
issues (4)
    5:3;13:18;18:4;
    37:18
issuing (1)
    29:18

J

JACK (1)
    38:25
Jersey (1)
    10:5
job (1)

TANTAROS v.
FOX NEWS

February 16, 2017

28:17
join (1)
  15:16
Joseph (1)
  2:14
Judd (2)
  2:7,8
judicial (1)
  4:4
Justice (4)
  26:4,8,16,20

**K**

keep (2)
  20:12;28:9
Kidder (1)
  10:22
kind (3)
  21:16;23:5;27:1
kinds (1)
  34:5
knew (1)
  33:22
knowledge (1)
  24:10
known (1)
  28:25
knows (1)
  33:19

**L**

language (7)
  5:20;6:10;19:25,
  25;20:9;26:16;31:21
last (3)
  4:1;27:13;33:15
later (1)
  11:8
law (23)
  3:14,23;4:18;5:12,
  18;8:12;12:19;13:18,
  24;14:8;15:17;21:22,
  22,25;25:13;26:1;
  28:16;29:20;31:14;
  37:1,1;38:1,15
Laws (2)
  7:1;36:21
lawyer (1)
  11:10
leading (1)
  34:2
learned (1)
  27:17
least (2)
  2:17;13:15
leave (1)
  35:19
legitimate (1)
  24:25
less (2)
  14:18;15:8

Letter (1)
  13:24
LEVANDER (41)
  2:9,10,19,22,23,25;
  3:10,14,19;4:11;6:4;
  7:8,13,16,18;8:5;
  9:18,23;10:2;11:17,
  19,21;12:4,11,19;
  13:11,14;15:11,16,
  22;19:3;30:5,12,19;
  31:2,8;32:15,22;33:6,
  17;34:22
Levitt (1)
  10:10
liable (1)
  8:7
lie (1)
  13:18
limited (5)
  5:22;6:5,6,10;24:8
Lindo (1)
  2:10
litigate (3)
  5:6;12:20,21
litigated (2)
  12:12;36:23
litigation (3)
  12:21,22;38:3
LLC (1)
  2:2
Lloyd's (1)
  14:23
logical (1)
  25:7
look (7)
  7:11;19:11;23:20;
  26:4;28:19;30:15;
  35:15
looking (1)
  17:7
lose (2)
  8:11;28:17
lot (2)
  9:25;18:19
lots (1)
  25:13
lower (1)
  4:3
Luckie (1)
  4:2

**M**

maintain (1)
  28:24
major (1)
  26:3
makes (3)
  11:5;26:22;35:14
Making (3)
  12:21;13:17;33:20
male (3)
  34:6,21,24

Management (1)
  6:22
many (2)
  16:7;17:3
material (2)
  21:20;23:7
materially (1)
  37:25
matter (1)
  9:11
matters (1)
  24:12
may (9)
  2:24,25;9:18;
  11:16;15:10,13,19;
  30:6;34:7
maybe (1)
  35:18
McMahon (1)
  4:14
mean (7)
  3:8;17:11,14;
  21:10;22:6;23:19;
  26:19
means (3)
  6:6;19:17;23:22
media (1)
  38:5
member (1)
  36:20
members (1)
  2:17
Memorial (1)
  4:13
mentioned (1)
  10:8
mergers (1)
  18:13
merges (1)
  18:4
merit (2)
  38:2,9
might (4)
  16:14,18;23:4;
  33:15
mine (1)
  20:23
minute (3)
  15:24,25;36:6
minutes (8)
  13:8;15:20;25:4;
  27:13,14;29:25;
  34:16,17
Mirvish (1)
  14:1
misconduct (1)
  37:10
Mitsubishi (1)
  9:10
moment (3)
  10:8;30:20;35:14
moments (1)
  5:11

more (7)
  4:1;13:8;14:11;
  25:4;27:14;29:4;
  34:15
MORELLI (1)
  38:25
Moses (1)
  4:13
motion (5)
  3:1;4:22;12:10,11;
  38:12
Motors (1)
  4:16
move (1)
  25:5
moving (2)
  15:5,6
much (1)
  25:3
must (1)
  11:24
mutually (1)
  36:20

**N**

nameless (1)
  27:19
names (1)
  2:18
nature (2)
  14:14,15
necessarily (2)
  28:13;37:13
necessary (1)
  19:2
need (2)
  15:25;29:13
needs (1)
  3:23
negligent (1)
  25:23
neither (1)
  35:2
Network (1)
  2:2
New (20)
  4:1,2,5,11,19;6:25,
  25;7:15,16;8:12,12;
  10:5;21;13:1,2;14:8;
  27:17;36:21,25;37:1
News (11)
  2:2;7:25;11:12,16;
  18:9;19:11;20:5;
  28:24;37:14,17;38:4
newspaper (1)
  12:9
nights (1)
  27:18
nobody (2)
  26:3,14
nonassignable (1)
  19:16

non-assignable (1)
  17:5
Nonetheless (2)
  7:4;10:5
nonparty (1)
  16:14
normal (1)
  16:17
note (2)
  30:7;34:4
noted (1)
  5:20
notices (1)
  38:19
notion (1)
  11:7
notwithstanding (1)
  10:15
nuance (1)
  31:5
number (2)
  23:17;26:25
numerous (1)
  14:21;29:8
NY2d (1)
  14:10

**O**

observed (1)
  4:16
occur (2)
  13:7;31:18
occurred (3)
  7:13,14;32:6
occurs (1)
  12:20
off (1)
  7:22
offer (1)
  24:10
offered (1)
  28:8
office (2)
  27:20;29:18
officers (2)
  14:3;37:12
often (1)
  22:10
Oldroyd (2)
  8:15;26:24
once (2)
  3:6;28:2
one (23)
  3:11;6:8,20;14:23;
  15:7;16:5,17;17:2,
  21;19:23;20:24;21:2;
  22:14;24:15,18;25:8,
  16;27:18;30:8;34:11,
  15,20;35:17
one's (1)
  11:21
ongoing (2)

**TANTAROS v.**
**FOX NEWS**

February 16, 2017

27:20,24
only (19)
3:21;8:7,13;12:14,
20;17:21,24;18:10;
19:8,9;20:13;24:21,
24;29:9,13;31:9;
33:3,25;35:19
opinion (2)
26:21;31:19
opinions (1)
4:7
opportunity (3)
9:17;27:16;38:19
opposed (1)
27:10
opposition (1)
17:1
oral (1)
38:10
order (1)
38:17
ordered (4)
7:5;31:17,17;38:18
others (1)
29:23
out (19)
3:20;5:5;10:18;
13:15;16:12;18:20;
22:1;23:11;25:14,22;
26:7;27:4;29:21; .
31:23;32:5,10,11;
35:19;36:18
outcome (1)
38:16
out-of-court (1)
13:5
outrageous (1)
30:22
outside (2)
30:7;38:7
over (6)
3:25;22:17,24;
31:4,4;33:25
nverstate (1)
4:17
overwhelming (2)
5:3;12:20

**P**

page (2)
4:17;30:15
paid (1)
26:14
pale (1)
34:13
panel (1)
36:21
papers (12)
2:20;16:23;17:1,3;
18:20,23;20:7;29:3;
32:16;35:7;36:3,12
paragraph (2)

22:15;23:4
paragraphs (1)
7:11
part (8)
7:22;18:6,7,8,10;
19:4;35:19,20
particularly (2)
7:10;32:20
parties (9)
13:17;17:22;19:7,
8;20:14,14;23:11;
35:3;36:24
parties' (1)
38:6
party (8)
12:23;13:6;15:2,6;
21:23;22:11;24:11;
35:2
pattern (2)
28:18;29:17
Pause (1)
35:16
PC (1)
2:8
Peabody (1)
10:22
pending (2)
12:7;38:15
people (2)
17:24;20:12
per (1)
28:9
perform (1)
18:14
performance (2)
21:14;23:5
performances (1)
24:19
performer (5)
17:5;18:14,15;
19:16;24:9
perhaps (1)
17:20
period (2)
22:24;34:3
permission (1)
29:10
person (1)
24:11
personal (2)
22:16;26:13
persuasive (1)
33:15
pertinent (1)
38:1
Peter (1)
2:13
petition (1)
10:10
physical (2)
25:20,21
place (2)
7:20;8:3

plain (1)
20:9
plainly (1)
4:22
plaintiff (8)
2:8;4:23;5:12;
11:10;36:23;37:11;
38:3,4
plaintiff's (11)
2:5;3:11;12:16;
15:18;32:1,5;36:15;
37:4,24;38:10,13
plans (1)
24:12
pleadings (1)
38:11
please (2)
3:1;30:6
plethora (2)
3:25;4:15
point (13)
4:21;9:6,19,24;
10:9;11:4;13:15;
20:21;23:1;28:1;
31:15;35:22;36:14
pointed (1)
16:12
pointing (1)
16:10
policy (5)
3:24;4:7,18;9:14;
14:6;37:22
portions (1)
16:22
position (1)
15:18
post-arbitration (1)
13:20
post-contract (2)
13:19;31:13
post-employment (1)
29:6
Powers (2)
14:22;26:25
PPG (1)
12:24
preapproval (1)
12:6
precedent (1)
5:3
Precisely (2) .
6:13;20:15
prejudice (2)
13:6;38:12
prejudiced (1)
38:3
prejudices (1)
12:23
prejudicial (1)
13:7
premises (3)
7:14,22;8:3
press (1)

33:18
presumption (1)
16:4
pretty (1)
9:19
principals (1)
26:13
principle (6)
9:4;10:2,11,18;
25:6;37:19
principles (1)
4:20
prior (1)
22:16
private (2)
28:22,23
probably (3)
11:11;13:9;15:23
problems (1)
35:17
procedure (1)
2:24
proceed (1)
37:21
procured (1)
22:3
Products (1)
13:25
program (1)
24:12
promotions (1)
18:17
prosecutors (2)
28:1,3
protected (2)
15:3;17:20
protracted (3)
12:22;13:4;38:3
provide (1)
22:16
provided (2)
35:6;36:1
provides (1)
26:9
provision (15)
3:23;14:5;17:19,
21;18:3;21:19;22:19;
23:25;24:2,16,17;
32:21,23;36:17,25
provisions (4)
18:12;24:21;36:1;
38:6
public (4)
11:9,9;18:24;37:22
publicity (1)
4:25
publicly (1)
11:2
published (1)
12:5
puppet (1)
28:25
purposes (1)

14:5
pursuant (3)
10:20;38:14,15
put (5)
2:5,16;6:18;19:1;
35:18

**Q**

quickly (1)
16:2
Quinn (1)
2:14
quintessentially (2)
7:19;8:8
quite (2)
20:23;26:21
quote (1)
14:9

**R**

racketeering (3)
28:14,18;29:17
radically (2)
26:19,20
radio (1)
12:9
Ragone (1)
14:22
raised (2)
13:18;33:16
raises (1)
5:4
raped (1)
25:8
read (8)
2:20;7:9,12;13:16;
17:21;26:20;31:4;
33:25
ready (1)
2:20
really (3)
26:2;33:14;35:5
reason (3)
18:22;20:17;21:10
reasons (2)
22:14;23:17
rebut (1)
24:25
rebuttal (4)
15:12,19,21;30:4
received (2)
34:7,8
recently (3)
6:23;14:11;27:17
recess (1)
36:8
recognize (1)
20:23
record (15)
2:6,17;16:24,25;
19:5;20:17;24:16;

TANTAROS v.
FOX NEWS

February 16, 2017

30:7;34:6,25;35:4;
36:7,9,11,15
redacted (1)
18:22
refer (1)
7:10
reference (7)
3:9;7:3;8:18,19,19;
10:7;29:2
referenced (1)
5:11
referred (1)
14:1
referring (2)
4:10;30:18
reflected (1)
3:24
rejected (1)
10:18
relate (3)
24:14;32:2;37:13
related (6)
6:12;8:1;9:12;
14:15;32:12;33:7
relates (5)
23:8;32:18,20;
33:3;37:11
relating (13)
3:20;5:15;6:17;
7:2;9:2,8;24:12;
26:12;27:21,24;
31:23;32:10;36:19
relevant (2)
16:15;34:1
relied (1)
6:9
relief (1)
18:17
relying (2)
19:24,25
remain (1)
27:19
remaining (1)
38:6
remotely (1)
20:15
render (2)
24:10;36:14
reply (4)
20:7,16;30:17;
33:17
report (1)
28:17
reported (4)
11:18;28:6,10,24
represent (5)
2:11,15;14:4;29:9;
30:12
represented (2)
3:6;30:20
represents (1)
29:8
required (1)

16:8
requirement (1)
5:18
requirements (1)
23:3
requiring (1)
36:17
reserve (1)
15:19
reserved (1)
15:20
respect (2)
19:8,9
Respectfully (1)
17:18
respond (1)
12:15
response (1)
12:8
rest (1)
15:11
restrictions (1)
18:16
result (1)
21:11
retaliation (4)
27:6;32:2;33:4;
37:2
review (1)
37:14
RICO (4)
29:16,22;30:8,13
right (17)
3:15;10:9;11:4,16;
12:16;17:15,17;
19:24;21:12;22:9,20;
25:12;28:23;31:15;
32:21,22,24
Rights (6)
6:25;8:12;18:15;
20:14;37:1,1
rigorous (1)
4:4
rise (4)
11:3;23:4,6;28:17
risk (1)
33:19
Roby (1)
14:23
Roger (4)
2:2,11,15;24:14

**S**

SAC (1)
6:21
SAC's (1)
26:10
sale (1)
27:5
Saikowitz (1)
14:11
same (15)

4:6;6:1,3,4;7:2;
8:14,22;9:22,23;
10:11;14:22;23:13;
27:7;35:21;37:18
Sarles (1)
2:14
saw (2)
11:19;28:3
saying (5)
9:11;17:4;26:16;
28:13;32:23
Schnurr (1)
13:2
scope (5)
7:7;8:4;37:4,5;38:7
Scott (1)
2:4
se (1)
28:9
seated (1)
15:13
SEC (1)
28:7
Second (2)
11:5;35:1
Section (2)
31:21;32:3
securing (1)
23:12
securities (1)
28:3
seemed (1)
11:16
seems (2)
20:9;26:14
selected (1)
36:20
selection (4)
9:20;10:1,3;16:13
selling (1)
20:3
send (2)
12:1;27:15
services (2)
18:15;24:19
set (1)
18:21
settle (1)
28:8
several (1)
13:12
severed (1)
37:10
sexual (18)
5:9,10,16,17;6:10,
18,19;7:4,23;8:1,3;
10:4,7,14,27:22;28:6,
17;34:12
shall (7)
17:9,11;20:1;24:9,
18;27:18;36:19
Shearson/American (1)
4:14

Shine (3)
2:3;25:7;29:23
shipped (1)
10:5
Shipping (1)
12:25
short (2)
20:22;36:8
shortly (1)
10:21
show (4)
19:21;22:2;23:12;
35:23
shown (1)
35:14
shows (1)
37:15
shrift (1)
20:22
side (5)
15:21;16:5;18:25;
22:5;35:13
sides (1)
27:7
signatories (1)
37:7
signed (4)
3:4;11:8;15:7,7
significant (1)
29:13
silent (1)
20:7
similar (1)
9:20
Similarly (1)
23:13
simple (1)
7:8
simply (1)
5:12
single (4)
5:13;6:15,20;19:3
Siroy (10)
6:23;9:15,19;
14:24;16:11,11,12;
30:16;31:19,20
sites (1)
28:25
sitting (1)
2:13
situation (2)
21:5,23
situations (2)
16:12;22:8
smattered (1)
9:16
Smith (1)
4:2
social (1)
7:22
sock (1)
28:25
solely (1)

23:8
somehow (3)
10:14;19:15;34:9
sophisticated (2)
3:4,6
sort (3)
16:15;23:10;25:6
sorts (1)
18:12
sought (2)
24:2;36:23
sources (1)
28:20
Southern (2)
5:24;8:24
Speaking (3)
27:14;29:8,11
specific (3)
3:9;18:10,17
specifically (6)
10:17;11:1;23:7;
31:6,22;34:17
specifies (1)
6:2
standard (5)
12:22;13:6;15:5;
18:8,11
stands (1)
20:17
Starting (1)
2:4
state (7)
3:22;6:25;8:12;
14:6;31:12;36:21,25
stated (2)
14:25,25
statement (6)
11:13,22;12:21;
13:4,19,20
statements (4)
24:18,25;33:21;
35:25
States (4)
4:6,12;9:11;27:20
station (1)
7:25
status (1)
7:19
statute (1)
11:3
statutory (2)
8:16;14:14
stayed (1)
38:15
still (1)
14:11
story (1)
9:13
strict (1)
21:18
strong (5)
3:24;4:7,17;15:9;
28:16

Min-U-Script®

(7) redacted - strong

TANTAROS v.
FOX NEWS

February 16, 2017

strongly (1)
37:23
stuff (2)
18:19;34:5
stunts (2)
4:25;11:9
subject (8)
22:20,25;25:9;
26:7;28:13;32:8,15,
24
submit (1)
38:17
submitted (3)
35:7,8,24
subpoena (5)
27:23;29:19;34:7,
8,9
subpoenaed (2)
27:19,25
subpoenas (1)
29:19
subsequent (1)
13:17
subsequently (3)
14:2,6;29:6
successors (2)
17:9;20:2
sufficient (1)
5:25
suggest (3)
24:16;30:15;33:10
suggestion (2)
10:13;24:20
suggests (1)
28:16
suing (1)
13:23
supervisor (1)
32:7
supervisors (1)
32:7
supplement (1)
19:5
support (1)
15:18
Supreme (6)
2:4;4:6,12;9:10,10;
10:16
sure (3)
20:13;25:3;34:20
surveillance (1)
28:21
suspect (1)
27:24
Suzanne (1)
2:3
systematic (1)
7:25

**T**

taleot (1)
3:7

talents (1)
29:9
talk (5)
16:2;20:25;22:4;
25:6;36:1
talking (4)
4:7;18:13,14;31:19
Tantaros (11)
2:2;3:3;11:14;18:9,
11;24:17,18;25:1,8;
27:25;28:8
Tantaros' (1)
17:1;27:22;29:7
term (2)
5:20;17:11
termination (3)
27:1,7,9
terms (4)
4:24;22:1;25:2;
36:24
theoretically (1)
18:25
theory (1)
25:25
thereafter (1)
10:22
therefore (3)
6:18;8:8;30:24
third (3)
16:16,18;20:14
third-party (3)
16:16;17:23;20:11
though (3)
10:6;13:15;37:6
three (5)
5:3;15:20;16:12;
22:17;36:20
threw (1)
10:17
thus (1)
32:3
Thyssen (1)
12:25
Times (1)
28:24
today (2)
28:24;36:12
told (1)
27:19
Tong (8)
6:21;10:8;26:2,9;
31:15,18;32:4,4
took (1)
8:3
torrent (1)
11:9
tort (2)
25:11;27:3
tortious (7)
27:2;32:13,16,17,
25;37:3,20
tortiously (2)
29:7,10

torts (1)
29:15
transcript (2)
38:17,22
tried (3)
9:19;28:8;34:5
tripped (1)
25:24
trips (1)
25:21
true (2)
8:14;38:22
try (2)
16:2,2
trying (3)
19:14;24:25;34:9
turned (1)
13:3
TV (1)
12:9
twice (1)
3:6
Twitter (1)
29:1
two (14)
10:11;11:8;13:8,
15;16:15;19:7,8;
22:14;27:7,18;29:13,
25;34:16,17
types (1)
3:9
typical (1)
25:14
Typically (1)
22:8

**U**

unambiguous (1)
36:17
uenscionable (1)
31:10
under (16)
2:4;3:22;6:24;7:3;
8:17;11:3;12:17;
14:8;15:9,24;16:17;
17:12;22:20;29:23;
30:1;36:25
undergoing (1)
29:19
underlying (2)
26:5,19
understood (1)
28:3
undoubtedly (1)
3:2
uniformly (2)
8:22;9:4
United (4)
4:6,12;9:11;27:20
unless (4)
22:2;23:12;24:13;
30:1

unlike (1)
21:16
unprecedented (1)
11:6
nnrelated (1)
8:11
unsupported (1)
38:1
up (2)
16:1;34:2
upon (3)
27:17;28:1,15
USC (1)
28:22
use (2)
13:4,5
used (1)
17:10
using (1)
24:13

**V**

Valdes (1)
8:23
valid (2)
24:2;36:16
various (1)
4:25
versus (12)
4:2,14,16;5:23;
6:21;10:22,25;12:24,
25;13:2;14:11,23
victims (1)
28:6
view (2)
6:4;11:21
violated (5)
12:6;13:21;33:11,
21;35:24
violating (4)
11:11;12:17;33:20,
22
violation (4)
11:22;21:19;28:22;
38:5
violations (1)
29:20
vitiate (1)
11:24
vitiated (1)
12:2
vitiating (1)
11:4
void (1)
31:8
voiding (1)
31:6
voids (1)
31:9

**W**

waffle (1)
33:13
waffled (1)
33:10
Walt (2)
25:11;30:25
waived (2)
12:16;37:24
waiver (6)
12:3,20;13:3;21:6,
7,12
wants (1)
22:23
way (9)
3:16;8:7;12:14;
17:21;24:14;25:23;
30:7;31:10;33:14
Webster (1)
12:24
weeks (1)
29:13
well-organized (1)
36:11
well-prepared (1)
36:10
Westinghouse (1)
4:5
what's (2)
16:25;29:21
whistleblower (3)
8:16,19;11:3
whole (1)
7:10
William (1)
2:3
wish (1)
3:17
within (8)
7:7;8:4;16:18;
29:15;32:21;36:24;
37:3,4
without (4)
12:5;38:2,9,12
word (1)
24:13
words (4)
5:10,17;6:18;12:24
work (1)
16:3
world (1)
26:23
wrote (1)
26:8

**Y**

year (1)
4:1
years (2)
11:8;22:17
York (18)
4:1,3,5,11,19;6:25,
25;7:15,16;8:12,12;

TANTAROS v.
FOX NEWS

February 16, 2017

10:21;13:1,3;14:8;
36:21,25;37:1

**7**

**1**

72 (1)
  8:15
7503 (1)
  38:14

101 (3)
  23:18,20;30:22
10th (1)
  9:5
13 (3)
  31:21,21;32:3
134 (1)
  8:15
14 (1)
  7:11
15.1 (3)
  17:1,4,8
156 (1)
  14:10
157054 (1)
  2:4
18 (2)
  7:11;28:22
1991 (1)
  10:17
1993 (1)
  10:22
1st (8)
  6:22;7:4;10:8;14:1,
  12,19;26:3;31:17

**8**

88 (1)
  14:10

**2**

2003 (1)
  5:24
2008 (2)
  6:22;11:1
2016 (1)
  2:4
21st (1)
  20:4
22 (1)
  30:15
234 (1)
  4:17
2510 (1)
  28:22
2nd (9)
  4:15;8:14;11:1;
  12:25;13:1;14:21,23,
  25;15:4

**4**

460 (1)
  4:16

**5**

50 (1)
  4:1
544 (1)
  10:25