**U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANDREA K. TANTAROS,

*Plaintiff*,

v.

FOX NEWS NETWORK, LLC, FOX
CORPORATION, JOHN FINLEY,
SCOTT BROWN, SUZANNE SCOTT,
WILLIAM SHINE, THE ESTATE OF ROGER AILES.

*Defendants*.

Case No. 25-cv-01675 (VSB-VF)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WILLIAM SHINE'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………… 5

FACTUAL BACKGROUND ………………………………………………………………….. 6

A. Prior Litigation and Arbitration …………………………………………………………6

B. Shine's Motion to Dismiss Laments the Same Unavailing Argument to Overwhelm the Court with Words, not Substance………………………………………………………………7

LEGAL STANDARD…………………………………………………………………………… 7

ARGUMENT ………………………………………………………………………………….8

    A.  The Fox Parties Do Not Clear the Bar for Dismissal ………………………………… 9

    B. The Fox Parties' Res Judicata Argument Fails ……………………………………… 9

    C. Arbitration Is Not a Final Judgment or Alternative Possibility for Relief While Its Validity Is on Appeal ……………………………………………………………………………9

    D. Where Arbitration Issues Are Undecided, District Courts Must Refrain From Applying Preclusion …………………………………………………………………………… 10

.    E. The GMVA Claim Alleges Independent Statutory Torts — Arbitration and Prior Dismissals of Different Claims Do Not Extinguish Statutory Rights ……………10

    F. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act Confirms the Non-waivability of Certain Statutory Remedies ………………………… 11

    G.  Res Judicata Does Not Bar Claims Arising from Subsequent and Independent Acts…..11

    H.  The Court Cannot Compel Arbitration or Issue an Advisory Opinion on Future Claims Not Plead…………………………………………………………………………..11

    I.  An Advisory Opinion or Prospective Immunity for Future Claims or Claims Not Plead Cannot be Granted…………………………………………………………………..13

    A. The Request Violates Article III's Case-or-Controversy Requirement…………………13

    B.  Seeking a Bar on Future Claims Is Procedural Abuse and Denial of Due Process………………………………………………………………………………14

CONCLUSION ……………………………………………………………………. 15

**TABLE OF AUTHORITIES**                                                **Pages**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) …………………………………………………….6, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………………………6, 7

*St. Pierre v. Dyer*, 208 F. 3d 394, 400 (2nd Cir). ……………………………………………6

*Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334 (S.D.N.Y. 2018)…..7

*Maharaj v. Bankamerica Corp.,* 128 F.3d 94 (2d Cir. 1997) …………………………………….7

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974) ……………………………………7, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am*……………………………………………12

**Statutes**

N.Y.C. Admin. Code § 8-904 (Gender-Motivated Violence Act) ……………………4, 5, 6, 7, 8

Federal Arbitration Act, 9 U.S.C. §§ 9–13…………………………………………………..7

Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26 (2022) …………………………………………………………………….8

**Rules**

Fed. R. Civ. P. 12(b)(6) ……………………………………………………………………….6

### I.     INTRODUCTION

Plaintiff Andrea K. Tantaros respectfully opposes Defendant William Shine's ("Shine") Motion to Dismiss The Amended Complaint ("The Complaint").

The motion rests on two unsound principals—both legally and factually defective—contentions that: 1) Plaintiff's Gender Motivated Violence Act ("GMVA") and related claims against are barred by res judicata because they were "adjudicated" in arbitration, or previous litigation, or, in the alternative, "belong in arbitration", and that Plaintiffs's new claims could have been brought in arbitration and, (2) that purported surveillance claims are non-actionable or were already adjudicated. All contentions fail.

Further, Plaintiff's Amended GMVA Complaint does not plead specific claims for computer fraud or phone hacking, or claims related to same. In Shine's Motion to Dismiss, much like the Fox Parties, Defendant hallucinates claims not plead and devotes an entire portion of his Motion to Dismiss seeking improper judicial overreach in requesting blanket judicial relief barring Plaintiff from raising claims that relate to such conduct at any time in the future or until her death. Claims not plead obviously cannot be claims tied to post-employment intrusions that allege statutory causes of action and a distinct series of wrongful acts occurring after her employment ended in 2016.

The genesis of Plaintiff's Complaint and claims plead by Plaintiff are based on Fox News Network's retaliatory attack on Plaintiff for refusing to capitulate to quid pro quo sexual demands from now-fired male executives such as Defendants Roger Ailes, Scott Brown ("Brown") and John Finley ("Finley"). Plaintiff repeatedly and flatly refused to tolerate sexual misconduct in an infamously hostile workplace rife with pervasive sexual harassment, intimidation and fear. Shine, Plaintiff's then-supervisor, directly enabled these acts to occur, aided and abetted the aforementioned predators, and was negligent in his duties by both covering up Ailes, Brown and Finley's misconduct, failing to investigate it, and fostered the abusive workplace climate to thrive at Plaintiff's expense.

Shine omits in his filing he was fired and publicly forced out of Fox News Network in May of 2017 for the precise claims against him in Plaintiff's Complaint: enabling

retaliation and covering-up unlawful misconduct at the network.[1] To date, Fox News Network has paid over $200 million in settlements to women they've abused, shareholders they've duped, and government agencies (like the New York Commission on Human Rights) who charged them with sexual harassment, abuse, retaliation, hostile work environment, launching retaliatory smear campaigns on women who complained, and had them perpetually blacklisted from the industry, like Plaintiff. Twenty-first Century Fox Shareholders specifically name Shine for his role in aiding and abetting abuse, negligence and encouraging a hostile workplace.

Fox News Network has spent tens of millions more trying to clean-up their culture due to enablers like Shine, by their own admission, have cycled through thirty-seven (37) lawyers and twelve (12) law firms and contractors trying to ruin, discredit and eternally muzzle Plaintiff, and fired over two dozen predators and their lieutenants who covered their grotesque misdeeds, including Defendants Roger Ailes (now deceased), Shine, Dianne Brandi, and Scott Brown. Evidence of their cable news hellscape and sexual abuse of Plaintiff is documented in Fox News Network's own privilege log making any motion to dismiss on lack of "plausibility"—and given their public history of pattern and practice—a legal impossibility.

Further, the crux of their motion relies on res judicata arguments, however, Second Circuit precedent regarding res judicata does not bar claims that arise from later conduct or conduct based on civil claims not presented in the complaint. The motion's attempt to collapse separate causes of action, attack unpled, seek immunity from claims not plead denying due process is improper; it is lawfare, not law.

## II.   FACTUAL BACKGROUND

The following factual summary is drawn from the Amended Complaint and the contemporaneous forensic record.

### A. Prior Litigation and Arbitration

Over the past decade Plaintiff brought multiple actions and filed claims in arbitration with the American Arbitration Association that differ from claims in this action. Certain earlier claims

---

[1] "Bill Shine Ousted From Fox News in Scandal", *The New York Times,* May 1, 2017.
https://www.nytimes.com/2018/07/05/us/politics/bill-shine-white-house-communications.html#:~:text=Bill%20Shine%2C%20the%20former%20Fox%20News%20executive%20who%20was%20pushed,and%20Analysis%20About%20the%20Media

were dismissed in prior litigation for completely unrelated claims in this case—a fact both Shine and Fox News Network serially conceal—such as a claim under N.Y. CPLR 7515 regarding the new policy's application on arbitration. The arbitration and certain arbitral pronouncements remain contested and are the subject of an active appeal in the U.S. Court of Appeals for the Second Circuit challenging the arbitration's validity, enforceability, violations under the Federal Arbitration Act ("FAA") and the AAA's procedures. No court has entered a final confirming judgment that would make any arbitral decision preclusive as to the GMVA claims at issue.

### B. The Fox Parties' Motion Seeks to Overload with Verbosity Over Substance and Hollow Arguments and Overreach Over Fact and Law

On September 2, 2025, The Fox Parties filed a motion to dismiss arguing (i) res judicata based primarily on arbitration and prior dismissals unrelated to any claim in this action, and (ii) that surveillance/hacking claims fail as a matter of law and were adjudicated previously. Much of the motion is a wholly misleading and rambling screed littered with predictable and stale attacks, including various "hacking" claims that are not pleaded in the GMVA complaint and seeks to extend preclusion far beyond its legal reach.

### III.    LEGAL STANDARD

Because Shine has moved to dismiss, under FRCP this Court "[a]ccept[s] all of Plaintiff Tantaros' allegations as true and afford[s] them every favorable inference, as [it] must on a CPLR 3211 motion to dismiss." In determining whether Plaintiff has adequately pleaded her claims, courts shall construe the statute "liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

In determining res judicata, the Court must consider whether the claims in this action have been previously filed or should have been filed. With the issue of arbitration on appeal and due to changes in public policy (GMVA) Plaintiff has a statutory right to bring different claims as part of this action.

Under the liberal pleading standards that are applicable to cases brought under NYCHRL, notice pleading—a pleading that gives the defendant "fair notice" of the nature and

bases of her claims—suffices. The law further states that "exceptions to and exemptions from the provisions of this title shall be construed narrowly in order to maximize deterrence of discriminatory conduct." Id. Because Plaintiff amended her complaint to add claims under the Victims of Gender-Motivated Violence Protection Act and Shine has not moved to dismiss that claim, this memorandum of law does not address the standard for Shine's liability under the statute.

IV.    ARGUMENT

A. Shine Does Not Clear the Bar for Dismissal

A motion to dismiss under Rule 12(b)(6) tests only the legal sufficiency of the complaint; the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint survives dismissal if it alleges facts that, when accepted as true, are plausible on their face. *Id*. Where an affirmative defense, such as res judicata, appears on the face of the complaint and accompanying documents, a dismissal may be appropriate— but only if the preclusion elements are clearly satisfied on the record and the merits were previously determined. The Fox Parties have yet to face any argument on the merits of the claims of the Amended Complaint, in this forum or in arbitration and consistently rely upon procedural loopholes, subject matter jurisdiction challenges such as Plaintiff's CPLR 7515 action, concocted discovery disputes or failures in prior counsel's pleadings.
(See *St. Pierre v. Dyer,* 208 F. 3d 394, 400 (2nd Cir).

Here, the preclusion elements plainly are not satisfied and Plaintiff's claims, properly plead, meet the standard of plausibility on its face, particularly in light of Shine's well-documented public history and record of pattern and practice of aiding and abetting sexual misconduct, creating a hostile workplace that intentionally inflicted emotional distress, and negligently failed to investigate or stop the abuses during Plaintiff's tenure at the network. This is an indisputable fact by the network's own admission and rolling terminations of predators and enablers following her departure from the network, sworn testimony, the charges

levied against Fox News and its perpetrators by government agencies and findings made by their own shareholders, and evidence previously submitted in case 1:25-cv-961 from Fox News' own privilege log.

Further, the claims contained in the amended complaint are novel, not time-barred under the GMVA look-back period enacted in order for victims to bring claims dating back years, even decades, contain separate Defendants including Scott Brown and John T.A. Finley and have not been brought prior in this, or any forum, under this legal standard of review and law (GMVA).

### B. The Fox Parties' Res Judicata Argument Fails

A party invoking res judicata must show three elements: (1) a prior adjudication on the merits; (2) identity of parties or their privies; and (3) that the later claim was (or potentially could have been) raised in the prior action. *Monahan*, 214 F.3d at 285. The Fox Parties' principal contention — that arbitration and prior dismissals bar Plaintiff's GMVA rights — collapses on the first element.

GMVA rights remain enforceable regardless of prior proceedings. The GMVA confers an independent statutory cause of action for gender-motivated violence. Such rights cannot be waived or extinguished through arbitration or by stretching the doctrine of res judicata beyond recognition. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974).

### C. Arbitration is Not a Final Judgment While Its Validity is On Appeal

Under the FAA, only a confirmed arbitral award produces the federal procedural posture that would support preclusion via confirmation. See 9 U.S.C. §§ 9-13. In the absence of a confirmed judgment, an arbitral pronouncement or contested, provisional "award" cannot be treated as a final adjudication on the merits for preclusion purposes. See, e.g., *Lobban v. Cromwell Towers Apartments, Ltd. P'ship,* 345 F. Supp. 3d 334, 341 (S.D.N.Y. 2018) (courts may consider arbitration awards when appropriate, but preclusion requires finality and judicial disposition). The ongoing and current arbitration is the subject of an active Second Circuit appeal; accordingly, it cannot be the basis for res judicata.

### D. Where Arbitration Issues are Undecided, District Courts Must Refrain From Applying Preclusion

The Second Circuit's approach is careful to avoid prematurely treating contested arbitral determinations as preclusive. Allowing otherwise would deprive litigants of the statutory confirmation/vacatur processes and of appellate review. Because the arbitration has not been finally confirmed, and because its validity is being litigated before the Second Circuit, Shine cannot rely on it to extinguish Plaintiff's GMVA claims.

### E. The GMVA Claim Alleges Independent Statutory Torts — Arbitration and Prior Dismissals Do Not Extinguish Statutory Rights

Res judicata cannot extend to later or distinct claims. The Second Circuit has made clear that "[c]laims arising subsequent to a prior action are not barred by res judicata even if they are premised on facts representing a continuation of the same course of conduct." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). GMVA claims, specifically claims against Shine for negligence, intentional infliction of emotional distress, and aiding and abetting stand on separate statutory footing and involve distinct rights that either were not, or could not have been litigated before.

Statutory rights survive arbitration where Congress or the statute contemplates independent remedies. The Supreme Court has long held that arbitration does not preclude statutory rights; arbitration cannot be read to foreclose independent statutory remedies unless Congress clearly intended waiver. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974).

Even if Defendant Shine and the Fox Parties' arguments were credited, res judicata has no application here. The GMVA is a statutory civil remedy under New York law designed to address gender-motivated violence; it is an independent legislative remedy and cannot be nullified by an employment contract's arbitration clause where the statute provides a private right of action. GMVA's focus on safety, deterrence, and public protection distinguishes it from contractual disputes. Plaintiff's GMVA claim addresses public-facing harms, ongoing risk, and conduct beyond the well-beyond the employment contract's compass. Courts distinguish such statutory torts from employment contract disputes and resist equating the two for preclusion purposes.

### F. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act Confirms the Inability to Waive Certain Statutory Remedies

Congress in 2022 limited the enforceability of forced arbitration for sexual assault and sexual harassment claims. That statutory context confirms that statutory remedies are not to be lightly extinguished by private agreements or by tacit conversion of non-final arbitral materials into preclusive judgments of new claims and (or) parties.

### G. Res Judicata Does Not Bar Claims Arising from Subsequent and Independent Acts

Defendant Shine fundamentally misapplies the doctrine of claim preclusion (res judicata) by attempting to bar claims that were not only absent from the prior arbitration, but could not be brought prior to New York's enactment of the GVMA, such as sexual misconduct, harassment, retaliation, intentional infliction of emotional distress and abuse by Finley.

The doctrine of res judicata operates only to bar claims that arose from the same transaction or occurrence that was the subject of the prior litigation and existed at the time of that proceeding. Claims based on the defendant's subsequent tortious conduct—including alleged aiding and abetting or negligence occurring after the conclusion of the arbitration—are, by definition, new and distinct causes of action.

Courts have uniformly held that a final judgment does not bar claims based on acts that take place after the judgment. The defendant's position is an unprecedented attempt to secure blanket immunity for all future misconduct against the Plaintiff, an outcome entirely unsupported by and contrary to fundamental principles of law. The claims pleaded here are based on entirely different facts, resulting in entirely different injuries, and are therefore not precluded.

### H. The Court Cannot Compel Arbitration or Issue an Advisory Opinion on Future Claims Not Plead

Both Defendant Shine's, and the Fox Parties, request that the Court bar any future claims the Plaintiff may raise is procedurally improper, unsupported by the Federal Arbitration Act (FAA), and violates the constitutional mandate against advisory opinions.

First, the duty to arbitrate is a matter of contract, not a perpetual mandate for future disputes. Both Shine and the Fox Parties cannot show that the original arbitration agreement covers every possible future tort or wrong, which the current claims represent.

Second, the Court is constitutionally prohibited from deciding issues that do not constitute a live "Case or Controversy" under Article III of the U.S. Constitution. The Court cannot rule on the hypothetical enforceability of claims that the Plaintiff has not yet pleaded, or which have not yet occurred. The defendant is improperly seeking an advisory opinion to preemptively immunize itself from any subsequent liability. A preemptive request for an unlawful, sweeping prohibition is impermissible and extinguishes Plaintiff's due process rights.

Shine and the Fox Parties' demand for "perpetual arbitration," is unsupported by the Federal Arbitration Act (FAA) and contract law. More specifically, Defendant Shine improperly insists Plaintiff must submit all claims, from now until death, to arbitration.

The scope of Arbitration is contractual, not perpetual. The duty to arbitrate is a matter of contract, not a matter of general federal law. Because the validity and enforceability of the underlying arbitration are currently pending review in the Court of Appeals for Second Circuit (Case 25-1980). This Court must refrain from interfering with the appellate court's jurisdiction by ruling on the scope or applicability of that award to a new matter.

Defendant Shine, like the Fox Parties, ignores the court must wait for a ruling on validity. Equally as important, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (See *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). The defendant must specify, then prove the contract covers these specific, new, and unrelated claims, which he has failed to do.

Further, the Fox Parties and Shine asks this Court to issue an unlawful advisory opinion granting them blanket immunity from future misconduct. Res judicata does not bar

claims based on subsequent, independent acts, and the scope of any arbitration agreement is limited to the specific contract, not a permanent prohibition on filing lawsuits. This Court should deny the defendant's motion to the extent it seeks to restrict Plaintiff's access to the courts for unpleaded, future claims.

### I. An Advisory Opinion or Prospective Immunity for Future Claims or Claims Not Plead Cannot be Granted

The Fox Parties request is echoed by Shine: that the Court bar any future claims the Plaintiff might raise—including those based on subsequent acts of negligence, hacking, or misconduct—is a procedurally defective attempt to secure an unlawful advisory opinion and an unprecedented grant of perpetual immunity, prospectively snuffing out Plaintiff's due process rights. Such an act is not only unlawful but places this Court in an extremely dangerous judicial position.

**A. The Request Violates Article III's Case-or-Controversy Requirement**

The jurisdiction of a U.S. Federal Court is limited by Article III of the Constitution to actual Cases and Controversies. The Court lacks jurisdiction to decide hypothetical questions or issue rulings that do not resolve a live dispute between the parties.

Shine, like Fox News Network, is asking the Court to utilize the rare skill of clairvoyance to rule on the theoretical enforceability of claims that the Plaintiff has not yet pleaded, and whose underlying facts may not yet have fully developed. This is the definition of an advisory opinion, which courts are constitutionally forbidden to render.

The Court cannot, as a matter of law, rule that future tortious acts are barred by res judicata or any other defense. Claim preclusion does not bar future harms. The proper time to raise the defense of res judicata is after a new complaint is filed, not as a speculative motion in the present case.

Shine's position is akin to the Fox Parties request that would amount to granting

13

them unilateral, perpetual immunity from all future civil liability, essentially giving them a license to engage in tortious or illegal conduct against Plaintiff forever. The law permits no such grant of immunity. The defendant's current demand to pre-bar future claims is procedurally premature and improper. A new injury, or an injury resulting from a continuing or subsequent act of the defendant, gives rise to a new and distinct cause of action that is not precluded.

**B. Seeking a Bar on Future Claims Is Procedural Abuse and Denial of Due Process**

The defendant's motion, like the Fox Parties, to the extent it seeks to restrict the Plaintiff's future ability to seek redress for new injuries, amounts to an improper attempt to secure unilateral, perpetual immunity from civil liability. No legal authority permits a defendant to obtain a blanket prohibition on a plaintiff's right to seek justice for injuries resulting from subsequent and independent acts. Granting this request would effectively give the defendant a license to engage in ongoing misconduct against the Plaintiff without legal recourse.

The Court's power extends only to the claims properly pleaded in the Complaint and, where appropriate, the Counterclaim. The Court should deny the defendant's motion entirely with respect to any unpleaded, future claims, ruling that the matter is not justiciable. The question of whether any future claim is subject to a defense (like res judicata or arbitration) must be addressed only when that claim is properly brought before a court.

Plaintiff files this Reply in Opposition solely to challenge Defendant's Motion to Dismiss specific claims stated and plead in the present action. Plaintiff expressly reserves all substantive defenses and objections, and does not intend, by this filing, to confer or submit to the Court's jurisdiction over any future claims against Defendants or claims not yet plead.

## V.    CONCLUSION

The motion's broad sweep reflects strategic litigation: smear the plaintiff, preempt future suits by labeling them "already litigated," request blanket immunity for claims not plead in this action to thereby chill meritorious discovery. The Court should steer clear of these extrajudicial tactics.

For the foregoing reasons Plaintiff respectfully requests that the Court strike all language from the Defendant's Motion and Answer that purports to impose a blanket bar on unplead, future causes of action not currently before this Court. Such language is immaterial and impertinent, constitutes an improper attempt to secure an advisory opinion in violation of Article III of the Constitution, and represents a clear abuse of process by seeking to grant the Defendant perpetual immunity for subsequent misconduct. To preserve the integrity of the record and prevent undue future prejudice to the Plaintiff, this Court must remove the defendant's improper request for a prospective prohibition on claims that have not been, and in some cases cannot yet be, filed.

Respectfully, for the aforementioned reasons outlined in Plaintiff's Reply in Opposition, Shine's (and the Fox Parties) Motion to Dismiss the Complaint should be DENIED in its entirety. In the alternative, the Court should GRANT Plaintiff leave to amend, advance Plaintiff's claims and permit discovery to move forward.

Dated: October 1, 2025
Respectfully submitted,
 /s/ Andrea K. Tantaros
Andrea K. Tantaros, *Plaintiff*