**U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANDREA K. TANTAROS,

                                      Case No. 25-cv-01675 (VSB-VF)

*Plaintiff,*

v.

FOX NEWS NETWORK, LLC, FOX
CORPORATION, JOHN FINLEY,
SCOTT BROWN, SUZANNE SCOTT,
WILLIAM SHINE, THE ESTATE OF ROGER AILES.

*Defendants.*
_____


**<u>REPLY TO FOX NEWS NETWORK, LLC, IRENA BRIGANTI, SUZANNE
SCOTT, DIANNE BRANDI'S OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE AND DISMISS COUNTERCLAIM PETITION FOR ARBITRATION
AWARD</u>**

**INTRODUCTION**

The Fox Parties opposition fails on every level—factually, procedurally, and jurisdictionally. It attempts to weaponize the Federal Arbitration Act ("FAA") in precisely the manner the statute forbids: to bootstrap a void, ultra vires *interim* arbitral pronouncement into an unrelated statutory tort case, while the threshold issue of arbitrability remains before the Second Circuit perverting legal process and procedure. The result is a procedural inversion so backwards that it collapses under the weight of its own contradictions and proffers a pants-on-head incredulity that must be rejected outright on all counts.

Defendants' so-called "Counterclaim Petition to Confirm" is a blatantly improper pleading that bears the hallmarks for justification to strike under Ruke 12(f) and additionally, grounds for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) as "the Court must dismiss or disregard filings made without jurisdiction, regardless of form".

The Fox Parties' Counterclaim Petition ("the Petition") is entirely "immaterial" and "impertinent and has absolutely no bearing on the matter before this Court, therefore it must be denied in its entirety. Further, dismissal must be granted as the "interim award" The Fox Parties are seeking to affirm via the improper Petition injected into a case involving statutory torts under the Gender Motivated Violence Act ("GMVA")—not arbitration—is wholly devoid of jurisdiction.

Section 9 of the FAA provides a *self-contained, stand-alone proceeding* for confirmation of an arbitral award. It does not authorize parties to smuggle a § 9 petition into an entirely separate case asserting independent statutory claims, let alone as a

counterclaim against different parties under the Gender-Motivated Violence Act. No rule of civil procedure permits the joinder of a purported interim Petition governed by the Federal Arbitration Act ("FAA") confirmation petition into an entirely unrelated action. The "interim award" is not only ultra vires, but also procedurally defective on its face.

Even if the petition were properly before this Court, which it is not, the "interim award" Defendants seek to confirm is void ab initio. As of February 3, 2025, the issue of arbitrability, the validity of the arbitration clause, and the arbitrators' conduct were squarely before a federal court (See Case No. 1:25-cv-961, Nos. EFC 6-30, *emphasis added*). Once that court was seized of the aforementioned issues, the arbitral panel was divested of the authority to proceed. The arbitrators' issuance of an "interim" order on February 7, 2025 despite having full knowledge of the federal case and its lack of authority was therefore without jurisdiction and rendered a legal nullity. A void award cannot trigger the three-month limitations period under 9 U.S.C. § 12, nor can it be confirmed under § 9. The issue of arbitrability, enforceability and violations of the FAA by arbitrators and the American Arbitration Association ("AAA"), (ie: *all* aspects of the arbitration), are currently on appeal in the United States Second Circuit further stripping both the AAA and this court over entertaining any over its control over the arbitration.

The Fox Parties invocation of the FAA's confirmation deadline turns the statute on its head. Section 9 allows confirmation of a valid, final award "within one year after the award is made." But the arbitrators issued no final award, and are non-capable of confirmation under law (the arbitration is currently stayed indefinitely preventing any final decision or award following a Motion filed by the Fox Parties in late August of 2025 and granted by the arbitrators on September 30, 2025. At the same time, the three-month window to move for vacatur under § 12 presupposes a valid, *delivered* award. Because the February 7, 2025 ultra vires "interim award" was issued without jurisdiction, the statutory clock has not begun to run at all. To suggest otherwise is to pretend that a void act confers validity upon itself—a proposition foreign to both law and logic.

The Fox Parties and William Shine's warped conduct—having argued in March of 2025 in this forum that the arbitration must proceed to finality, only to pivot months later and, following the August 14, 2025 Notice of Appeal and current Second Circuit jurisdiction, beg the arbitrators to halt the arbitration mid-stream to confirm an interim order—epitomizes the very inconsistency the doctrine of judicial estoppel exists to prevent. The Fox Parties procedural misdeeds, maneuvering and misuse of the judicial process by overt forum manipulation and twisting settled FAA rules to procure a void, ultra vires immaterial outcome through procedurally abusive and impermissible tactics must be struck and dismissed. The Court is prohibited from entertaining, let alone granting, obvious violations of settled law and rules for one party seeking to shatter and subvert settled legal and judicial precedent for their own gain.

At every turn, The Fox Parties' opposition fails. Even worse, they don't even attempt to proffer any arguments to support their hollow claims that Plaintiff has not met the standard other than a recitation of the statute. The Fox Parties' opposition is legally incoherent, rife with declarations but absent any actual substantive opposition, jurisdictionally barred and fatally defective. The Court should strike the Counterclaim Petition in its entirety, dismiss the Petition under Rule 12(b), and reaffirm that neither this Court nor any arbitrator may act while issues of arbitrability remain pending before the Second Circuit.

## I.    LEGAL STANDARD

Simply reciting federal statues is not enough to defeat a Motion to Strike and Dismiss a Counterclaim Petition. The Fox Parties spend pages rambling that "The Second Circuit long ago explained that "[i]n deciding whether to strike a Rule 12(f) motion on the ground

that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible'. 'Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute.'" *Dubai Equine Hosp. v. Equine Imaging, LLC*, No. 18-CV-6925 (VSB), 2019 WL 3811922, at *2 (S.D.N.Y. Aug. 14, 2019) (Broderick, J.) (citations omitted).

Absent from citing federal statutes is any argument that the Petition is, by definition, a pleading that is "immaterial" and "impertinent" to the allegation(s) before this Court, and is the hallmark of a pleading that has no bearing on the issues in dispute, including myriad statutory torts regarding non-arbitration related claims under the GMVA. The case law cited by The Fox Parties in *Dubai* and *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976) are anathema to their argument that Plaintiff Tantaros cannot, or does not try, to meet this standard. Rather, the case law cited further bolsters Plaintiff's Motion to Strike and Dismiss and, oddly, makes her case for her.

Plaintiff Tantaros has demonstrated the Fox Parties have offered no evidence in support of the Petition's admissibility, 2) Plaintiff has clearly demonstrated that the allegations in the Petition have no bearing on the issues in the GMVA case (and the Petition and claims therein lack jurisdiction rendering it invalid) and (3) neither the AAA or arbitrators had jurisdiction, making "non-final, interim award" ultra vires and void ab initio. The Court cannot reconcile the mere consideration of the Fox Parties impermissible, unprecedented injection of an ultra vires "interim award" manipulated in the form of a counterclaim petition, into a separate case with no bearing on the arbitration currently on appeal regarding, inter alia, arbitrability enforcement, or the issues in dispute in this case, in violation of the FAA would *not* result in prejudice to the movant. Not striking and dismissing such a twisted procedural impropriety is not only highly prejudicial to Plaintiff, it is a violation of due process in the form of abuse of process by

the Fox Parties that makes a mockery of Federal Procedure, the FAA and well-settled precedent. *Id.*

## II.    LEGAL ARGUMENT

1.  *The Fox Parties Cannot Overcome a Threshold Jurisdictional Defect With An Interim Ultra Vires Award*

Once a federal court is seized of a petition challenging arbitrability, the arbitral panel is divested of authority to proceed until the federal court (or appellate court) resolves the issue. The Fox Parties purposefully misconstrue Plaintiff's reference to *McCreary Tire & Rubber Co. v. CEAT S.p.A.* as it clearly states an arbitration may not proceed where arbitrability is under judicial consideration. The panel's subsequent issuance of an "interim order" after February 7, 2025 was therefore a nullity—and issued without jurisdiction.

The Fox Parties and William Shine Fox seek confirmation of an "award" issued after the Petition for Emergency TRO and injunction was filed (February 3, 2025) and before any judicial determination of the TRO's stay request. (Notably, The Fox Parties made no effort to file any Petition to file a counterclaim petition during the seven (7) months case 1:25-cv-961 regarding arbitrability and enforceability Under 9 U.S.C. § 10(a)(4) and long-settled precedent was pending.

An arbitrator exceeds authority by acting once judicial jurisdiction has attached. The AAA panel was formally on notice via Petitioner's TRO and cease-and-desist correspondence (February 5, February 10, and February 28, 2025). Any "award" rendered thereafter is void ab initio—not merely voidable—and therefore non-confirmable under § 9, and constitutes further violations of 9 U.S.C. § 10(a)(2-4).  Confirmation is only available for a final award; this was explicitly an "interim" award (AAA Edelman Order, February 7, 2025) issued without a final decision and

award. The FAA does not permit confirmation of interim or partial awards absent the parties' express stipulation, which never occurred.

The filing of the TRO/injunction Petition on February 3, 2025 challenging the validity and enforceability of the arbitration clause, enforceability due to multiplying breaches to Plaintiff's arbitration clause and ongoing FAA violations *immediately* transferred the issue of arbitrability and the arbitration's continued existence into the hands and jurisdiction of a federal court. Once a matter is seized by the federal judiciary, the arbitrators are divested of jurisdiction over that issue and related proceedings to the extent they are challenged, especially matters going to the continuing validity of the process itself.

The Fox Parties' Opposition Reply incorrectly posits that only a granted injunction divests authority. The act of filing a petition seeking to vacate under 9 U.S.C. § 10 and challenging the arbitration's fundamental validity and enforceability brings the matter under the exclusive jurisdiction of the federal court for those questions. The arbitrators' decision to carry-on (absent any written decision why—a violation of Plaintiff's already invalid arbitration clause) and issue an interim award four days later (February 7) was done in conscious disregard of the court's seizure of the matter, making the resulting award ultra vires and exceeding their legal power post-February 3, a violation of 9 U.S.C. § 10.

This underscores compounding FAA violations by a panel already lacking authority and rife with misconduct and bias. Plaintiff's injunction sought to challenge arbitrability based on evidence of FAA violations (9 U.S.C. § 10 including bias, exceeding authority, misconduct, failure to hear evidence, unconscionability, and on and on). Arbitrability challenges are matters for the Court, and the arbitrators' decision to proceed while the Court was actively considering the validity of the process itself demonstrates exceeding authority (9 U.S.C. § 10(a)(4)). The arbitrators decision to

continue to proceed in issuing orders (such as a recent stay) ignores the reality the case is still under the jurisdiction of the Second Circuit Court of Appeals.

The Court lacks subject-matter jurisdiction to entertain any confirmation of an interim arbitration award while arbitrability and the arbitration's validity are pending before the Second Circuit under the divestiture rule recognized in *Coinbase, Inc. v. Bielski,* 599 U.S. 736 (2023). The Petition is procedurally improper and immaterial to this action—it was smuggled into a case concerning an entirely different statute (the GMVA) and different parties, in violation of Fed. R. Civ. P. 13 and 12(b)(1), (6), and (f). The purported award Defendants seek to confirm is non-final, ultra vires, and void under the FAA because the arbitrators lost authority as of February 3, 2025, when the federal court was seized of the matter. Thus, no award within the meaning of 9 U.S.C. § 9 exists.

2.    *The Fox Parties Improper Use of Rule 12(f) Framing Fails*

The Fox's Parties' entire brief rests on the premise that Plaintiff's Motion to Strike is a Rule 12(f) motion. The filing was captioned as a motion to strike and clarify jurisdictional boundaries—functionally an objection to subject-matter jurisdiction and procedural abuse, not a Rule 12(f) pleading motion. Courts applying Fed. R. Civ. P. 12(b)(1) and 12(h)(3) must dismiss or disregard filings made without jurisdiction, regardless of form. Thus, whether or not 12(f) formally applies, the Court must first resolve jurisdiction (ultra vires issuance) first.

The confirmation of the award is immaterial, impertinent and unrelated to the core dispute in the GMVA case now before this Court. This case has different elements of proof, different defendants and entirely different statutes that are uninvolved with the arbitration. This is not simply an improper venue or misjoinder issue; it is an effort to inject an entirely separate matter (which should have its own separate civil case number, but only if final and jurisdiction was appropriate) into an unrelated statutory tort action, thereby prejudicing Plaintiff Tantaros by unnecessarily distracting the Court and deliberately conflating two distinct legal matters.

The Court is permitted to treat a labeled motion under Fed. 12(f) as one that achieves the same purpose under the correct rule. A motion to strike the counterclaim petition can be construed as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted or a Rule 12(c) motion for judgment on the pleadings (since a reply has been filed). The core of Plaintiff's argument is that the Counterclaim Petition is legally invalid because the arbitrators lacked jurisdiction post-February 3, 2025, and the confirmation is barred by the pending appeal. These are pure legal deficiencies appropriately addressed under 12(b)(6) or 12(c), not just 12(f)'s immaterial or impertinent standard.

Addressing immateriality in the context of the GMVA case even under a strict 12(f) standard, the counterclaim is immaterial because the GMVA action and the arbitration claims are distinct. The GMVA case concerns statutory tort claims against different defendants than those in the arbitration. The Petition to Confirm an ultra vires arbitration award that settles other claims is irrelevant to the merits of the GMVA claims. Plaintiff Tantaros has sufficiently argued the confirmation of the specific arbitration award is immaterial to the GMVA claims before the Court; that is self-evident. The only reason the counterclaim is in this case is because the defendants smuggled it into an unrelated action, demonstrating its lack of relationship to the core issues in the current GMVA dispute.

### 3.  The Fox Parties' FAA Timing and "Award" Status Is Fatally Flawed

Section 9 allows confirmation within one year after an award is made, but only where the award is valid. The award here was not made in the FAA sense—it was rendered after jurisdictional divestiture, denominated interim or preliminary, and non-final as to multiple parties including the Ailes Estate and William Shine. Because Petitioner's February 3, 2025 TRO and injunction petition was filed first, Fox's counter-petition is procedurally barred by first-filed priority and by the appellate divestiture rule.

4. *The Pending Second Circuit Appeal Divests Both the AAA and the Court from Jurisdiction*

The Fox Parties falsely assert that the appeal has no effect. However, *Coinbase* confirms that an appeal of an order intertwined with the same subject matter divests the district court of authority to alter that matter's status. The Second Circuit now holds the question of arbitrator authority; this Court cannot simultaneously confirm an interim, ultra vires award arising from the same arbitration. Any order of confirmation now would be jurisdictionally void and reversible.

The appeal in Case 1:25-cv-961 ("The Arbitration Enforceability and FAA Violation Case") concerns the arbitrability and validity of the arbitration process itself, specifically the denial of the motion to enjoin based on the alleged compounding FAA violations (bias and misconduct under § 10). A Second Circuit decision on that appeal could directly nullify the entire arbitration process, including the February 7, 2025 award.

The Fox Parties' Opposition attempt to rebut Plaintiff falls on its face. It purposefully and narrowly mischaracterizes and seeks to obscure the legal issues on appeal, previously before this very same Court. The Supreme Court's *Coinbase* decision affirmed that the filing of an interlocutory appeal of an order denying relief on arbitrability automatically divests the district court of jurisdiction to proceed until the appeal is resolved, as the issue of whether the case should be in federal court at all is on appeal.

The District Court should strike and dismiss the counterclaim petition with prejudice because the validity of the underlying , but currently stated, non-final arbitration, which is the sole basis for the counterclaim, is actively being litigated on appeal. Confirming the award now would create a risk of this Court willingly creating inconsistent rulings and grossly violating the higher court's authority over the matter.

5. *The Fox Parties' Counter-Arguments Regarding the Appellate Divestiture Principle and Stay Fail*

The Reply in Opposition of the Fox Parties' Opposition argues appellate divestiture is irrelevant because Plaintiff appealed the denial of an injunction, not arbitrability. This is wholly false. The matter of enforceability and validity regarding Plaintiff's clause is the crux of her appeal, simultaneous to arbitrator and defendant breaches to the arbitration clause and compounding arbitrator and AAA violations of the FAA including exceeding authority, bias, and misconduct.

The Fox Parties mischaracterize the law, yet again. The principle established and reaffirmed by the Supreme Court in *Coinbase* is that a district court is divested of jurisdiction over any issue that is the subject of a pending appeal. Here, the issue on appeal in the Arbitration Enforceability and FAA Violation Case is *precisely* the validity and enforceability of the arbitration agreement and the authority of the arbitral panel—the same core issue Defendants now ask this Court to resolve by confirming an award issued by that same unauthorized panel.

As this Court, and The Fox Parties and William Shine, is well-aware, the current appeal concerns the arbitrability and validity of the arbitration process itself, specifically the denial of the motion to enjoin based on the alleged compounding FAA violations (bias, exceeding authority and misconduct under § 10). A Second Circuit decision on that appeal could directly nullify the entire arbitration process, including the February 7, 2025 award.

The Fox Parties mislead the Court on the genesis of the appeal. The Second Circuit is considering the District Court's arbitrability determination—i.e., whether the arbitration should have been enjoined due to, inter alia, Plaintiff's lack of a valid enforceable arbitration agreement. The Supreme Court's *Coinbase* decision affirmed that the filing of an interlocutory appeal of an order denying relief on arbitrability

automatically divests the District Court of jurisdiction to proceed until the appeal is resolved, as the issue of whether the case should be in federal court at all is on appeal.

6. *The Fox Parties Fail on the Claim Plaintiff Missed the Three-Month Deadline to Vacate*

Plaintiff Tantaros did not miss any three-month window to move to vacate, because no valid award existed to trigger § 12's limitations period. The purported ultra vires interim award Defendants rely on was issued on February 7, 2025 after jurisdiction over arbitrability had vested in the federal district court as of February 3, 2025. Once the issue of arbitrability was before that Court, the arbitrator was divested of authority to proceed. The subsequent appeal to the Second Circuit further removed the matter from the arbitrator's jurisdiction. An award rendered without jurisdiction is void ab initio and cannot constitute a filed or delivered award under 9 U.S.C. § 12. Consequently, the statutory three-month period to seek vacatur has not begun to run, and any purported confirmation of such an interim, void award is procedurally and jurisdictionally improper.

7. *The Fox Parties Are Openly Engaging in Forum Manipulation*

The Fox Parties are attempting a strategy of tactical impropriety the Court must reject. They deliberately did not file a confirmation petition in the arbitration case already before this Court. Instead, they argued against Plaintiff's supposed "dilatory" tactics and urged the Court "to allow the arbitration to move forward to its final conclusion".

The Fox Parties then advocated for the GMVA action to be accepted as related, saw it was assigned to a different docket, and inserted a sealed Counterclaim Petition to confirm the same ultra vires interim award in a unrelated case. Courts have an independent obligation to prevent forum manipulation and duplicative litigation, and the rule against duplicative litigation stems from concerns for judicial economy and avoiding conflicting judgments. By introducing the petition to confirm into an unrelated case,

Defendants attempted to bypass the normal FAA filing procedure, risked inconsistent rulings with the pending Second Circuit appeal, and undermined judicial integrity by creating a shadow proceeding before the same judge on appeal. That maneuver is classic forum manipulation and abuse of process—which federal courts must reject.

8. *The "Interim" Nature of the Award Makes Confirmation Improper*

The FAA, 9 U.S.C. § 9, authorizes confirmation only of final awards—those that resolve all the issues submitted to arbitration. An ultra vires, interim or partial order is not confirmable absent express consent of both parties. Here, the arbitration remains pending, and Defendants themselves have sought a stay of the arbitration mid-stream—a concession that the proceeding is not final. Accordingly, no final award exists for this Court to confirm, and no jurisdiction to consider an ultra vires interim award. The AAA tribunal exceeded its authority in further violation of the FAA when it purported to issue a partial order during a jurisdictional divestiture period, rendering the interim order ultra vires and void ab initio.

9. *The Fox Parties Disregard the FAA's Exclusive Mode of Confirmation*

Courts have repeatedly described the FAA's confirmation procedure as a summary proceeding that exists outside the context of other litigation, and the statutory sections provide the exclusive regime for the review of arbitration awards. An application for confirmation of a final award under FAA rules is not a continuation of the prior arbitration; it is a new action with its own procedural rules. These authorities make clear that the FAA provides a specific, exclusive method for seeking confirmation—and nothing in the Federal Rules authorizes piggybacking an immaterial ultra vires Petition onto an unrelated federal case, with no evidence and having no bearing on the issue in dispute. Such a procedure would deeply prejudice Plaintiff Tantaros and denigrate due process.

*10.. The Fox Parties' Counterclaim Petition Is Jurisdictionally Prohibited*

When a party tries to inject a § 9 petition into an unrelated case, the Court lacks jurisdiction over the counterclaim, since FAA petitions require an independent jurisdictional basis. Further, the adverse party is deprived of the procedural protections the FAA mandates (proper service of a sealed, ultra vires Counterclaim Petition which was absent and ineffective here by both The Fox Parties and William Shine, and an opportunity to oppose in a separate action). Such a request places the Court in dangerous, unprecedented, and impossible circumstances, as it creates confusion, untenable procedural chaos, and risk of inconsistent rulings, especially where arbitrability or related issues are already pending before another court or on appeal.

Courts regularly treat such maneuvers as procedurally void, struck and subject to dismissal. The FAA provides a self-contained, exclusive procedure for confirming or vacating arbitration awards, which must be initiated through a separate petition filed under 9 U.S.C. § 9 in the proper district. No provision of the FAA or the Federal Rules of Civil Procedure authorizes a party to inject a § 9 confirmation petition as an ultra vires counterclaim into an unrelated civil action involving different claims or parties. Doing so is procedurally improper, jurisdictionally defective, and inconsistent with the FAA's exclusive framework for judicial review of arbitration awards.

*11. The Fox Parties Fail to Adhere to the Rules Applying to Joinder*

The Fox Parties and William Shine have attempted to insert a § 9 petition to confirm an arbitration award as a counterclaim in Plaintiff Tantaros' Gender-Motivated Violence Act case and are actively forcing the Court to adjudicate two completely unrelated controversies in a single proceeding in bad faith.

That is where they violated the rules of proper joinder. Rule 18(a) allows a party to join multiple claims only if it has a right to assert them against the same opposing party in the same capacity. Even if Defendants claimed they were joining new issues or parties,

14

Rule 20(a) requires that the right to relief arise out of the same transaction or occurrence, and that there be a question of law or fact common to *all* defendants. That is not the case and The Fox Parties and William Shine knows it.

Improper joinder of issues destroys procedural coherence. The Court cannot apply the FAA's summary standards inside a GMVA case involving statutory torts. It displays The Fox Parties' manifest jurisdictional disregard for the law and intent on inciting confusion. The FAA does not supply subject-matter jurisdiction, so the ultra vires interim award and Petition has no independent footing. It prejudices the Plaintiff because it forces litigation of an unrelated dispute under compressed or opaque timelines. Further, The Fox Parties' filing violates due process. Plaintiff Tantaros cannot be forced to defend an ultra vires Petition under different and inapplicable procedural rules inside a wholly separate case that has no bearing on the case in dispute.

Federal courts often dismiss or sever improperly joined claims under Rules 12(b)(1), 12(b)(6), 20(b), and 21. Unrelated claims against different defendants belong in different suits to prevent confusion and avoid circumventing the rules of joinder. Defendants' counterclaim to confirm an ultra vires arbitration award is additionally procedurally defective because it fails the fundamental requirement of joinder of issues under Fed. Rules 13 and 18. The Gender-Motivated Violence Act claims and the petition to confirm an interim arbitration award arise from entirely separate transactions, involve different facts, legal standards, and procedural frameworks, and share no common questions of law or fact.

Improper permissive joinder under Rule 20 is also present. The defendants are attempting to join the claims and parties from the arbitration into the GMVA case. This is improper because the claims do not meet the standard for permissive joinder. The counter-argument is straightforward: these are not the same transactions, and there is no common question of law or fact. The arbitration claims stem from contract and employment law and occurred over a different time period and context than the GMVA

claims, which arise from a specific statutory tort. They are not the same transaction. The GMVA claims focus on gender-motivated violence and the specific motivation of the defendants named in that suit, while the confirmation petition focuses on whether the arbitrators committed misconduct or exceeded their authority under the FAA. The legal and factual questions are entirely distinct. Since the confirmation petition and the GMVA claims involve different underlying conduct and different legal tests, the counterclaim constitutes an improper joinder of claims and parties even under Rule 20's liberal standard, further supporting the argument that it is immaterial and impertinent under Rule 12(f) *and* subject to dismissal under Rule 12(b)(6). Courts routinely reject these hybrid, unrelated cases be seeing the tactics for exactly what they are: manipulation, misleading of the Court and deliberate abuse of process.

12. *The Fox Parties Abuse Rule 13(a) in Purposely Attempting to Smuggle a Defective Counterclaim Petition*

Fed. Rule 13 is clear: compulsory counterclaims must arise out of the same transaction or occurrence as the plaintiff's claim. Defendants' § 9 counterclaim fails, as it does not arise from the same transaction or occurrence. The GMVA action concerns gender-motivated abuse, not the arbitration. The FAA does not itself confer jurisdiction, so there is no independent basis to traffic the Petition into this case. Improper joinder of issues under Rule 13 means the Petition must be dismissed and struck in its entirety.

13. *The Fox Parties' Counterclaim Is Procedurally Improper and Immaterial to the GMVA Action*

Rule 13 and 12(f) is clear that the Petition is not cognizable. Defendants argue Rule 12(f) cannot strike a counterclaim. This is incorrect. Courts routinely strike or dismiss improper counterclaims under Rules 12(b)(1), 12(b)(6), or 12(f) where they are unrelated to the subject matter of the complaint or introduced for harassment or confusion.

A. The GMVA action currently before this Court is a statutory tort unrelated to any contract or arbitration clause. Defendants' ultra vires interim award cloaked in a Petition to confirm an arbitration award in case regarding the GMVA and related claims has no transactional nexus to the GMVA claims and is thus non-compulsory, immaterial, and impermissibly joined.

B. Smuggling the petition into a different case circumvents jurisdictional safeguards. Defendants could have filed a stand-alone petition to confirm under 9 U.S.C. § 9 in the same docket as the underlying arbitration, but instead they attempted to insert a sealed Petition with an ultra vires award into an unrelated gender-violence action. That maneuver constitutes forum manipulation and an abuse of process. Courts in this Circuit reject such efforts to bootstrap jurisdiction via unrelated counterclaims.

*14. Defendants' Own Conduct Confirms the Panel's Lack of Authority*

The Fox Parties argued before this Court in their March 16, 2025 Opposition filing in case 1:25-cv-961 (S.D.N.Y.) that any motion to stay or enjoin arbitration was premature. They then reversed course days after the Court's decision and order on August 8, 2025 by urging the tribunal to stay the arbitration midstream so they could confirm an ultra vires interim award. Not only did the arbitrators lack jurisdiction to grant such a stay, the Fox Parties failed to meet the four-prong test to satisfy a stay under *Nken v. Holder*.

Despite these facts, the Panel granted the stay with another ultra vires order that further violates the FAA under 9 USC § 10 and underscores arbitrator misconduct. The Fox Parties procedural abuse triggers judicial estoppel: having prevailed on one position: that arbitration should proceed to finality, they cannot now take the opposite position in another forum, especially one devoid of jurisdiction. The Petition is the hallmark of "scandalous" conduct warranting both striking the petition and dismissing it in its entirety from a separate case.

*15. GMVA Claims Are Statutory and Non-Arbitrable*

The GMVA (N.Y.C. Admin. Code § 8-903 et seq.) codifies a civil cause of action analogous to a tort arising from civil and criminal conduct. Federal and municipal precedent treats GMVA claims as independent statutory torts, not contractual disputes subject to arbitration clauses. Even if an employment arbitration clause were valid (itself disputed), it cannot waive statutory civil-rights remedies. Thus, confirmation of an employment arbitration award cannot preclude or overlap the GMVA proceeding, or force it into arbitration proceedings as The Fox Parties and William Shine have wrongfully argued. The Ending Forced Arbitration Act of 2022 further stipulates this fact.

16. *The Fox Parties Are Estopped from Forcing the Court to Confirm an Immaterial Ultra Vires Award Injected into a Separate Case*

Hypocrisy and waiver or estoppel bar their tactic. The Fox Petitioners' contradictory positions—vehemently opposing a TRO and injunction and demanding the arbitration proceed to a final order, but now seeking an interim award confirmation and asking the arbitrators for a stay midstream—demonstrate procedural manipulation and potentially waiver or judicial estoppel of their right to seek confirmation now of an ultra vires interim award. While Courts have to adhere to facts and law, it is settled precedent they also must apply common sense. This blatant procedural abuse justifies striking and dismissing the smuggled counterclaim.

*17. Immediate Consequence of the Fox Parties AAA Stay Motion Granted Before Filing Their Opposition and Jurisdictional Collapse of Fox's Ultra Vires Interim Award Petition*

The AAA itself granted a stay of the arbitration just before Fox's October 1, 2025 Opposition was filed. That means the arbitral forum won't acknowledge it presently lacks jurisdiction to proceed and continues to issue ultra vires decisions that violate the FAA under 9 U.S.C at 10 specifically regarding bias and exceeding arbitral authority, amplifying Plaintiff's case on appeal. Under both the AAA Rules and 9 U.S.C. § 9, confirmation of an arbitral award presupposes a live, valid, final award from an active tribunal. A stayed arbitration translates to no operative award to confirm. On September 30, 2025, the American Arbitration Association formally stayed proceedings in Case No. 01-16-0001-7288. The stay order issued while the matter was pending before this Court and the Second Circuit, thereby suspending all arbitral jurisdiction and rendering Respondents' purported award non-final and not confirmable as a matter of law.

Because the AAA granted the stay, the award Fox seeks to confirm is legally inoperative—it cannot be made under 9 U.S.C. § 9 once the issuing forum stays or withdraws jurisdiction. Fox's counterclaim to confirm is moot; there is no live controversy to adjudicate. Their opposition brief is misleading and filed in bad faith, as counsel clearly knew the stay existed when The Fox Parties Motion for Stay of Arbitration was filed in bad faith.

*18. Procedural Misrepresentation to the Court*

By omitting the AAA stay, Fox's counsel presented the Court with a materially false procedural record, violating the duty that factual contentions must have evidentiary support and the duty of candor to the tribunal. The indefinite stay of the arbitration occurred without arbitrator jurisdiction, is ultra vires and was was issued before the filing date on Fox's opposition making every assertion that the arbitration panel retained authority and is acting as a neutral body in accordance with the FAA demonstrably and

legally false. It also occurred, oddly, just as The Fox Parties were poised to face discovery in the form of depositions and hearings underscoring further bias and impartiality.

19. Procedural Impropriety: Forum Shopping and Conflation

The timing and venue choice suggest an attempt at forum shopping or strategic delay, which should be highlighted as procedural abuse. Defendants' decision to file the ultra vires confirmation petition in the GMVA action absent jurisdiction and rather than as a new action or in Plaintiff's case filed on February 3, 2025 (the original TRO/injunction case) proves improper more than forum shopping. The Fox Parties' Petition evidences impropriety and bad faith avoidance of Plaintiff's .

The Fox Parties were fully aware Plaintiff's case currently on appeal before the a Second Circuit  involved the validity and arbitrability challenge and was already on appeal regarding those foundational issues. Injecting the confirmation there would directly conflict with the appellate court's review of the arbitration's legitimacy.

By inserting the counterclaim into the GMVA case, the Fox Parties are effectively trying to bypass the appeal, obtain a District Court order confirming the award before the Second Circuit can rule on the underlying validity of the arbitration itself, and conflate issues by forcing the Court to address the separate, complex issues of the arbitration award's validity and the GMVA claims simultaneously. This highly inappropriate strategic placement is an attempt to get a specific judge to rule on the validity of the award, independent of the ongoing appellate review of the arbitration's legitimacy before the Second Circuit, while gaming the jurisdiction-less arbitration into granting their stay to avoid discovery and Plaintiff's success on the merits. This further displays the dilatory tactics The Fox Parties bemoan have been perennially of their own accord since the arbitration's inception.

B. The ultra vires interim award status underscores the problem. Confirming an interim or partial award is generally a more difficult hurdle than confirming a final award, and the FAA only explicitly discusses confirmation of a final award. The Fox Parties argued against staying the arbitration until and stressed the arbitration must proceed to it's final conclusion. However, they now seek to confirm a non-final interim order while simultaneously asking the arbitrators to stay the rest of the proceeding. This procedural dance highlights their primary goal: securing a judicial seal of approval on the partial ruling, regardless of its finality or connection to the GMVA case, solely to gain a tactical advantage in the ongoing dispute and appeal. Emphasize compounding FAA violations: the injunction sought to challenge arbitrability based on FAA violations (9 U.S.C. § 10 bias, exceeding authority). Arbitrability challenges are for the Court, and the arbitrators' decision to proceed while the Court was actively considering the validity of the process itself demonstrates exceeding authority (9 U.S.C. § 10(a)(4)).

*20. Plaintiff Reiterates Both Striking and Dismissal of the Fox Parties' Counterclaim Petition*

Plaintiff's initial motion was a Motion to Strike (under Rule 12(f)) and an additional request to now Dismiss (under Rule 12(b)(6)). By filing their opposition, Defendants focused heavily on why Rule 12(f) cannot be used to strike an entire counterclaim. The Reply is the place to insist that even if Rule 12(f) is technically improper, the motion should be granted as a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim or under Rule 12(c) for judgment on the pleadings. The legal deficiencies—lack of arbitrator jurisdiction post-February 3, 2025, the bar under the appellate divestiture principle recognized in *Coinbase*, and improper joinder—are grounds for a legal dismissal, not just striking an immaterial part of a pleading. A court can, and often does, construe an improperly labeled motion to reach the merits under the correct rule.

**CONCLUSION**

For the foregoing reasons, the Counterclaim-Respondent, Andrea Tantaros, respectfully requests that the Court deny Counterclaim-Petitioners' request for confirmation of the arbitration award, and grant Counterclaim-Respondent's Motion, dismissing the Counterclaim Petition with prejudice and clarifying that all further proceedings related to the arbitration are barred pending resolution of the pending appeal on arbitration enforceability, arbitrability, and FAA violations by the AAA and arbitrators.

Plaintiff respectfully requests relief as follows.

1. Deny Respondents' Opposition in full.

2. Strike or dismiss the Counterclaim Petition as ultra vires and jurisdictionally void.

3. Declare that no arbitral award arising after February 3, 2025 has legal effect pending appellate review.

4. Bar further reference to AAA materials in the GMVA docket absent explicit leave of Court.

5. Award costs or sanctions under Rule 11(c)(3) for bad-faith multiplication of proceedings. Sanction the Fox Parties for abuse of process in injecting an ultra vires petition unrelated and immaterial to the case before this Court to manipulate the legal process and violate requisite FAA procedure, and for ignoring the current appeal of matters of arbitrability.

6. Sanction their counsel for violating the express duty of candor by concealing that the arbitration is now stayed at their behest.

Respectfully submitted,

*/s/ Andrea K. Tantaros*

Andrea K. Tantaros

Date: October 8, 2025

[1]

---

[1] The Fox Parties inclusion of *Bawden v. Townes* is inapplicable, irrelevant and bizarre at best. Further, it cites a recent case where the Plaintiff, a victim of sexual crimes and hostile work environment prevailed against the Defendant and has no bearing on the Opposition filed by the Fox Parties.