**U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

ANDREA K. TANTAROS,

                                       Case No. 25-cv-01675 (VSB-VF)

*Plaintiff*,

v.

FOX NEWS NETWORK, LLC, FOX
CORPORATION, JOHN FINLEY,
SCOTT BROWN, SUZANNE SCOTT,
WILLIAM SHINE, THE ESTATE OF ROGER AILES.

*Defendants*.
_____


**REPLY TO DEFENDANT WILLIAM SHINE'S
OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AND DISMISS
COUNTERCLAIM PETITION FOR ARBITRATION AWARD**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION……………………...………………………………………………….3

FACTUAL BACKGROUND…..………………………………………………………4

ARGUMENT………………………………………………………………………….5

CONCLUSION………………………………………………………………….15

## I.        INTRODUCTION

Defendant William Shine's ("Shine") pleading trips over itself before the first sentence ends, collapsing under the weight of its own falsity. The entire document is a monument to pretense, a hollow exercise in verbosity, dressed up to disguise what is, at bottom, a fraud upon the Court. Stripped of its ornamental verbiage, it offers nothing—no argument, no authority, no logic, only statutory parroting that would embarrass a first-year law student. When the premise is false, the rest is noise.

The 'Counterclaim Petition' is an unauthorized, defective pleading that fails every procedural test known to the Federal Rules. It must be fully struck under Rule 12(f) as immaterial and impertinent, and dismissed under Rule 12(b)(1) and 12(h)(3) for lack of jurisdiction. Courts do not entertain filings made in open defiance of procedural law. Defendant's gambit, an attempt to 'shuttle' an interim arbitration award between jurisdictions into this case, is the very definition of abuse of process. The FAA does not authorize litigants to smuggle a counterclaim petition into another case, let alone one grounded in statutory torts under the Gender-Motivated Violence Act ("GMVA"). Section 9 of the FAA provides for a final summary proceeding, not an immaterial, immaterial Trojan horse to inject collateral disputes into unrelated litigation with no bearing on the underlying case before this Court.

Further, Shine's pleading further fails for making sweeping assertions of a subjectivity and a "compulsory counterclaim" purposefully excluding what the claims are in this action verses the Petition. One only need to look at the difference in Defendants, claims and jurisdiction in each separate case to conclude they are explicitly *not* "so factually related they can form one single case" as Shine wrongly contends.

Shine's attempt to dismiss Plaintiff's arguments as "angry" is an irrelevant, gender-based ad hominem that has no place in federal practice. Plaintiff's characterization of the ultra vires counterclaim petition as "frivolous, procedurally improper impossibility" was a precise legal assessment, not an emotional outburst. Reducing a woman's advocacy to emotion is a tactic of deflection, not argument that speaks volumes about the weakness of Defendant's position, and the strength of Plaintiff's.

At every level, Defendant's filing fails. It is legally incoherent, jurisdictionally barred, and procedurally void. It is not merely improper—it is an affront to law, logic, and the Court's authority and should struck and dismissed with prejudice in its entirety.

## II.        FACTUAL BACKGROUND

Ms. Tantaros, top-tier talent at Fox News for over a decade hosting two number one shows, was the first among many women to name Shine as Ailes' sexual concierge and enforcer. Though Fox News vehemently denied Ms. Tantaros' allegations and evidence against Shine, labeling her "a liar, an opportunist and a wannabe" throughout the media, in March of 2017, Ms. Tantaros was vindicated. Shine was very publicly fired from his position at the network for his role in actively covering-up the sexual abuse by Ailes and others.

The rhetoric in his latest pleading that Ms. Tantaros' claims are "baseless" and "lacking in merit" are preposterous statements refuted by Fox own privilege log, Twenty-First Century Fox Shareholders in their successful $92 million lawsuit against the network that named Shine in-detail, countless other women who followed Ms. Tantaros in suing Shine and Fox News Network's own statement about the reason for his ouster.

## III. ARGUMENT

### A. Defendant Shine's Entire Reply Is Based On The False Premise of Jurisdiction and Validity of an Ultra Vires Interim Award

Shine seeks confirmation of an "interim " award issued after the Petition for Emergency TRO and injunction was filed (February 3, 2025) and before any judicial determination of the TRO's stay request. (Notably, Shine made no effort to file any Petition to file a counterclaim petition during the seven (7) months case 1:25-cv-961 regarding arbitrability and enforceability Under 9 U.S.C. § 10(a)(4) and long-settled precedent was pending.

An arbitrator exceeds authority by acting once judicial jurisdiction has attached. The AAA panel was formally on notice via Petitioner's TRO and cease-and-desist correspondence (February 5, February 10, and February 28, 2025). Any "award" rendered thereafter is void ab initio—not merely voidable.. The FAA does not permit confirmation of interim or partial awards absent the parties' express stipulation, which never occurred—a  contract issue.

Once a matter is seized by the federal judiciary, the arbitrators are divested of jurisdiction over that issue and related proceedings to the extent they are challenged, especially matters going to the continuing validity of the process itself.

The Court lacks subject-matter jurisdiction to entertain any confirmation of an interim arbitration award while arbitrability and the arbitration's validity are pending before the Second Circuit under the divestiture rule recognized under The Griggs Principle and *Coinbase, Inc. v. Bielski,* 599 U.S. 736 (2023).

### B. Shine's Improper Use of Rule 12(f) Framing Fails

Shine's relies on the premise that Plaintiff's Motion to Strike is a Rule 12(f) motion. The filing was captioned as a motion to strike and clarify jurisdictional boundaries, functionally an objection to subject-matter jurisdiction and procedural abuse, not a Rule 12(f) pleading motion.

Courts applying Fed. R. Civ. P. 12(b)(1) and 12(h)(3) must dismiss or disregard filings made without jurisdiction, regardless of form. Thus, whether or not 12(f) formally applies, the Court must first resolve jurisdiction (ultra vires issuance) first.

The confirmation of the award is immaterial, impertinent and unrelated to the core dispute in the GMVA case now before this Court. This case has different elements of proof, different defendants and entirely different statutes that are uninvolved with the arbitration. This is an effort to inject an entirely separate matter (which should have its own separate civil case number, but only if final and jurisdiction was appropriate) into an unrelated statutory tort action, thereby prejudicing Plaintiff Tantaros by unnecessarily distracting the Court and deliberately conflating two distinct legal matters.

The Court is permitted to treat a labeled motion under Fed. 12(f) as one that achieves the same purpose under the correct rule. A motion to strike the counterclaim petition can be construed as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted or a Rule 12(c) motion for judgment on the pleadings (since a reply has been filed). The core of Plaintiff's argument is that the Counterclaim Petition is legally invalid because the arbitrators lacked jurisdiction post-February 3, 2025, and the confirmation is barred by the pending appeal. These are pure legal deficiencies appropriately addressed under 12(b)(6) or 12(c), not just 12(f)'s immaterial or impertinent standard.

Addressing immateriality in the context of the GMVA case even under a strict 12(f) standard, the counterclaim is immaterial because the GMVA action and the arbitration claims are distinct. The GMVA case concerns statutory tort claims against different defendants than those in the arbitration. The Petition to Confirm an ultra vires arbitration award that settles other claims is irrelevant to the merits of the GMVA claims. Plaintiff Tantaros has sufficiently argued the

confirmation of the specific arbitration award is immaterial to the GMVA claims before the Court; that is self-evident.

Defendant's assertion that Plaintiff "fails to identify any portions of the Counterclaim-Petition that should be excised" grossly mischaracterizes the nature of Plaintiff's motion. Plaintiff moved to strike and dismiss the entire Counterclaim-Petition as ultra vires—not to line-edit or excise isolated passages from a pleading that is void ab initio. The petition is wholly impertinent and immaterial to the underlying action, which concerns GMVA violations and entirely different defendants. The so-called Counterclaim-Petition improperly drags in nonparties who are not even represented by counsel in this case, and purports to invoke jurisdiction on the basis of a fabricated arbitration proceeding having no lawful connection to the litigation. Defendant's opposition, in turn, is a dog's breakfast of conjecture and distortions, confusing distinct cases and responding to arguments Plaintiff never made. Plaintiff does not challenge the arbitrator's decisions piecemeal but contests the arbitrator's and petitioner's complete lack of jurisdiction to act at all. Accordingly, the entire petition must be stricken as void and procedurally defective on its face.

Further, Defendant's reliance on *Carter v. HealthPort Techs.*, LLC is a blatant misrepresentation of both the case and the record. Plaintiff's filings do not, as Defendant falsely asserts, rest on mere legal conclusions; rather, they enumerate in meticulous detail the factual deficiencies and jurisdictional defects underlying the Counterclaim-Petition. Plaintiff specifically identifies the Court's lack of jurisdiction over a non-final, ultra vires petition to affirm an arbitration award—particularly where the very issue of arbitrability remains pending before an appellate court. To assert that Plaintiff "does not controvert" the facts of the petition is demonstrably false. Plaintiff's submissions directly address the factual circumstances of a

purported arbitration proceeding involving different parties and a separate action entirely unrelated to the instant case. The petition's foundation—a purported "award" issued by a private entity lacking any lawful authority renders it jurisdictionally void. Indeed, this Court's own August 8 ruling acknowledged it could not reach any issue under the Federal Arbitration Act, 9 U.S.C. § 10, until the arbitration's conclusion, thereby implicitly recognizing the jurisdictional limits Shine now seeks to ignore. Defendant's invocation of *Carter* thus distorts both the procedural posture and the factual record, as Plaintiff's challenge is patently factual and directed squarely at the existence, validity, and jurisdictional propriety of the alleged award itself.

### C. Shine's Counterclaim Is Procedurally Improper and Immaterial to the GMVA Action

Rule 13 and 12(f) is clear that the Petition is not cognizable. Defendants incorrectly argue Rule 12(f) cannot strike a counterclaim. Courts routinely strike or dismiss improper counterclaims under Rules 12(b)(1), 12(b)(6), or 12(f) where they are unrelated to the subject matter of the complaint or introduced for harassment or confusion. Smuggling the petition into a different case circumvents jurisdictional safeguards. Defendant could have filed a stand-alone petition to confirm under 9 U.S.C. § 9 in the same docket as the underlying arbitration, but instead Shine attempted to insert a sealed Petition with an ultra vires award into an unrelated gender-violence action without serving Plaintiff the Petition. Those maneuvers constitute forum manipulation and abuse of process. Courts in this Circuit reject such efforts to bootstrap jurisdiction via unrelated counterclaims.

8

**D. Shine Fails to Meet the Standard for Compulsory Counterclaim (Rule 13(a))**

A counterclaim is "compulsory" under Federal Rule of Civil Procedure 13(a) only if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Shine's failure to provide factual support demonstrating the transactional relationship by omitting the specific, comprehensive claims and facts in both the principal action and the arbitration/confirmation—is a fatal pleading error. One cannot plead a compulsory counterclaim solely by assertion.

The very nature of the counterclaim—a petition to confirm an ultra vires interim award from an entirely separate arbitration—is inherently distinct from a typical civil claim. The facts necessary to confirm or vacate an arbitration award (jurisdiction, statutory grounds for vacatur, etc.) are not the same as the facts necessary to prove the claims in the original civil suit (tort, breach of contract, etc.). The Court cannot exercise supplemental jurisdiction where, as here, the Petition arises from a fabricated proceeding involving unrelated parties and events outside the scope of the original controversy.

**1.  Grounds for Dismissal or Striking (Rules 12(b)(6) and 12(f))**

Because the Counterclaim fails to state a plausible claim for relief and cannot establish any jurisdictional or transactional basis for inclusion in this proceeding, it must be dismissed as a matter of law. A pleading that is "immaterial" or "impertinent" to the claims at issue, and whose only purpose is to confuse, delay, or smear, is properly stricken. See *Dubai Equine Hosp. v. Equine Imaging, LLC,* No. 18-CV-6925 (VSB), 2019 WL 3811922, at *2 (S.D.N.Y. Aug. 14, 2019). The most conspicuous defect is the difference in parties and claims between this action and the purported "counterclaim." Plaintiff's case involves entirely distinct causes of action and

9

defendants; the arbitration proceeding involved different parties, issues, and legal rights. The "transaction or occurrence" test collapses immediately. Defendants' omission of this jurisdictional disqualifier—while asserting Rule 13(a) status—is not inadvertent; it is a deliberate attempt to mislead the Court and mask fatal procedural defects, evidencing bad faith.

### 2. Improper Compulsory Counterclaim (Rule 13(a)).

A compulsory counterclaim must arise out of the same transaction or occurrence as the opposing party's claim. Shine does not even approximate that standard. The Counterclaim's factual and legal predicates are wholly unrelated to Plaintiff's GMVA claims and instead stem from an arbitration now on appeal regarding arbitrability itself. The assertion of a "compulsory" nexus is thus facially false.

### 4. Jurisdictional Defects Under the FAA and Subsequent Law

The Supreme Court's decision in *Badgerow v. Walters,* 596 U.S. 1 (2022), forecloses jurisdiction over this Counterclaim. Federal courts may not "look through" to the underlying dispute to create jurisdiction over a petition to confirm or vacate an arbitration award. The confirmation petition must stand on its own jurisdictional legs—diversity or a federal question apparent on the face of the petition. Here, none exists. The Counterclaim relies on the very "look" reasoning *Badgerow* abolished, rendering it jurisdictionally void.

### E. Defendant's Reliance on Arbitration Precedent Is Misplaced

Shine's reliance on *Intercarbon* and *Dzanoukakis* disintegrates under even minimal scrutiny. Neither presupposes a valid, final arbitral awards rendered under recognized authority and arising from disputes properly before the court. In contrast, the Counterclaim-Petition here is jurisdictionally void, factually untethered to the underlying litigation, and rooted in a proceeding that the appellate court is already reviewing. The invocation of these precedents is not only

inapposite, it underscores Defendants' pattern of distorting settled law to lend credibility to a petition that is invalid.

## F. Shine's Counter-Arguments Regarding the Appellate Divestiture Principle and Stay Fail

Shine's position is irreconcilably self-contradictory. On one hand, he contends that the purported arbitration is germane to the case before this Court, despite the undisputed fact that no claim was ever filed in the arbitration, the parties are entirely different, and none of the claims in this action could ever be subject to arbitration. On the other hand, they attempt to evade the clear divestiture rule by arguing that the *Griggs* principle is "silent" on a district court's loss of jurisdiction during a pending appeal, particularly "in a different case." That assertion is demonstrably false. *Griggs* unambiguously holds that the filing of a notice of appeal divests the district court of jurisdiction over any matters involved in the appeal. Here, the appeal concerns the very issue of arbitrability—the same arbitration that defendants now invoke as the basis for their counterclaim petitions. To argue that the appeal and the petition involve "different cases" is, quite literally, legal nonsense. Defendant's contradictory arguments fail, revealing a strategy driven not by law or fact, but by sheer obfuscation.

## G. The Fox Parties Fail on the Claim Plaintiff Missed the Three-Month Deadline to Vacate

Ms. Tantaros did not miss any three-month window to move to vacate, because no valid award existed to trigger § 12's limitations period. The purported ultra vires interim award Defendants rely on was issued on February 7, 2025 after jurisdiction over arbitrability had vested in the federal district court as of February 3, 2025. Consequently, the statutory three-month period to seek vacatur has not begun to run, and any purported confirmation of such an interim, void award is procedurally and jurisdictionally improper.

## H.  Shine Disregards the FAA's Exclusive Mode of Confirmation

11

Courts have repeatedly described the FAA's confirmation procedure as a summary proceeding that exists outside the context of other litigation, and the statutory sections provide the exclusive regime for the review of arbitration awards. An application for confirmation of a final award under FAA rules is not a continuation of the prior arbitration; it is a new action with its own procedural rules. -

## I. Shine Fails to Adhere to the Rules Applying to Joinder

Shine has attempted to insert a § 9 petition to confirm an arbitration award as a counterclaim in Plaintiff Tantaros' Gender-Motivated Violence Act case and are actively forcing the Court to adjudicate two completely unrelated controversies in a single proceeding in bad faith.

Rule 18(a) allows a party to join multiple claims only if it has a right to assert them against the same opposing party in the same capacity. Even if Defendant Shine claimed he was joining new issues or parties, Rule 20(a) requires that the right to relief arise out of the same transaction or occurrence, and that there be a question of law or fact common to *all* defendants. That is not the case.

Improper joinder of issues destroys procedural coherence. The Court cannot apply the FAA's summary standards inside a GMVA case involving statutory torts. Shine displays manifest jurisdictional disregard for the law and intent on inciting confusion. The FAA does not supply subject-matter jurisdiction, so the ultra vires interim award and Petition has no independent footing. It prejudices Plaintiff because it forces litigation of an unrelated dispute under compressed or opaque timelines. Further, Shine's filing violates due process. Ms. Tantaros cannot be forced to defend an ultra vires Petition under different and inapplicable procedural rules inside a wholly separate case that has no bearing on the case in dispute.

Federal courts often dismiss or sever improperly joined claims under Rules 12(b)(1), 12(b)(6), 20(b), and 21. Unrelated claims against different defendants belong in different suits to prevent confusion and avoid circumventing the rules of joinder. Shine's counterclaim petition to confirm an ultra vires arbitration award is additionally procedurally defective because it fails the fundamental requirement of joinder of issues under Fed. Rules 13 and 18.

Improper permissive joinder under Rule 20 is also present. Shine attempts to join the claims and parties from the arbitration into the GMVA case. This is highly improper because the claims do not meet the standard for permissive joinder. The arbitration claims stem from contract and employment law and occurred over a different time period and context than the GMVA claims, which arise from a specific statutory tort. The GMVA claims focus on gender-motivated violence and the specific motivation of the defendants named in that suit, while the confirmation petition focuses on a nullity. The legal and factual questions are entirely distinct. Since the confirmation petition and the GMVA claims involve different underlying conduct, parties and different legal tests, the counterclaim constitutes an improper joinder of claims and parties even under Rule 20's liberal standard, further supporting the argument that it is immaterial and impertinent under Rule 12(f) *and* subject to dismissal under Rule 12(b)(6). Courts routinely reject these hybrid, unrelated cases be seeing the tactics for exactly what they are: manipulation, misleading of the Court and deliberate abuse of process.

### J. GMVA Claims Are Statutory and Non-Arbitrable

The GMVA (N.Y.C. Admin. Code § 8-903 et seq.) codifies a civil cause of action analogous to a tort arising from civil and criminal conduct. Federal and municipal precedent treats GMVA claims as independent statutory torts, not contractual disputes subject to arbitration clauses. Even if an employment arbitration clause were valid (itself disputed), it cannot waive statutory civil-

rights remedies. Thus, confirmation of an employment arbitration award cannot preclude or overlap the GMVA proceeding, or force it into arbitration proceedings as Shine has wrongfully argued. The Ending Forced Arbitration Act of 2022 further stipulates this fact.

**Immediate Consequence of the Fox Parties AAA Stay Motion**

On September 30, 2025, the AAA formally stayed proceedings in Case No. 01-16-0001-7288 at Fox's behest. The stay order issued while the matter was pending before this Court and the Second Circuit, thereby suspending all arbitral jurisdiction and rendering Shine's purported award non-final and not confirmable as a matter of law.

Because the AAA granted the stay, the award Shine seeks to confirm is legally inoperative—it cannot be made under 9 U.S.C. § 9 once the issuing forum stays or withdraws jurisdiction. Shine's counterclaim petition to confirm is moot; there is no live controversy to adjudicate.

## IV.    CONCLUSION

For the foregoing reasons, the Counterclaim-Respondent, Andrea Tantaros, respectfully requests that the Court:

1.  Deny Counterclaim-Petitioner Shine's request for confirmation of the arbitration award;.

2. Strike and dismiss the Counterclaim Petition as ultra vires and jurisdictionally void with prejudice and clarifying that all further proceedings related to the arbitration are barred pending resolution of the pending appeal;

3.  Declare that no arbitral award arising after February 3, 2025 has legal effect pending appellate review.

4.      Bar further reference to AAA materials in the GMVA docket absent explicit leave of

Court.

Respectfully submitted,

*/s/ Andrea K. Tantaros*
Andrea K. Tantaros

Date: October 23, 2025

302A West 12th Street

Suite 102, New York, NY, 10014

917-923-5160